IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DIET DRUGS (Phentermine/ Fenfluramine/Dexfenfluramine) PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1203 |
| THIS DOCUMENT RELATES TO: | |
| SHEILA BROWN, SHARON GADDIE, VIVIAN NAUGLE, QUINTIN LAYER, and JOBY JACKSON-REID, individually and all others similarly situated, | CIVIL ACTION NO. 99-20593 |
| Plaintiffs, | |
| v. | |
| AMERICAN HOME PRODUCTS CORPORATION, | |
| Defendant. | |

**THE AHP SETTLEMENT TRUST'S MEMORANDUM OF LAW
IN RESPONSE TO CLAIMANTS' MOTION TO COMPEL
SHOW CAUSE PROCEEDINGS DEMANDED BY CLAIMANTS
<u>EVELYN VITTOE [SIC], AMY PETERS AND JOSEPH ROGERS</u>**

In Memorandum and Pretrial Order No. 2640 ("PTO 2640"), dated November 14, 2002, the Court concluded that 78 Matrix Compensation Benefits claims Hariton & D'Angelo, LLP, and Napoli, Kaiser, Bern & Associates, LLP ("Hariton/Napoli"), submitted to the Trust lacked a reasonable medical basis. The Court therefore prohibited the Trust from paying these claims, specifically including the claims of Amy Peters, Joseph Rogers and Evette Vititoe,[1] the three claimants who are the subject of Hariton/Napoli's motion.

---

[1] Hariton/Napoli's motion seeks to compel the Show Cause proceeding demanded by "Evelyn Vittoe." There is no claimant with that name in the Trust's database. The Court included claimant Evette Vititoe in its list of 78 [continued]

Even though the Court decided that these claims lacked a reasonable medical basis and are not payable, the Trust inadvertently sent these claims to auditing cardiologists for their review.  The claims already had been selected for audit before the Court's order, and the audits mistakenly were not stopped.  The cardiologists who audited these claims opined, consistent with the Court's findings, that they lacked a reasonable medical basis.  Accordingly, the Trust issued post-audit determinations informing these claimants that their claims would not be paid.

When the claimants disputed the auditing cardiologists' findings, the Trust -- unaware of its error in sending these claims to auditors in the first place -- automatically filed applications for Show Cause proceedings, as the audit rules required.  Upon realizing its error in sending these claims to auditing cardiologists, however, the Trust filed a Withdrawal of Show Cause Application for each of these three claims.

Despite the Court's adjudication of these claims, Hariton/Napoli seek to compel the Trust to re-initiate the Show Cause proceedings for claimants Peters, Rogers and Vititoe.  In light of PTO 2640, however, these claimants should not be permitted to "show cause" why their claims have a reasonable medical basis.  In PTO 2640, the Court already made a factual determination that these claims are not payable, and the claimants may not argue in Show Cause proceedings against audit determinations that never should have occurred.  Claimants already are contesting the Court's findings in PTO 2640 on appeal to the Third Circuit Court of Appeals.

Accordingly, the Court should deny Hariton/Napoli's motion to compel the Show Cause proceedings that claimants Peters, Rogers and Vititoe demand.

---

       claims that are not payable.  <u>In re Diet Drugs</u>, 236 F. Supp. 2d, 445, 464 (E.D. Pa. 2002).
       Therefore, the Trust assumes that Hariton/Napoli are referring to Evette Vivitoe.

I.  FACTS

    A.  **PTO 2640 Prohibits the Trust From Paying the Peters, Rogers and Vititoe Claims.**

Based on evidence presented at a six-day hearing in September 2002, the Court found in PTO 2640, dated November 14, 2002, that "the seventy-eight disputed attestations of Dr. Crouse and Dr. Mueller submitted to the Trust by the Hariton and Napoli firms were medically unreasonable." In re Diet Drugs, 236 F. Supp. 2d 445, 460 (E.D. Pa. 2002).  After finding that these 78 claims lacked a reasonable medical basis, the Court prohibited the Trust from paying them.  In re Diet Drugs, 236 F. Supp. 2d at 464.  In the first paragraph of PTO 2640, the Court explicitly directed that the Trust "shall not pay the claims of . . . Amy Peters; . . . John Rogers . . . [and] Evette Vititoe . . . ." Id.

