```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| IN RE: DIET DRUGS | : | MDL DOCKET NO. 1203 |
| (PHENTERMINE, FENFLURAMINE, | : | |
| DEXFENFLURAMINE) PRODUCTS | : | |
| LIABILITY LITIGATION | : | |
| | : | |
| ──────────────────────────── | : | |
| | : | |
| SHEILA BROWN, et al. | : | |
| | : | |
| v. | : | |
| | : | |
| AMERICAN HOME PRODUCTS | : | |
| CORPORATION, et al. | : | CIVIL ACTION NO. 99-20593 |

**MEMORANDUM AND PRETRIAL ORDER NO.** _____

Bartle, C.J.                                          November 19, 2007

Appellant, Billie Jean Te, a class member under the Nationwide Diet Drug Class Action Settlement Agreement ("Settlement Agreement") with Wyeth, seeks Matrix A-1, Level III Benefits from the American Home Products Settlement Trust (the "Trust").[1]  The Trust denied appellant's claim for Matrix A-1, Level III Benefits and concluded instead that she was entitled to Matrix B-1, Level III Benefits.  Appellant appealed the Trust's adverse determination, and the matter was referred to arbitration.  See Settlement Agreement § VI.C.4.i.  The Arbitrator issued a Report and Award affirming the Trust's determination.  Appellant's claim is now before us on appeal from

───────────────────

1.  Ms. Te's husband has also submitted a derivative claim.  Derivative claimants are paid according to the same benefit Matrix as the primary claimant.

the Report and Award of the Arbitrator Luther E. Weaver, III, Esquire.  See id. § VI.C.4.l.

In her appeal, appellant argues that she is entitled to Matrix A-1 Benefits and not, as the Trust and Arbitrator concluded, Matrix B-1 Benefits.  It is undisputed that appellant is entitled to Level III Matrix Benefits.  Therefore, the only issue before this court on appeal is whether appellant should be paid benefits on Matrix A or Matrix B.

To seek Matrix Benefits, class members must complete and submit to the Trust a completed Green Form.  Part II of appellant's Green Form, dated March 28, 2003, was completed by her attesting physician, Dr. Marc L. Ladenheim.  Dr. Ladenheim attested that, based upon an echocardiogram performed on March 9, 1998, appellant had severe aortic regurgitation and subsequently underwent surgery to repair or replace her aortic valve.  He also attested that appellant had aortic stenosis with an aortic valve area < 1.0 square centimeter by the Continuity Equation and had been diagnosed with mild or greater aortic regurgitation confirmed by an echocardiogram before using Pondimin or Redux.

Matrix Benefits are paid according to two benefit matrices (Matrix "A" and Matrix "B"), which generally classify claimants for compensation purposes based upon the severity of their medical conditions, their ages when they are diagnosed, and the presence of other medical conditions that also may have caused or contributed to a claimant's valvular heart disease ("VHD").  See Settlement Agreement §§ IV.B.2.b. & IV.B.2.d.(1)-

(2).  Matrix A-1 describes the compensation available to Diet Drug Recipients with serious VHD who took the drugs for 61 days or longer and who did not have any of the alternative causes of VHD that made the B matrices applicable.  In contrast, Matrix B-1 outlines the compensation available to Diet Drug Recipients with serious VHD who were registered as having only mild mitral regurgitation by the close of the Screening Period, or who have one of the alternative causation factors that requires payment on Matrix B.  With respect to an aortic valve claim, the alternative causation factors include:  "[a]ortic stenosis with an aortic valve area < 1.0 square centimeter by the Continuity Equation;" and "FDA Positive regurgitation (confirmed by Echocardiogram) prior to Pondimin® and/or Redux™ use for the valve that is the basis of the claim."  Id. § IV.B.2.d.(2)(c).

Appellant argues that her aortic stenosis should not reduce her benefit payment to Matrix B because reports prior to Dr. Ladenheim's attestation stated that her aortic valve area was > 1 square centimeter and because Dr. Ladenheim's measurement of her aortic valve area could have been erroneous.  Moreover, appellant argues that Wyeth agreed to evaluate her claim based upon a March 14, 1997 echocardiogram and therefore her aortic stenosis should be determined by that echocardiogram, not the echocardiogram that provided the basis of her Green Form.

Appellant was first diagnosed with aortic stenosis in April, 1996.  At that time her aortic valve area was approximately 1.2 square centimeters.  Dr. Ladenheim attested in

-3-

Part II of appellant's Green Form, however, that in March, 1998, appellant's aortic valve area decrease to .92 square centimeters. Under the terms of the Settlement Agreement, this diagnosis requires that appellant be paid on Matrix B. Appellant argues she is entitled to be paid on Matrix A because earlier reports concluded that her aortic valve area was > 1 square centimeter. This position is contrary to the terms of the Settlement Agreement. Under the Settlement Agreement, it is simply necessary that at some point she meets the definition of aortic stenosis. If so, she is paid on Matrix B. That her aortic valve area was not < 1 square centimeter in April, 1996 is of no consequence.

Appellant's argument that Dr. Ladenheim's measurement could have been erroneous is also misplaced. Appellant has presented no evidence to support her position that the measurement was incorrect. There is therefore no basis for this court to disregard Dr. Ladenheim's conclusions on appellant's Green Form.

Finally, appellant argues that her March 14, 1997 echocardiogram and ensuing report should determine whether she meets the Settlement Agreement definition of aortic stenosis requiring payment on Matrix B. Appellant cites to a letter sent to her by the Class Counsel Claims Office, which states: "Wyeth is willing to base your claim on [the March 14, 1997 echocardiogram] report, even though it was not the echocardiogram used on your Green Form." The letter explicitly states, however,

that the March 14, 1997 echocardiogram, if used, would determine appellant's severity of aortic regurgitation.  The letter does not, as appellant argues, require that the March 14, 1997 report then replace appellant's Green Form with respect to her attesting physician's conclusions regarding reduction factors, including aortic stenosis.  Consequently, Dr. Ladenheim's attestation that appellant suffered from aortic stenosis with an aortic valve area < 1.0 square centimeter requires that appellant's Level III claim be paid in accordance with Matrix B.

Accordingly, it is unnecessary for this court to reach appellant's arguments regarding her diagnosis of mild or greater aortic regurgitation prior to her diet drug use.  We affirm the Report and Award of the Arbitrator Luther E. Weaver, III, Esquire.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (PHENTERMINE, FENFLURAMINE, DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | : : : : : | MDL DOCKET NO. 1203 |
| SHEILA BROWN, et al. v. AMERICAN HOME PRODUCTS CORPORATION, et al. | : : : : : : : | CIVIL ACTION NO. 99-20593 |

**PRETRIAL ORDER NO.**

     AND NOW, this 19th day of November, 2007, it is hereby ORDERED that the Report and Award of the Arbitrator Luther E. Weaver, III, Esquire, is AFFIRMED and appellant, Billie Jean Te, is entitled to Matrix B-1, Level III Benefits, under the Nationwide Diet Drug Class Action Settlement Agreement.

                                  BY THE COURT:

                                  /s/ Harvey Bartle III
                                                  C.J.