```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: DIET DRUGS (PHENTERMINE/      )
FENFLURAMINE/DEXFENFLURAMINE)        )    MDL NO. 1203
PRODUCTS LIABILITY LITIGATION        )
_____)
                                     )
THIS DOCUMENT RELATES TO:            )
                                     )
SHEILA BROWN, et al.                 )
                                     )
             v.                      )    CIVIL ACTION NO. 99-20593
                                     )
AMERICAN HOME PRODUCTS               )
CORPORATION                          )
```

**MEMORANDUM AND PRETRIAL ORDER NO.**

Bartle, C.J.                                          December 11, 2007

Before the court is the joint motion of Robin Daniel ("Ms. Daniel") and Sherry Lairamore ("Ms. Lairamore") (collectively "claimants"), class members under the Diet Drug Nationwide Class Action Settlement Agreement ("Settlement Agreement") with Wyeth.[1]  In their motion, claimants seek to have their claims for Matrix Compensation Benefits ("Matrix Benefits") referred to the show cause process[2] or, in the alternative,

---

1. Prior to March 11, 2002, Wyeth was known as American Home Products Corporation.

2. Under the Settlement Agreement, if the AHP Settlement Trust ("Trust") determines in audit that there is no reasonable medical basis to support a claim for Matrix Benefits or that a claimant has made an intentional material misrepresentation of fact relating to his or her claim, the claimant may dispute the Trust's final post-audit determination and request that the Trust apply to the court for an order to show cause why the claim
                                                        (continued...)

processed pursuant to Court Approved Procedure No. 13 ("CAP 13").[3]

I.

According to the motion of Ms. Daniel and Ms. Lairamore and accompanying exhibits, claimants received final post-audit determinations on April 2, 2004 and March 30, 2004, respectively, awarding them Matrix Benefits.  Claimants had not yet been paid when, on May 10, 2004, this court issued PTO No. 3511 staying the processing of Matrix claims while the parties negotiated the Seventh Amendment to the Settlement Agreement.  See PTO No. 3511 (May 10, 2004).  Prior to the entry of the stay, the Trust had identified 968 Matrix claims that had passed audit as payable, which were designated as "Pre-Stay Payable Post-Audit Determination Letter ("PADL") Claims."  Of these 968 Pre-Stay Payable PADL Claims, the Trust alleged that 580 claims, including those of Ms. Daniel and Ms. Lairamore, contained intentional misrepresentations of material fact.  Pursuant to Paragraph 5 of PTO No. 3883 (Aug. 26, 2004), the Trust was ordered to separate the Pre-Stay Payable PADL Claims into three categories.  The 580

---

2(...continued)
should be paid.  Such a claim then would proceed through the show cause process established under the Rules for the Audit of Matrix Compensation Claims ("Audit Rules").  See Settlement Agreement § VI.E.7; Pretrial Order ("PTO") No. 2807; Audit Rule 18(c).  The Trust ultimately denied the Matrix claims of Ms. Daniel and Ms. Lairamore for intentional material misrepresentations of fact.

3. CAP 13 established an alternative procedure for the disposition of certain Matrix claims that allegedly contained intentional misrepresentations of material fact.  See PTO No. 6707 (Nov. 22, 2006).

claims that the Trust alleged to contain intentional misrepresentations of material fact are commonly referred to as "5(a) claims."  <u>See</u> PTO No. 3883, ¶ 5.

Following the end of the stay, this court ordered the Trust to review the 580 claims designated as 5(a) claims and issue new PADLs, which claimants could contest.  <u>See</u> PTO No. 5625 (Aug. 24, 2005).  By new PADLs dated February 13, 2006 ("February 2006 PADLs"), the Trust notified Ms. Daniel and Ms. Lairamore that it had rescinded its initial PADLs awarding them Matrix Benefits and that their claims were denied because they contained intentional misrepresentations of material fact.  The new PADLs advised claimants that they could contest the determination in writing to the Trust within sixty (60) days.  The new PADLs further stated that "the Trust will review any Contest Materials and issue a Final Post-Audit Determination on the Claim."

By virtually identical letters to the Trust dated April 5, 2006, claimants' attorney timely contested the February 2006 PADLs and requested that the claims of Ms. Daniel and Ms. Lairamore proceed directly to the show cause process.  Specifically, the letters stated that "<u>Claimant respectfully requests that this matter be forwarded to the show cause process</u> and/or that mediation is ordered on this claim so that this matter can be judiciously resolved as soon as possible" (emphasis added).  Claimants supported their contest by referencing arguments made previously by Class Counsel.

