IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: DIET DRUGS                      :      MDL DOCKET NO. 1203
(PHENTERMINE, FENFLURAMINE,            :
DEXFENFLURAMINE) PRODUCTS              :
LIABILITY LITIGATION                   :
                                       :
THIS DOCUMENT RELATES TO:_____:_____
_____:
SHEILA BROWN, et al.                   :
                                       :
         v.                            :
                                       :
AMERICAN HOME PRODUCTS                 :
CORPORATION                            :      CIVIL ACTION NO. 99-20593

<u>**MEMORANDUM AND PRETRIAL ORDER NO.**</u> _____

Bartle, C.J.                                          July 21, 2008

        In Pretrial Order ("PTO") No. 7763A (April 9, 2008),
this court granted the renewed joint petition for a final award
of counsel fees and expense reimbursements ("Joint Petition")[1] in
connection with the Diet Drug Nationwide Class Action Settlement
Agreement ("Settlement Agreement") with Wyeth and in connection
with the multidistrict litigation involving Wyeth's diet drugs
known as "fen-phen."  We awarded the Joint Fee Applicants
attorneys' fees totaling $413,950,320.70, payable as follows:
(1) $161,569,272 from the Fund A Escrow Account; (2)

_____

1.  The Joint Petition was filed by a large group of law firms
consisting primarily of the Plaintiffs' Management Committee and
Class Counsel for claimants under the Settlement Agreement
(hereinafter "Joint Fee Applicants") and is joined by some of the
major filers in this multidistrict litigation (hereinafter "Major
Filers"), who collectively constitute the "Joint Petitioners."

$124,633,410.60 from the Fund B Attorneys' Fees Account; (3) 6.4% of the Individual Payment Amounts payable to Category One Class Members under the Seventh Amendment to the Settlement Agreement, from the Supplemental Class Settlement Fund, a sum estimated to be $71,447,638.10; and (4) $56,300,000 from the MDL 1203 Fee and Cost Account.[2]  These amounts are in addition to the Interim Distribution of attorneys' fees in PTO No. 2622, as modified in PTO No. 2859, which awarded attorneys' fees totaling $153,722,911.27, payable as follows:  (1) $38,430,727.82 from the Fund A Escrow Account; (2) $38,430,727.82 from the Fund B Attorneys' Fees Account; and (3) $76,861,455.63 from the MDL 1203 Fee and Cost Account.  See In re Diet Drugs Prods. Liab. Litig., 2002 WL 32154197 (E.D. Pa. Oct. 3, 2002); Diet Drugs, 2003 WL 21641958 (E.D. Pa. May 15, 2003).

We also awarded the Joint Fee Applicants $1,542,901 in expense reimbursements in PTO No. 7763A with $771,450.50 payable from the Settlement Fund[3] and $771,450.50 from the MDL 1203 Fee and Cost Account.  This sum is in addition to previous expense reimbursements of $22,690,963.33, for a total of $24,233,865.23. See PTO No. 7763A at 36.

---

2.  A detailed explanation of the various accounts from which an award of fees was made is contained in PTO No. 7763A.

3.  As discussed in more detail in PTO No. 7763A, cost reimbursements are payable from the Settlement Fund, not the funds created for the payment of attorneys' fees.  See PTO No. 7763A at 35-38.

In PTO No. 7763A we simply determined the aggregate amount of attorneys' fees that would be awarded from the various accounts.[4]  We requested additional information before proceeding with the allocation of the award of attorneys' fees among the various individual lawyers and law firms and ordering refunds of any money not awarded from the available accounts.

First, we asked the Trustee for the AHP Settlement Trust ("Trustee") to file a plan for the distribution of money remaining in the Fund B Attorneys' Fees Account after the award of attorneys' fees.  Second, we directed Plaintiffs' Liaison Counsel to file a memorandum detailing the actual amounts that were paid into the MDL 1203 Fee and Cost Account after entry of the Interim Distribution in PTO No. 2622 and up until December 31, 2007 by each of the following groups:  (1) federal Initial Opt-Out[5] and Primary Pulmonary Hypertension ("PPH") plaintiffs; (2) coordinated state Initial Opt-Out and PPH plaintiffs; (3) federal Downstream Opt-Out plaintiffs[6]; and (4) coordinated state Downstream Opt-Out plaintiffs.  Finally, we

---

4.  We ordered that expense reimbursements be made to eligible lawyers and law firms within forty-five days of entry of PTO No. 7763A.  See PTO No. 7763A at 2.d.  Those reimbursements have now been made.

5.  The Settlement Agreement allowed Class Members to exercise an "Initial Opt-Out" right.  See Settlement Agreement § IV.D.2.c.

6.  "Downstream Opt-Out" is the term generally used collectively to refer to Class Members who exercised either their "Intermediate Opt-Out" right or their "Back-End Opt-Out" right. Downstream Opt-Out rights were provided for in the Settlement Agreement.  See Settlement Agreement §§ IV.D.3 and IV.D.4.a.

required that Plaintiffs' Liaison Counsel set forth the portion
of the awards from the Fund A Escrow Account, the Fund B
Attorneys' Fees Account, the Supplemental Class Settlement Fund,
and the MDL 1203 Fee and Cost Account to be allocated and paid to
each of the Joint Fee Applicants pursuant to the applicable
agreements among them and submit proposed allocation procedures.
All requested information and proposed allocation plans were
timely filed and are now before this court for consideration.