The Court reached this decision after viewing hours of echocardiograms that displayed the errors that were rampant among the claims these firms submitted.  The Trust and Wyeth moved into evidence the echocardiograms and Green Forms of each disputed claim, including those of Peters, Rogers and Vititoe.  Movant Exs. 1-88(a)-(b); specifically, see Movant Exs. 65, 75 and 86(a)-(b).  The notes of the Trust's expert, Dr. John Dent, which contain his evaluations of the regurgitation levels of each claim, are also part of the record.  Movant Exs. 1-88(c).  Dr. Dent specifically testified that Dr. Crouse's sonographer improperly circled depictions of backflow in her measurements of these three claimants' mitral regurgitation.  Tr. I 108:1-4, 111:9, 111:3, 112:20 (Dent); see Movant Ex. 115 (Dent's notes).

In ordering the Trust not to pay the Peters, Rogers and Vititoe claims, the Court provided that the claimants could submit new echocardiograms and new Green Forms that were certified by cardiologists other than Dr. Crouse or Dr. Mueller.  Id.  None of these claimants submitted a new echocardiogram to the Trust.

The Court also expanded the Trust's audit rights. The Court authorized the Trust to audit all echocardiograms and Green Forms these two firms have or will submit and all echocardiograms and Green Forms as to which Dr. Crouse or Dr. Mueller is the certifying cardiologist. Id. PTO 2640 also authorizes the Trust to withhold payment to claimants whose claims are audited under the order pending completion of the audit process. Id.

### B.    The Trust Audited These Claims Inadvertently.

As of November 14, 2002, the date the Court entered PTO 2640, the Peters, Rogers and Vititoe claims already had been selected for audit in the ordinary course of operations.[2] Declaration of Jules S. Henshell ("Henshell Decl."), ¶ 3. Once these claims were selected for audit, they automatically were sent to a queue of claims for an assignment to an auditing cardiologist. Id. After the entry of the Court's order, the Trust did not take the steps necessary to stop those claims from continuing through the audit process to ensure that they were not audited or otherwise processed. Id., ¶ 4.

After audit, mirroring the Court's findings, the auditing cardiologists opined that the Peters, Rogers and Vititoe claims lacked a reasonable medical basis. See Attestations of Auditing Cardiologists and Auditing Cardiologist Worksheets, true and correct copies of which are attached to the Henshell Decl. as Exhibit B. Pursuant to the normal procedures under the audit rules, therefore, the Trust sent post-audit determination letters to these claimants denying their claims. Henshell Decl., ¶ 5. Upon receiving notification from these claimants that they

---

[2]    The Trust selected the Vititoe claim for audit on October 15, 2002, and selected the Peters and Rogers claims for audit on October 23, 2002. See Audit Selection Letters, true and correct copies of which are attached to the Declaration of Jules S. Henshell as Exhibit A.

disputed the auditing cardiologists' findings, the Trust automatically, pursuant to the audit rules,[3] filed Show Cause applications with the Court.  Id.  Upon realizing its mistake in light of PTO 2640, however, the Trust filed a Withdrawal of Show Cause Application for each of these claims.  Id., ¶ 6; Withdrawal of Show Cause Applications for claimants Peters, Rogers and Vivitoe, true and correct copies are attached to the Henshell Decl. as Exhibit C.

## II.   ARGUMENT

### A.   Based on the Court's Findings in PTO 2640, These Claims Should Not Proceed to Show Cause Determinations.

Hariton/Napoli argue that claimants Peters, Rogers and Vivitoe are entitled to Show Cause proceedings to dispute the auditing cardiologists' findings.  To support this argument, they contend that PTO 2640 requires the Trust to pay Matrix Compensation Benefits if these claims are "found to be meritorious" after an audit.  See Hariton/Napoli Brf. at 7.  This argument flatly contradicts PTO 2640, in which the Court already has held that these claims are medically unreasonable and not payable.  In re Diet Drugs, 236 F. Supp. 2d at 460, 464.  The Trust has not "unilaterally deprive[d]" these claimants rights and benefits under the Settlement Agreement.  See Hariton/Napoli Brf. at 6.  Instead, the Trust appropriately withdrew its Show Cause applications because this Court already has reached final determinations on the merits of these claims.

---

[3]   The Trust audited the Peters, Rogers and Vititoe claims, and later filed Show Cause applications, pursuant to the Policies and Procedures for Audit and Disposition of Matrix Compensation Claims in Audit approved in Pretrial Order No. 2457 ("PTO 2457").  The Rules for the Audit of Matrix Compensation Claims that are now in effect pursuant to Pretrial Order No. 2807 ("PTO 2807") had not been approved by the Court at that time.  Under both sets of rules, however, the Trust is required to file a Show Cause application with the Court no later than 14 days after the claimant notifies the Trust that he or she does not accept the Trust's determination concerning the claim.  See Policies and Procedures for Audit and Disposition of Matrix Compensation Claims in Audit, pursuant to PTO 2457, Section V.A; Rules for the Audit of Matrix Compensation Claims, pursuant to PTO 2807, Rule 19.