Despite claimants' request to proceed directly to the show cause process, on May 15, 2006, the Trust issued amended PADLs, which again denied the claims of Ms. Daniel and Ms. Lairamore for Matrix Benefits.[4] The amended PADLs provided claimants with an additional thirty (30) days to submit further contest materials to the Trust, after which the determination would become final. The amended PADLs also advised claimants that if they wished to dispute the final post-audit determination, they must notify the Trust within thirty (30) days of the final determination and request to proceed to the show cause process.

Claimants, however, did not contest the amended PADLs. Claimants' counsel claims that he did not receive the Federal Express package containing claimants' amended PADLs.[5] On June 15, 2006, after claimants failed to dispute the amended PADLs, the Trust internally converted claimants' amended PADLs to final determinations. The Trust closed the claims of Ms. Daniel and Ms. Lairamore on or about July 15, 2006.

On November 22, 2006, this court approved CAP 13, which provided 5(a) claimants with the option either to submit their

---

4. The amended PADLs issued the same determination as the February 2006 PADLs.

5. The package was delivered to the correct address for claimants' counsel. The return receipt was signed by "T. Bone", a part-time receptionist with another law firm that shared common office space with claimants' counsel. Claimants' counsel implicitly concedes that "T. Bone" was authorized to accept overnight packages for him.

claims to a binding medical review by a participating physician or to opt-out of CAP 13 and proceed to show cause.  See PTO No. 6707 (Nov. 22, 2006).  Not realizing that the Trust had closed their claims, Ms. Daniel and Ms. Lairamore mistakenly believed that their 5(a) claims were included in CAP 13.  Thus, on December 28, 2006, pursuant to Paragraph 7 of CAP 13, claimants submitted the requisite $1,000 payment for a medical review by a participating physician.  See PTO No. 6707, CAP 13, ¶ 7. Claimants subsequently were informed that they were not eligible for participation in CAP 13 because their claims had been closed due to their failure to challenge the Trust's amended PADLs.  In response, claimants filed the motion that is presently before us, arguing that they properly contested the February 2006 PADLs and requested that their claims proceed directly to show cause.[6]

## II.

After reviewing the record before us, we find that claimants timely contested the Trust's February 2006 PADLs and specifically requested that their claims proceed to the show cause process.  Claimants notified the Trust that they were foregoing the final post-audit determination and, in an effort to expedite the processing of their claims, wished to proceed

---

6. Significantly, the Trust does not object to claimants' motion.  Wyeth, however, argues that claimants failed to follow the proper procedures for contesting the Trust's amended PADLs and that their failure to do so does not constitute excusable neglect.  Given our ultimate disposition that claimants properly contested the February 2006 PADLs, we need not address Wyeth's excusable neglect argument.

directly to the show cause process. In response to claimants' request, these claims should have been placed on an application for an order to show cause, and it is unclear why the Trust issued amended PADLs in May 2006 and provided claimants with another opportunity to submit additional contest materials. It certainly was reasonable for claimants to believe that their contest of the February 2006 PADLs and request to proceed to the show cause process superseded the Trust's issuance of the amended PADLs, especially considering that the amended PADLs contained the same determination as the February 2006 PADLs.

Accordingly, we find that the April 2006 amended PADLs had no effect on claimants' rights to proceed to the show cause process. Therefore, we will grant claimants' motion to be referred to the show cause process.[7]

---

7. As CAP 13 was a private agreement between Wyeth and Class Counsel, we decline to grant claimants' request to be included in CAP 13. The parties, however, may voluntarily stipulate to allow Ms. Daniel and Ms. Lairamore to proceed under CAP 13.

```
               IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | |
|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/ FENFLURAMINE/DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | MDL NO. 1203 |
| THIS DOCUMENT RELATES TO: SHEILA BROWN, et al. v. AMERICAN HOME PRODUCTS CORPORATION | CIVIL ACTION NO. 99-20593 |

**PRETRIAL ORDER NO.** _____

AND NOW, this 11th day of December, 2007, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of Robin Daniel and Sherry Lairamore to be referred to the show cause process is GRANTED; and

(2) the motion of Robin Daniel and Sherry Lairamore to be included in CAP 13 is DENIED.

                              BY THE COURT:


                              /s/ Harvey Bartle III
                                                  C.J.