                                    I.

        The Trustee filed a plan for the partial refund of
amounts previously withheld from unrepresented Class Members or
counsel for Class Members for Fund B attorneys' fees, hereinafter
"Fund B Refund Plan."  Each Class Member who received what are
known as Matrix Benefits from Fund B of the Settlement Agreement
was required to pay a 9% assessment for attorneys' fees.  If a
Class Member was represented by an attorney, the deduction was
made from the attorney's individual fee.  Otherwise, it was
deducted from the Class Member's benefits.  Since this court did
not award the full amount available in the Fund B Attorneys' Fees
Account to the Joint Fee Applicants, the balance will be refunded
to the unrepresented Class Members and individual attorneys who
paid the 9% assessment.  See Settlement Agreement § VIII.E.1.b.

        The Fund B Refund Plan has several key components.
Within ten days of this court's approval of the Fund B Refund

                                   -4-

Plan, the Trustee will provide notice to each entitled claimant[7] or attorney of the amount that each will receive and any necessary steps that must be taken before a refund takes place.[8] Within ninety days of this court's approval of the Fund B Refund Plan, the Trust will mail refund checks to those who have completed the necessary steps and will continue to do so on a semi-monthly basis until all refunds are made.

No objections have been filed to the Fund B Refund Plan, and after reviewing the plan we have concluded that it is sound. Accordingly, we will approve the Fund B Refund Plan.

II.

We next turn to the award of attorneys' fees from the MDL 1203 Fee and Cost Account. The funds available in the MDL 1203 Fee and Cost Account are derived from assessments levied against plaintiffs in the MDL. A 4% assessment is applied to any payment made to plaintiffs in coordinated state cases and a 6% assessment is applied to any payment made to plaintiffs in federal MDL 1203 cases. See PTO No. 2622. As with the Fund B Attorneys' Fees Account, the assessments are taken from the fee of each plaintiff's individual attorney, if the plaintiff is represented. We determined in PTO No. 7763A that the Joint Fee Applicants were entitled to an award of $56,300,000 in attorneys'

---

7. The Trustee has already begun contacting pro se claimants via mail to confirm their contact information.

8. The letters that will be used, as well as the necessary forms, are attached to the accompanying Pretrial Order at Exhibits 2 through 8.

fees from that account.  Also approved was an award of costs from
that account in the amount of $771,451.  Even after the award of
attorneys' fees and costs, a significant sum of money will remain
in the MDL 1203 Fee and Cost Account.  In PTO No. 7763A we
stated:

> Based on the record before us, however, we
> cannot determine how the money remaining in
> the MDL 1203 Fee and Cost Account after the
> award of attorneys' fees and costs should be
> refunded.  The Joint Petitioners urge us to
> return a significant portion of the
> assessments for the federal Downstream Opt-
> Out cases and to return all assessments for
> the state Downstream Opt-Out cases without
> reducing the assessments for the Initial Opt-
> Out and PPH cases.  Without knowing exactly
> how much of the money currently available in
> the MDL 1203 Fee Account came from
> assessments levied against federal Initial
> Opt-Out and PPH cases, state Initial Opt-Out
> and PPH cases, federal Downstream Opt-Out
> cases, and state Downstream Opt-Out cases, we
> cannot determine the fair and equitable way
> to allocate the award and modify, if
> appropriate, the assessments.

PTO No. 7763A at 109-10.

In response, Plaintiffs' Liaison Counsel filed a report
outlining the deposits made into the MDL 1203 Fee and Cost
Account. As of December 31, 2007 the amount of money available
in the MDL 1203 Fee and Cost Account was $120,520,553.94.[9]
According to Plaintiffs' Liaison Counsel, the sources of these
funds are:

---

9.  This amount includes the addition of $9,236,359.63
transferred from the Settlement Fund to the MDL 1203 Fee and Cost
Account to reimburse it for previous disbursements for attorneys'
costs.  See PTO No. 7763A at 98.

-6-

- $36,808,212.99 from federal and coordinated state Initial Opt-Out and PPH cases;

- $73,253,101 from federal Downstream Opt-Out cases; and

- $3,042,062 from coordinated state Downstream Opt-Out cases.

In addition, the MDL 1203 Fee and Cost Account has earned $7,417,177.95 in interest from its inception through March 31, 2008.

The report of Plaintiffs' Liaison Counsel proposes that the $56,300,000 award of attorneys' fees from the MDL 1203 Fee and Cost Account be comprised of:

- $36,300,000 paid into the MDL 1203 Fee and Cost Account from federal and coordinated state Initial Opt-Out and PPH cases.

- $20,000,000 paid into the MDL 1203 Fee and Cost Account from federal and coordinated state Downstream Opt-Out cases.

The remaining money from the assessments paid from federal and coordinated state Initial Opt-Out and PPH cases would remain in the MDL 1203 Fee and Cost Account as part of the Reserve Fund for future awards in accordance with PTO No. 7763A at ¶ 7.  Going forward, the Initial Opt-Out and PPH cases would continue to pay 6% assessments in federal cases and 4% assessments in coordinated state cases.

With regard to costs, under the proposal of Plaintiffs' Liaison Counsel, $100 from the assessments paid into the MDL 1203

Fee and Cost Account by federal Downstream Opt-Out cases,[10] totaling approximately $3,467,600, would remain in that account. The $100 would in effect be a cost assessment on the federal Downstream Opt-Out cases, which had the benefit of coordinated pretrial services.