1.     **The Trust is Prohibited From Paying These Claims.**

After considering the evidence presented at the September 2002 hearing, the Court determined that 78 claims, including those of Peters, Rogers and Vivitoe, lacked any reasonable medical basis. Id. at 460.  The first paragraph of the Court's order specifically prohibits the Trust from paying these three claims. Id. at 464.  The Court prohibited the Trust from paying these claims without prejudice to the claimants' rights to submit new Green Forms and echocardiograms signed by a cardiologist other than Dr. Crouse or Dr. Mueller. Id.  Nonetheless, the claims at issue here are based on the identical Green Forms and echocardiograms that this Court already has determined are medically unreasonable. These claims, therefore, are not payable. Id.

Despite the Court's order that the Trust shall not pay these three specific claims, Hariton/Napoli argue that paragraph 4 of PTO 2640 directs the Trust to pay them if they are found to be meritorious after an audit and/or Show Cause proceeding.  Hariton/Napoli Brf. at 7-8.  Paragraph 4 provides that "the Trust has full authority to withhold payment of any claims identified in paragraphs (1), (2), and (3) pending the completion of the audit process." Id. at 464.  Hariton/Napoli appear to argue that because PTO 2640 grants the Trust the authority to withhold payment of claims pending the completion of audits, the Trust would no longer have that authority if it is determined after the completion of the audit and Show Cause process that a reasonable medical basis supports their claims.

Paragraph 4 of the Court's order, however, cannot grant the Trust "authority" to pay the Peters, Rogers and/or Vivitoe claims after an audit because the first paragraph of the same order prohibits the Trust from paying these three specific claims, among 75 others.  The Court specifically directed that the Trust "shall not pay the claims of . . . Amy Peters; . . . John Rogers . . . [and] Evette Vititoe . . . ." In re Diet Drugs, 236 F. Supp. 2d at 464; see generally Doe v.

National Board of Medical Examiners, 199 F.3d 146, 155 (3d Cir. 1999) (citing Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384 (1992)) (recognizing "commonplace" construction principle that specific language controls over general language).  Given the Court's factual finding in its opinion that these claims lack a reasonable medical basis, and the specific language of the first paragraph of the Court's order, there can be no ambiguity in the interpretation of PTO 2640.

While the Trust has the authority to withhold payment on all claims while they are audited pursuant to PTO 2640, the authority granted in paragraph 4 of the order does not extend to these circumstances.  Claimants already have challenged this Court's factual findings through their appeal of PTO 2640 to the Third Circuit.  By seeking to compel Show Cause proceedings, however, these claimants are hoping for determinations now that directly conflict with the Court's factual findings in PTO 2640 that these three claims are medically unreasonable and not payable.  In re Diet Drugs, 236 F. Supp. 2d at 460, 464.  As the Court already reached final determinations on these claims without ordering Show Cause proceedings, claimants' purpose is meritless.  Moreover, given that the Trust is prohibited from paying these claims, it would be a significant waste of resources to permit these claims to proceed to Show Cause determinations.

Hariton/Napoli's argument that PTO 2640 directs the Trust to pay Matrix Compensation Benefits to claimants Peters, Rogers and Vivitoe if their claims are found meritorious after an audit fails for another reason.  In expanding the Trust's rights, the Court explained that the purpose of auditing a claim is to determine "whether there was 'a reasonable medical basis for the representations made by any physician in support of the [c]laim.'"  Id. at 460 (quoting Settlement Agreement, Section VI.E.6).  As the Court already determined that the Peters, Rogers and Vivitoe claims lacked a reasonable medical basis, and specifically directed the Trust not to

pay them, an audit and Show Cause proceeding would serve no purpose.  Therefore, the Trust appropriately withdrew its Show Cause applications regarding these claims.

> **2.     The Trust Appropriately Audited the Enloe and Morales Claims.**

Hariton/Napoli refer to the Trust's audits of the claims of Ruth Enloe and Linda Morales, two other claims that were addressed at the September 2002 hearing, to argue that the Trust intends to audit all claims that were subject to PTO 2640.  See Hariton/Napoli Brf. at 6.