Furthermore, Plaintiffs' Liaison Counsel proposes that all other money remaining in the MDL 1203 Fee and Cost Account that was paid in from federal and coordinated state Downstream Opt-Out cases, that is, approximately $52,827,563, would be refunded pro rata with interest to those who paid the assessment. The proposal of Plaintiffs' Liaison Counsel is silent regarding what, if any, assessment should be levied on federal and coordinated state Downstream Opt-Out cases in the future.  No objections have been filed.

We are now able to make a more informed award from the MDL 1203 Fee and Cost Account with the supplemental information provided by Plaintiffs' Liaison Counsel.  In its proposal, Counsel has made a distinction between the Initial Opt-Out and PPH cases on the one hand, and the Downstream Opt-Out cases on the other.  It previously argued that all of the value of the Downstream Opt-Out cases was derived from the Settlement Agreement and thus all of the assessments paid by those cases into the MDL 1203 Fee and Cost Account should be refunded.  We

---

10.  The $100 assessment on each federal Downstream Opt-Out case for expense reimbursements would exclude consortium-only plaintiffs, that is, those plaintiffs who filed suit seeking compensation for loss of consortium, only.

disagreed.  In PTO No. 7763A we held that, for purposes of making
an appropriate award of attorneys' fees, half of the value of the
Downstream Opt-Out cases, or $1.15 billion, should be attributed
to the Settlement Agreement, while the other half, that is, $1.15
billion, should be attributed to the MDL.

Considering that this court valued $1.15 billion of the
Downstream Opt-Out cases under the Settlement Agreement, we agree
that the Downstream Opt-Out case assessments should be lower than
the Initial Opt-Out and PPH case assessments, whose value is
completely derived from the MDL.  We conclude that using
$20,000,000 from the money paid into the MDL 1203 Fee and Cost
Account by federal and coordinated state Downstream Opt-Out
plaintiffs to pay part of the $56,300,000 awarded in attorneys'
fees from that account is proper.  Moreover, the proposal of
Plaintiffs' Liaison Counsel that $100 from the assessments levied
on each federal Downstream Opt-Out case be used to pay attorneys'
costs is also fair.

Consequently, we will order the pro rata refund of
$52,827,563 from the MDL 1203 Fee and Cost Account to those who
have paid assessments in federal and coordinated state Downstream
Opt-Out cases.  Moreover, we will reduce the future assessments
levied on federal Downstream Opt-Out cases and coordinated state
Downstream Opt-Out cases to 2.4% and 1.6%, respectively.

We will decline, however, to refund the assessments
with interest.  We have not awarded interest in connection with
the other funds available for awards of fees and costs and to do

-9-

so will unduly complicate an already complicated process.  There is no reason to make an exception now with regard to the Downstream Opt-Out cases.  The interest accrued on the MDL 1203 Fee and Cost Account since its inception is better left where it is as part of the Reserve Fund available for any future awards of fees and costs pursuant to PTO No. 7763A, ¶ 7.

                              III.

          Plaintiffs' Liaison Counsel has also filed a proposed allocation and distribution of the overall fee award contained in PTO No. 7763A.  The proposed allocation and distribution is based upon a compendium of agreements that were entered into by the Joint Fee Applicants and have been filed with the court.  We have been advised that there are no off-the-record arrangements.

          Only one objection to the proposal of Plaintiffs' Liaison Counsel was filed.[11]  Julianne Bloomer has submitted a

_____

11.  Before filing the proposed allocation and distribution, Class Counsel solicited objections to the proposal.  The law firm of Johnson & Perkinson objected, claiming that it was entitled to interest on the fees it is due under the allocation plan.
     Johnson & Perkinson entered into an agreement which stated that:

          Class Counsel and the [Plaintiffs' Management
          Committee] do not object to an award of
          interest to the Individual Petitioners with
          respect to the principal amount awarded to
          them pursuant to this agreement and their
          individual petitions provided such interest
          is at the same rate and on the same basis as
          any award of interest to the [Plaintiffs'
          Management Committee] and Class Counsel.

Submission of Plaintiffs' Liaison Counsel Regarding the
                                        (continued...)

                              -10-

limited objection to the distribution of fees to RD Legal
Funding, LLC, ("RD Legal"), as the successor in interest to
Sherman & Salkow, P.C. ("Sherman & Salkow").  Bloomer states that
she worked for Sherman & Salkow and was promised that she would
receive payment from any award of attorneys' fees to Sherman &
Salkow.  Yet, under the terms of the proposed allocation and
distribution any fees to which Sherman & Salkow were entitled
will be paid to RD Legal.  Bloomer will receive nothing at this
point.

In PTO No. 7763A, we allowed responses to the proposed
allocation and distribution but ordered that any such responses:

> be limited, in substance, to any argument
> that Plaintiffs' Liaison Counsel has
> improperly calculated the allocable share of
> the aggregate fee awards made herein to any
> Joint Fee Applicant under the terms of the
> applicable agreements among the Joint Fee
> Applicants regarding fee allocation and any
> argument regarding the distribution
> procedures proposed by Plaintiffs' Liaison
> Counsel.

PTO No. 7763A at ¶ 8.