The Trust's audit of the Enloe and Morales claims, however, does not lead to the conclusion that the Trust intends to audit all claims that are subject to PTO 2640.  The claims at issue here are categorically different from the Enloe and Morales claims.  To prepare for the September 2002 hearing, Dr. Dent analyzed whether the claimants had the presence and severity of mitral regurgitation identified in their Green Forms.  Dr. Dent determined that the attesting physicians had a reasonable medical basis for finding that Ms. Enloe and Ms. Morales had at least moderate mitral regurgitation.  The Court did not prohibit payment of those claims in PTO 2640.  Under the Nationwide Class Action Settlement Agreement with American Home Products Corporation, as amended ("Settlement Agreement"), however, a claimant may recover Level II Matrix Compensation Benefits only if, in addition to moderate or greater regurgitation, he or she also experiences one or more "complicating factors," such as left atrial enlargement or a decreased ejection fraction.  Settlement Agreement, Section IV.B.2.c(2), pages 39-41.  It therefore was appropriate for the Trust to audit the Enloe and Morales claims, rather than solely relying on Dr. Dent's more limited review, before deciding whether the claimants were eligible for Matrix Compensation Benefits.  The Trust agreed to pay the claims.

Unlike the Enloe and Morales claims, the Court already has adjudicated the Peters, Rogers and Vititoe claims and found they have no reasonable medical basis.  In re Diet Drugs, 236 F. Supp. 2d at 460.  Thus, the Court ordered the Trust not to pay them, and the Trust should

not have audited them.  In turn, these claims should not be permitted to "show cause" why the Trust should pay their claims in violation of PTO 2640.  Hariton/Napoli's discussion of the Trust's audit of the Enloe and Morales claims has no bearing on this motion.

> B. **The Law of the Case Doctrine Does Not Require Show Cause Proceedings for These Claimants.**

Hariton/Napoli appear to argue that the Trust's withdrawal of its Show Cause applications conflicts with "the law of this case" that these claims should be paid if found medically reasonable after an audit.  Hariton/Napoli Brf. at 8-10.  Not only do the cases Hariton/Napoli cite fail to support this argument, but PTO 2640 contradicts it.

Hariton/Napoli cite a number of cases that address the law of the case doctrine, which courts apply when their previous decisions in an ongoing case already have resolved an issue before the court.  United Artists Theatre Circuit v. Township of Warrington, 316 F.3d 392, 397-98 (3d Cir. 2003) (citing Aramony v. United Way of America, 254 F.3d 403, 410 (2d Cir. 2001)).  The doctrine relieves the court from deciding that issue a second time.  Id. at 398.  The cases Hariton/Napoli cite, however, do not support their argument that Show Cause proceedings are required in these circumstances.

The Third Circuit explained in In re City of Philadelphia, 158 F.3d 711 (3d Cir. 1998), that one panel of an appellate court generally will not reconsider issues another panel has decided previously in the same case.  158 F.3d at 717.  The court determined it was bound by a previous Third Circuit panel's conclusion on a review of a summary judgment decision that the City of Philadelphia "seized" Ms. Ramona Africa in violation of the Fourth Amendment.  Id. at 722.  Although Hariton/Napoli cite this decision, they do not argue that this Court is bound by one of its previous conclusions concerning these claims.  The only decision by this Court

regarding these claims is that they are medically unreasonable and not payable. In re Diet Drugs, 236 F. Supp. 2d at 464.

In United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392 (3d Cir. 2003), a case Hariton/Napoli discuss extensively, the Third Circuit concluded that the law of the case doctrine did not bar it from deciding the applicability of the "shocks the conscience" substantive due process standard where substantial doubt existed regarding whether an earlier Third Circuit panel had decided the issue in the same case. 316 F.3d at 398. Hariton/Napoli fail to explain how this case supports their argument. The Third Circuit in United Artists held that the law of the case doctrine did not apply because the issue of the appropriate legal standard was undecided. Id.; see also Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir. 1997) (holding that law of case doctrine did not bar court from revisiting standing issue because of "extraordinary circumstance" exception). Moreover, Hariton/Napoli admit in their brief that the case is not analogous to the facts here. See Hariton/Napoli Brf. at 10.

If anything may be characterized as the "law of this case," it is the Court's determination that the Trust is prohibited from paying the Peters, Rogers and Vivitoe claims because they lack a reasonable medical basis. In re Diet Drugs, 236 F. Supp. 2d at 460, 464. Despite the Court's order, Hariton/Napoli assert that "[t]his Court rejected the argument that any claims were precluded." See Hariton/Napoli Brf. at 10. This argument, which is devoid of citation, wholly contradicts the first paragraph of PTO 2640.[4] Contrary to Hariton/Napoli's blatant

---

[4] Although the Court prohibited the Trust from paying these claims without prejudice to the claimants' rights to submit new Green Forms and echocardiograms, the Peters, Rogers and Vivitoe claims at issue here are based on the identical Green Forms and echocardiograms that this Court already has determined are medically unreasonable. The claims, therefore, are not payable.

mischaracterization of PTO 2640, the Court did not hold that the Trust should pay the Peters, Rogers and Vititoe claims after an audit. Hariton/Napoli Brf. at 10. As set forth above, the Court made the opposite finding: the Trust should not pay these three claims. In re Diet Drugs, 236 F. Supp. 2d at 464.