Bloomer's objection clearly exceeds the scope of
permissible responses under PTO No. 7763A.  Moreover, it is not

---

11.(...continued)
Allocation and Distribution of the Fee Award Submitted Pursuant
to Paragraph 8 of Pretrial Order No. 7763(A), Ex. D at ¶ 5.
    Since the Plaintiffs' Liaison Counsel has filed its
proposal, Johnson & Perkinson has not filed an objection with
this court.  Regardless, Johnson & Perkinson is not entitled to
interest.  This court has declined to award interest from any of
the accounts available for fee awards.  Thus, under the terms of
the agreement, Johnson & Perkinson is not entitled to such an
award.

the place of this court, in this context, to resolve the dispute between Bloomer, Sherman & Salkow, and RD Legal.  The objection raised by Bloomer clearly pertains to an agreement between lawyers for the allocation of attorneys' fees among them — not the award of common benefit fees.  Indeed, Bloomer has filed an action in state court against RD Legal and sought to vacate a judgment in the United States District Court for the Central District of California which determined that all legal fees payable to Sherman & Salkow be distributed to RD Legal.  See <u>RD Legal Funding, LLC v. Sherman & Salkow</u>, Civ. A. No. 07-4849.  It would be improper for this court to inject itself into this wholly separate matter.

There is a second dispute concerning Sherman & Salkow, and its legal successor in interest, RD Legal, that must be considered.  Plaintiffs' Liaison Counsel has calculated that under the terms of the compendium of agreements, RD Legal as the legal successor in interest to Sherman & Salkow is entitled to $4,074,283.51 in common benefit fees from the Settlement Agreement funds and $221,027.32 in common benefit fees from the MDL 1203 Fee and Cost Account.  There is, however, a question whether Sherman & Salkow, actually owes the MDL 1203 Fee and Cost Account $239,426.71 in unpaid assessments on its individual cases.  The Escrow Agent for the MDL 1203 Fee and Cost Account made a preliminary determination that Sherman & Salkow owes $239,426.71 in unpaid assessments.  Sherman & Salkow originally agreed with that determination but it is now contesting it.  As a

-12-

result, Plaintiffs' Liaison Counsel proposes that $239,426.71 of the common benefit fees owed RD Legal not be paid until the dispute regarding Sherman & Salkow's assessments is resolved. Plaintiffs' Liaison Counsel has stated that Sherman & Salkow and RD Legal have agreed to such a hold-back.

We too agree that this is the prudent course of action. Thus, we will order PNC Bank, N.A., as the Escrow Agent for the Fund A Escrow Account, to withhold $18,399.39 of the $4,074,283.51 owed to RD Legal in common benefit fees from the Settlement Agreement funds under the compendium of agreements. We will further order Gregory P. Miller, the Escrow Agent for the MDL 1203 Fee and Cost Account, to withhold the $221,027.32 owed to RD Legal in common benefit fees from the MDL 1203 Fee and Cost Account under the compendium of agreements. Together, these two hold-backs equal the $239,426.71 currently in dispute.

No objections have been filed to the allocation calculations submitted by Plaintiffs' Liaison Counsel. Nor has anyone objected to the distribution procedure. After reviewing both, this court concludes that the allocation is in accordance with the compendium of agreements and that the distribution procedure will allow an efficient and prompt distribution of funds. Therefore, we will approve the allocation and distribution proposed by Plaintiffs' Liaison Counsel.

IV.

The law firm of Hersh & Hersh has filed a request for the refund of 4% and 6% assessments from PPH cases it settled

-13-

after July 16, 2007.  Hersh & Hersh's motion makes two arguments. First, it contends that the "Joint Petition did not seek to capture fees from assessments made after the time of the filing of the Joint Petition" and second that "assessments paid in the PPH cases settled between the entry of PTO 2622 and the filing of the Joint Petition, were excessive ...."  Pls.' Request for Refund of 4% and 6% Assessments at 3.

Hersh & Hersh inaccurately characterizes the Joint Petition and PTO No. 7633A, both of which clearly contemplate that common benefit work has continued and will continue into the future.  Indeed, PTO No. 7633A explicitly outlines procedures for the award of fees and costs from the Reserve Funds.  See PTO No. 7633A at ¶ 7.  Thus, Hersch & Hersch's argument that since it paid assessments after July 16, 2007, that is, the date the Joint Petition was filed, those assessments should be refunded misunderstands PTO No. 7633A and the Reserve Funds created thereunder.

Moreover, this court has consistently declined to grant individual waivers or refunds of assessments paid into the MDL 1203 Fee and Cost Account.  See PTO No. 2622 at 44-47; PTO No. 7763A at 110-11.  We see no basis for doing so here. Accordingly, the application of Hersch & Hersch for a refund of assessments will be denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: DIET DRUGS                    :    MDL DOCKET NO. 1203
(PHENTERMINE, FENFLURAMINE,          :
DEXFENFLURAMINE) PRODUCTS            :
LIABILITY LITIGATION                 :
                                     :
THIS DOCUMENT RELATES TO:_____:_____
_____:
SHEILA BROWN, et al.                 :
                                     :
            v.                       :
                                     :
AMERICAN HOME PRODUCTS               :
CORPORATION                          :    CIVIL ACTION NO. 99-20593

**PRETRIAL ORDER NO. _____**

        AND NOW this 21st day of July, 2008, for the reasons
set forth in the accompanying Memorandum, it is hereby ORDERED
that:

1.    The AHP Settlement Trust's plan for the partial refund of
      amounts previously withheld from unrepresented Class Members
      or counsel for Class Members for Fund B Attorneys' Fees is
      APPROVED as follows:

      a.    To conserve administrative costs, no refund will be
            issued to any Refund Recipient where the Trust has
            determined that the amount of partial refund would be
            less than $25.

      b.    For all pro se Claimants and Derivative Claimants
            identified on Exhibit 1 hereto as "Refund Recipients,"
            the Trust has mailed a "Trust's Contact Information
            Letter," substantially in the form attached hereto as

Exhibit 2, to confirm or elicit the Claimant's current contact information.

i.   For any pro se Claimant or Derivative Claimant who does not respond to the Trust's Contact Information Letter, the Trust will employ its normal search procedures in order to obtain current contact information.  The Trust's normal search procedures include, but are not limited to: (1) reexamining the Claimant's file to obtain alternative contact information; (2) making queries via the internet to ascertain the current telephone number of the Claimant; (3) posting a listing of uncashed benefit checks on the AHP Diet Drug Settlement Website; and (4) performing such other search procedures as the Trustee/Claims Administrator deems appropriate under the circumstances.

c.   Within ten business days after the entry of this Order, the Trust will provide a Notice of Partial Refund Amount to Refund Recipients as follows:

i.   Pro se Claimants.  The Trust will send a letter, substantially in the form attached hereto as Exhibit 3, to all pro se Claimants entitled to refunds meeting the threshold set forth above, informing them of the amount of their refund. Included with this letter will be a Subrogation

-2-

Form, Exhibit 4, which all pro se Claimants will be required to complete prior to receiving their refunds.

(1) All pro se Claimants subject to Court Approved Procedure 10, as approved in PTO No. 6085 (Mar. 29, 2006), will also receive a copy of a "Certificate of Exemption from Medicare Procedure," attached hereto as Exhibit 5, and be afforded the opportunity to claim exemption pursuant to that procedure.

(2) For any pro se Claimant subject to Court Approved Procedure 10 who does not timely complete the Certificate of Exemption from Medicare, the Trust will notify Medicare as required by Court Approved Procedure 10 concerning the payment to be made as a result of the partial refund.

ii. Counsel for Class Members. Each attorney identified as a Refund Recipient in Exhibit 1 attached hereto, will receive a letter, substantially in the form attached hereto as Exhibit 6, informing counsel of the amount of the refund. Included with this form will be IRS Form W-9, attached hereto as Exhibit 7, and a "Counsel Certification Form," attached hereto as Exhibit 8.

-3-

(1) Any attorneys who do not complete and return IRS Form W-9 will, as required by Treasury Department regulations, have 28% of their refunds withheld by the Trust and remitted to the IRS.

(2) All attorney Refund Recipients must complete and return the Counsel Certification Form in order to be eligible to receive their refund.

d. Within ninety days after entry of this Order, the Trust will:

i. Mail refunds via UPS Ground to all Refund Recipients who have completed and returned the required forms to the Trust except those who do not meet the threshold for payment.

ii. Thereafter, the Trust will mail refunds, semi-monthly to Refund Recipients who have satisfied the documentation requirements set forth in this Refund Plan.

2. PNC Bank, N.A. ("PNC") as Escrow Agent for Fund A Escrow Account ("Fund A"), the Fund B Attorneys' Fees Account ("Fund B") and the Supplemental Class Settlement Fund created under the Nationwide Class Action Settlement with American Home Products Corporation, as amended from time to time, shall transfer the amount of $124,633,410.60 from Fund B to Fund A and shall transfer the amount of $71,447,638.10 from the Supplemental Class Settlement Fund to Fund A so

-4-

that Fund A may function as the disbursing account with
respect to the distribution of counsel fees as set forth in
paragraph 2.a of this Order.

a.   The aggregate award of fees from Fund A, Fund B and the
     Supplemental Class Settlement Fund that was made in
     Pretrial Order No. 7763A shall be allocated among and
     distributed and paid to the following law
     firms/attorneys in the following amounts:

| Payee Attorney/Law Firm | Payment Amount |
|---|---|
| Alexander & Associates, PC | $9,606,706.52 |
| Alley, Clark, Greiwe & Fulmer | $16,011.63 |
| Anapol, Schwartz, Weiss, Cohan, Feldman and Smalley, PC | $8,040,234.60 |
| Ashcraft & Gerel, LLP | $4,152,693.73 |
| Baker, John T., PC | $999,109.84 |
| Baron & Budd, PC | $2,432,077.60 |
| Berger & Montague, PC | $2,438,065.90 |
| Bernstein, Litowitz, Berger & Grossman | $2,900,199.35 |
| Blume, Goldfaden, Berkowitz, Donnelly, Fried & Forte | $512,069.32 |
| Briggs & Morgan P.A., Escrow Agent for Brosnahan, Joseph and Suggs | $3,833,881.51 |
| Burke & Burke, Ltd. | $279,340.10 |
| Chimicles & Tikellis, LLP | $954,172.76 |
| Chitwood Harley Harnes, LLP | $51,770.25 |
| Climaco, Lefkowitz, Peca, Wilcox & Garofoli Co., LPA | $142,539.65 |
| Cohen, Milstein, Hausfeld & Toll, PLLC | $5,213,672.87 |
| Cohn, Lifland, Pearlman, Herrman & Knopf, LLP | $1,454,544.54 |