The Court already has reached a final determination on the merits of these claims and, therefore, they should not proceed to Show Cause hearings.

### C. The Trust Did Not Enter Into Contracts That Violate the Court's Order.

Hariton/Napoli's argument that the Trust entered into contracts to pay these claimants "should an audit or appeal determine eligibility" should be rejected. Hariton/Napoli Brf. at 12.

The Trust did not enter into contracts to pay Matrix Compensation Benefits to Peters, Rogers or Vititoe under any circumstances. See id. As explained above, the Trust sent these claims to audit before the Court's order and inadvertently failed to stop the audits once the order was entered. The Trust therefore unintentionally sent post-audit determination letters to these claimants explaining that their claims were denied, and timely filed Show Cause applications as the audit rules require. The Trust withdrew its Show Cause applications as soon as it recognized its mistake in light of PTO 2640.

Aside from the fact that no contract exists between the Trust and any one of these claimants, any purported "contract" to pay them after an audit and/or Show Cause proceeding is unenforceable because it would violate PTO 2640. Any agreement on the Trust's part to pay these claimants would violate the Court's finding that the claims are medically unreasonable and its explicit instruction that the Trust shall not pay them. See generally Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 77 (1982) ("illegal promises will not be enforced in cases controlled by the federal law"); Erie Telecommunications, Inc. v. City of Erie, 853 F.2d 1084, 1091, n.12 (3d Cir.

1988) (under Pennsylvania law, an entire contract is rendered unenforceable by either party if an essential term of that contract is deemed to be illegal).

The cases cited by Hariton/Napoli that define the basic contract principles of offer, acceptance and consideration therefore have no bearing on this matter.  See Hariton/Napoli Brf. at 11-12.  Although Hariton/Napoli cite a case defining "consideration," without any analysis, none of these three claimants has suffered a loss or detriment as a result of the Trust's post-audit determination letters or withdrawal of Show Cause applications because the Court already had concluded that these claims cannot be paid.  The Trust assumes that Hariton/Napoli apprised their clients of this fact as soon as the Court issued PTO 2640.

Accordingly, no contract for the payment of Matrix Compensation Benefits exists between the Trust and these claimants, and the Court should not enforce one.

### III.   CONCLUSION

The Trust respectfully requests that the Court deny claimants' motion to compel the Trust to institute Show Cause proceedings.

    Respectfully submitted,

    _____
    Andrew A. Chirls
    Abbe F. Fletman
    Robyn D. Levitan
    Attorneys for Appellee the AHP Settlement Trust

OF COUNSEL:

WOLF, BLOCK, SCHORR and SOLIS-COHEN LLP
1650 Arch Street, 22nd Floor
Philadelphia, PA 19103-2097
(215) 977-2000

Dated:  July 17, 2003

## CERTIFICATE OF SERVICE

I, Robyn D. Levitan, hereby certify that on the 17th of July, 2003, I caused true and correct copies of The AHP Settlement Trust's Memorandum of Law in Response to Claimants' Motion to Compel Show Cause Proceedings Demanded by Claimants Evelyn Vittoe [sic], Amy Peters and Joseph Rogers, to be served on the following counsel via facsimile and first-class mail:

Gregory P. Miller, Esquire
Miller, Alfano & Raspanti, P.C.
1818 Market Street, Suite 3402
Philadelphia, PA  19103

Mario D'Angelo, Esquire
Hariton & D'Angelo, LLP
3500 Sunrise Highway, Suite T207
Great River, New York  11737

Peter L. Zimroth, Esquire
Arnold & Porter
399 Park Avenue
New York, New York  10022

Paul J. Napoli, Esquire
Napoli, Kaiser, Bern & Associates, LLP
114 Old Country Road, Suite 116A
Mineola, New York  11501

Michael D. Fishbein, Esquire
Laurence S. Berman, Esquire
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA  19106

Orran Brown, Esquire
Brown Greer PLC
Riverfront Plaza West Tower
901 East Byrd Street
Suite 1400
Richmond, Virginia  23219-4052

_____
Robyn D. Levitan

Date: July 17, 2003