| | |
|---|---|
| Cummings, Cummings & Dudenhefer | $28,038,984.65 |
| Davis, Saperstein & Salomon, PC | $2,578,806.34 |
| Doyle, James L., II | $972,831.04 |
| Eichen, Levinson & Crutchlow, LLP | $533,652.75 |
| Epstein, Brown & Gioia, LLC | $512,069.32 |
| Ervin Gonzalez | $461,396.19 |
| Feldman, Shepherd, Wohlgelernter & Tanner | $158,000.33 |
| Fibich, Hampton & Leebron, LLP | $8,087,517.87 |
| Finkelstein Thompson LLP | $808,382.52 |
| Fronkovitch, Anetakis, Colantonio & Simon | $1,321,802.85 |
| G. Martin Meyers, PC | $51,770.25 |
| Gancedo & Nieves, LLC | $796,771.30 |
| Garwin Gerstein & Fisher LLP, successor in interest to Garwin, Bronzaft, Gerstein & Fisher LLP | $1,563,793.71 |
| Harrison, Kemp, Jones & Coulthard, LLP | $2,222,523.41 |
| Hill & Parker | $16,311,737.96 |
| Hill, Peterson, Carper, Bee & Deitzler, PLLC | $1,454,568.36 |
| Hopkins, Law Offices of Guy E. | $1,339,729.82 |
| Hutton & Hutton Law Firm, LLC | $416,110.80 |
| Issacharoff, Samuel | $5,768,924.79 |
| Johnson & Perkinson and Plante & Hanley, PC, jointly | $367,774.08 |
| Joyce, Edward T. & Associates, PC | $1,684,947.22 |
| Keefe Bartels & Clark, LLC, successor in interest to Lynch Martin | $676,550.28 |
| Keller Rohrback LLP | $1,910,914.40 |
| Kenneth B. Moll & Associates, Ltd. | $460,229.97 |
| Kohn Swift & Graf, PC | $2,271,927.81 |
| Krause Kalfayan Benink & Slavens, LLP | $51,770.25 |
| Law Offices of Charles J. Piven, PA | $105,769.92 |

| | |
|---|---|
| Lawrence E. Feldman & Associates | $1,260,264.29 |
| Leebron & Robinson | $1,339,729.82 |
| Lesser, Seth R. | $653,263.19 |
| Levin, Fishbein, Sedran & Berman | $115,511,230.03 |
| Levin, Papantonio, Thomas, Mitchell, Echsner & Proctor, PA | $3,256,592.25 |
| Levy, Angstreich, Finney, Baldante, Rubenstein & Coren, PC | $6,194,230.80 |
| Lewis, Law Offices of Donald B. | $967,929.91 |
| Lieff, Cabraser, Heimann & Bernstein, LLP | $7,662,882.18 |
| Locks Law Firm | $10,170,178.28 |
| Lombardi and Lombardi, PA | $533,652.65 |
| Lopez, Hodes, Restaino, Milman & Skikos | $9,792,530.77 |
| Lukins & Annis, PS | $2,171,049.76 |
| Mackin, Dennis S., Sr. | $36,925.44 |
| Martinez, Barrera & Martinez, LLP | $1,702,454.32 |
| Milberg Weiss, LLP | $164,750.62 |
| Nisen & Elliot, LLC | $2,442,160.17 |
| Pellettieri, Rabstein & Altman | $1,579,744.39 |
| Petroff & Associates | $874,652.27 |
| Powell Law Offices | $396,101.94 |
| Randall & Schumacher, successor in interest to Norum & Pearson, PA | $75,274.44 |
| Robinson & Cole LLP | $2,359,033.06 |
| Alex MacDonald, pursuant to agreement with Robinson & Cole LLP | $7,077,099.17 |
| Robinson, Calcagnie & Robinson, Inc. | $3,930,438.44 |
| Roda Nast, PC | $9,752,219.04 |
| Schad, Diamond & Schedden, PC | $2,601,516.66 |
| Shainwald, Law Offices of Sybil, PC | $4,554.34 |
| Sheller, PC | $2,867,289.10 |

| | |
|---|---|
| Sherlock, Law Office of Patrick J. | $447,844.21 |
| RD Legal Funding, LLC as successor in interest to Sherman & Salkow, PC | $4,074,283.51 |
| Shrager Spivey & Sachs | $9,606,706.52 |
| Slack & Davis, LLP | $176,078.85 |
| Spangenberg, Shibley & Liber, LLP | $9,777.58 |
| Strauss & Troy | $198,259.61 |
| The Masters Law Firm, LC | $1,454,568.36 |
| The Segal Law Firm | $1,321,802.85 |
| The Thistle Law Firm | $104,472.47 |
| Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano | $1,580,084.34 |
| Tschirn, Darrly J. | $5,971,113.66 |
| Weisman, Kennedy & Berris Co. | $2,810,788.54 |
| Wilentz, Goldman & Spitzer, PA | $5,240,058.04 |
| Williams Love O'Leary & Powers, PC | $3,563,983.08 |
| Williams, Cuker & Berezofsky | $1,569,655.81 |
| Wolf, Haldenstein, Adler, Freeman & Herz, LLP | $186,747.61 |
| Total | $357,650,320.73 |

   b. No earlier than twenty days after the date of this

     Order and as soon thereafter as is commercially

     reasonable, PNC shall disburse from Fund A, as the

     disbursing account hereunder, the payments set forth in

     paragraph 2.a of this Order, as limited by paragraph

     2.c of this Order.  PNC shall make such payments by

     check, and deliver such checks to the payees by

     overnight courier in a manner that generates a written

     acknowledgment of receipt by the payee.

c.   The amount of $18,399.39, which would otherwise be
     payable to Sherman & Salkow, P.C. or its successor in
     interest, RD Legal Funding, LLC, shall be withheld
     until further order of this court pending a final
     determination by this court as to whether that amount
     should have been deposited and paid into the MDL 1203
     Fee and Cost Account by Sherman & Salkow, P.C. in
     accordance with the Escrow Agent's preliminary
     decision, dated April 29, 2004.

d.   Arnold Levin, Esquire, Plaintiffs' Liaison Counsel in
     MDL 1203, shall act as liaison between the payees
     identified in paragraph 2.a of this Order and PNC to
     facilitate the orderly payment of funds as required by
     this Order.

e.   In order to facilitate the payments in compliance with
     federal tax law, each payee listed in paragraph 2.a of
     this Order shall furnish to Mr. Levin the payee's
     Federal Taxpayer Identification Number, current street
     address, current telephone number, a written
     certification as to whether the payee is or is not
     subject to backup withholding under federal tax laws,
     and the name of the individual responsible for
     receiving payment hereunder.  Mr. Levin shall assemble
     and supply this information to PNC in an orderly manner
     suitable to the bank.

-9-

f.    PNC shall have no obligation to make the payments called for by paragraph 2.a of this Order to any person who has not fully complied with paragraph 2.e of this Order.

3.    The award of $56,300,000 in attorneys' fees from the MDL 1203 Fee and Cost Account shall be paid as follows:

a.    $36,300,000 from sums paid into the MDL 1203 Fee and Cost Account from assessments on federal and coordinated state Initial Opt-Out and PPH cases.

b.    $20,000,000 from sums paid into the MDL 1203 Fee and Cost Account from assessments on federal and coordinated state Downstream Opt-Out cases.

4.    The aggregate award of fees from the MDL 1203 Fee and Cost Account that was made in Pretrial Order No. 7763A shall be allocated among and distributed and paid to the following law firms/attorneys in the following amounts:

| Payee Attorney/Law Firm | Payment Amount |
|---|---|
| Alley, Clark, Greiwe & Fulmer | $4,824.40 |
| Ashcraft & Gerel, LLP | $801,115.45 |
| Baker, John T., PC | $139,342.45 |
| Briggs & Morgan P.A., escrow agent for Brosnahan, Joseph and Sugges | $289,687.92 |
| Climaco, Lefkowitz, Peca, Wilcox & Garofoli Co., LPA | $45,395.49 |
| Cohen, Milstein, Hausfeld & Toll, PLLC | $721,123.64 |
| Cummings, Cummings & Dudenhefer | $7,181,643.19 |
| Gancedo & Nieves, LLC | $112,313.69 |
| Harrison, Kemp, Jones & Coulthard, LLP | $680,974.48 |

| | |
|---|---|
| Hutton & Hutton Law Firm, LLC | $163,821.82 |
| Levin, Fishbein, Sedran & Berman | $33,263,419.47 |
| Levin, Papantonio, Thomas, Mitchell, Echsner & Proctor, PA | $879,226.55 |
| Lieff, Cabraser, Heimann & Bernstein, LLP | $853,883.03 |
| Lopez, Hodes, Restaino, Milman & Skikos | $1,128,785.27 |
| Mackin, Dennis S., Sr. | $10,944.93 |
| Randall & Schumacher, successor in interest to Norum & Pearson, PA | $3,851.46 |
| Robinson, Calcagnie & Robinson, Inc. | $982,900.94 |
| Robinson & Cole LLP | $488,084.65 |
| Alex MacDonald, pursuant to agreement with Robinson & Cole LLP | $1,464,253.94 |
| Roda Nast, PC | $2,847,658.77 |
| Shainwald, Law Offices of Sybil, PC | $1,207.68 |
| RD Legal Funding, LLC, as successor interest to Sherman & Salkow, PC | $221,027.32 |
| Slack & Davis, LLP | $55,709.52 |
| Spangenberg, Shibley & Liber, LLP | $2,745.65 |
| The Thistle Law Firm | $35,969.16 |
| Tschirn, Darryl J. | $2,407,029.47 |
| Weisman, Kennedy & Berris Co. | $513,329.53 |
| Williams Love O'Leary & Powers, PC | $760,303.42 |
| Total | $56,060,573.29 |

      a.    No earlier than twenty days from the date of this Order and as soon thereafter as is reasonably practicable, Gregory P. Miller, Esquire, as Escrow Agent for the MDL 1203 Fee and Cost Account, shall disburse from said account the payments set forth in paragraph 4 of this Order, as limited by paragraph 4.b of this Order.

i.   Mr. Miller shall make the payments described in paragraph 4 of this Order by check, and shall deliver such checks to the payees by overnight courier in a manner that generates a written acknowledgment of receipt by the payee.  In order to make these payments, Mr. Miller may transfer funds from the MDL 1203 Fee and Cost Account to a disbursement account at an appropriate financial institution.

ii.  Arnold Levin, Esquire, as Plaintiffs' Liaison Counsel in MDL 1203, shall act as liaison between the payees identified in paragraph 4 of this Order and Mr. Miller to facilitate the orderly payment of funds as required by this Order.

iii. In compliance with federal tax law, each payee listed in paragraph 4 of this Order shall furnish to Mr. Levin the payee's Federal Taxpayer Identification Number, current street address, telephone number, a written certification as to whether the payee is or is not subject to backup withholding under federal tax laws, and the name of the individual responsible for receiving payment hereunder.  Mr. Levin shall assemble and supply this information to Mr. Miller in an orderly manner suitable to Mr. Miller.

iv.  Mr. Miller shall have no obligation to make the
     payments called for by paragraph 4 of this Order
     to any person who has not fully complied with
     paragraph 4.a.iii of this Order.

b.   The amount of $221,027.32, which would otherwise be
     payable to Sherman & Salkow, P.C. or its successor in
     interest, RD Legal Funding, LLC, shall be withheld
     until further order of this court pending a final
     determination by this court as to whether that amount
     should have been deposited and paid into the MDL 1203
     Fee and Cost Account by Sherman & Salkow, P.C. in
     accordance with the Escrow Agent's preliminary
     decision, dated April 29, 2004.

5.  $100 from each assessment levied on federal Downstream Opt-
    Out cases, with the exception of consortium-only plaintiffs,
    will be retained in the MDL 1203 Fee and Cost Account in
    satisfaction of the expense reimbursements from said account
    in Pretrial Order No. 7763A.

6.  Pretrial Order No. 2622 is hereby modified so that as of the
    date of this Order the assessment paid into the MDL 1203 Fee
    and Cost Account is reduced to 2.4% for federal Downstream
    Opt-Out cases and 1.6% for coordinated state Downstream Opt-
    Out cases.

7.  Within thirty days of entry of this Order, Gregory P.
    Miller, as Escrow Agent for the MDL 1203 Fee and Cost
    Account, shall file a plan for the pro rata refund of money

-13-

paid into MDL 1203 Fee and Cost Account from federal and coordinated state Downstream Opt-Out cases that is not awarded pursuant to paragraph 3.b of this Order or retained pursuant to paragraph 5 of this Order.  Any objections to said plan will be filed and served within fifteen days of its filing.  Any responses thereto shall filed and served within fifteen days following.

8.   Pursuant to paragraph 3.c of Pretrial Order No. 7763A, the Fund Administrator shall pay common benefit fees in the aggregate amount equal to 6.4% of the Individual Payment Amounts that become payable to any Category One Class Member pursuant to an Authorization Order issued by the court after April 8, 2008, the date on which the court issued Pretrial Order No. 7764.  Any such aggregate amount shall be allocated among and paid to the following law firms/attorneys in accordance with the following relative payment percentage amounts:

| Payee Attorney/Law Firm | Relative Payment Percentage |
|---|---:|
| Anapol, Schwartz, Weiss, Cohan, Feldman and Smalley, PC | 2.824% |
| Hill & Parker | 5.648% |
| Issacharaoff, Samuel | 2.824% |
| Locks Law Firm | 2.824% |
| Alexander & Associates, PC | 13.4458% |
| Baron & Budd, PC | 3.404% |
| Martinez, Barrera & Martinez, LLP | 2.3828% |
| Shrager Spivey & Sachs | 13.4458% |

-14-

| | |
|---|---|
| Doyle, James L. II | 1.3616% |
| Alley, Clark, Greiwe & Fulmer | 0.00363362% |
| Ashcraft & Gerel, LLP | 1.0235554% |
| Baker, John T., P.C. | 0.25588885% |
| Briggs & Morgan P.A., escrow agent for Brosnahan, Joseph and Suggs | 1.02609829% |
| Climaco, Lefkowitz, Peca, Wilcox & Garofoli CO., LPA | 0.03190614% |
| Cohen, Milstein, Hausfeld & Toll, PLLC | 1.33639295% |
| Cummmings, Cummings & Dudenhefer | 6.59145187% |
| Gancedo & Nieves, LLC | 0.20385185% |
| Harrison, Kemp, Jones & Coulthard, LLP | 0.50233118% |
| Hutton & Hutton Law Firm, LLC | 0.08749879% |
| Levin, Fishbein, Sedran & Berman | 26.17464913% |
| Levin, Papantonio, Thomas, Mitchell, Echsner & Proctor, PA | 0.757431% |
| Lieff, Cabraser, Heimann & Bernstein, LLP | 1.86846021% |
| Lopez, Hodes, Restaino, Milman & Skikos | 2.55075456% |
| Mackin, Dennis S., Sr. | 0.00841235% |
| Randall & Schumacher, successor in interest to Norum & Paerson, PA | 0.02047751% |
| Robinson, Calcagnie & Robinson, Inc. | 0.92826623% |
| Robinson & Cole LLP | 0.57550541% |
| Alex MacDonald, pursuant to agreement with Robinson & Cole LLP | 1.72651623% |
| Roda Nast, PC | 2.2294943% |
| Shainwald, Law Offices of Sybil, PC | 0.00106322% |
| RD Legal Funding, LLC, as successor in interest to Sherman and Salkow, PC | 1.06292454% |
| Slack & Davis, LLP | 0.03947981% |
| Spangenberg, Shibley & Liber, LLP | 0.00225502% |
| The Thistle Law Firm | 0.02289885% |

| | |
|---|---|
| Tschirin, Darryl J. | 1.24545553% |
| Weisman, Kennedy & Berris Co. | 0.69801591% |
| Williams Love O'Leary & Powers, PC | 0.86533126% |

BY THE COURT:


/s/ Harvey Bartle III
                                    C.J.

-16-