IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/ | : | |
| FENFLURAMINE/DEXFENFLURAMINE) | : | MDL NO. 1203 |
| PRODUCTS LIABILITY LITIGATION | : | |
| _____ | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| | : | |
| SHEILA BROWN, et al. | : | |
| | : | |
| v. | : | |
| | : | |
| AMERICAN HOME PRODUCTS | : | |
| CORPORATION | : | CIVIL ACTION NO. 99-20593 |

**MEMORANDUM AND PRETRIAL ORDER NO.** _____

Bartle, C.J.                               September 30, 2008

Before the court is the motion of Jerry Janzen, as personal representative of Jennifer Janzen ("Ms. Janzen"), seeking leave to register for benefits under the Diet Drug Nationwide Class Action Settlement Agreement with Wyeth[1] ("Settlement Agreement").  Ms. Janzen failed to register with the AHP Settlement Trust ("Trust") before the May 3, 2003 deadline. Mr. Janzen, however, maintains that the delay was due to "excusable neglect."

I.

According to Mr. Janzen's motion and accompanying exhibits, Ms. Janzen[2] filed an Intermediate Opt-Out Form on

_____

1.  Prior to March 11, 2002, Wyeth was known as American Home Products Corporation.

2.  On October 13, 2003, Ms. Janzen died of Asystole, Ventricular Tachycardia, Exacerbation Congestive Heart Failure, and
                                              (continued...)

May 1, 2003.[3]  Mr. Janzen forwarded to Wyeth's counsel on or about December 18, 2006 a request to revoke this opt-out.  By letter dated January 31, 2007, Wyeth consented to the "revocation of any such Opt-Out(s)."[4]  Nonetheless, the letter also contained several caveats.  It stated, among other things, that "Wyeth's consent to revocation of an Opt-Out does not concede or imply that the person requesting the revocation qualifies as a Class Member or is entitled to any benefits under the Nationwide Settlement Agreement, as amended."  The letter further provided that "Wyeth's consent to revocation of an Opt-Out does not concede or imply that the person requesting the revocation is properly registered under the Nationwide Settlement Agreement."  On March 5, 2007, Mr. Janzen filed the present motion, seeking leave to register for benefits with the Trust after the May 3, 2003 deadline.

---

2.   (...continued)
Cardiomyopathy.

3.    A Diet Drug Recipient was eligible to exercise an Intermediate Opt-Out if she was not a member of "Subclasses 2(a), 2(b) or 3, and [she was] diagnosed by a Qualified Physician as FDA Positive by an Echocardiogram performed between the commencement of Diet Drug use and the end of the Screening Period."  Settlement Agreement § IV.D.3.a.  Mr. Janzen has not offered any evidence of Ms. Janzen's participation in the Settlement Agreement prior to the filing of the Intermediate Opt-Out Form.

4.    In its response, Wyeth alleges that it previously consented to a revocation of Ms. Janzen's Intermediate Opt-Out on June 15, 2004.  See Exhibit A, attached to Wyeth's Response.  At that time, Wyeth advised Ms. Janzen that for a period of ninety (90) days it would not oppose any motion for late registration.  See id.

II.

The Settlement Agreement approved by this court in Pretrial Order ("PTO") No. 1415 provides strict deadlines for Class Members to seek benefits from the Trust. Specifically, the Settlement Agreement provides, in part:

> The following Class Members, and only such Class Members, shall be entitled to the compensation benefits from Fund B ("Matrix Compensation Benefits"):
>
> a.   Diet Drug Recipients who have been diagnosed by a Qualified Physician as FDA Positive or as having Mild Mitral Regurgitation by an Echocardiogram performed between the commencement of Diet Drug use and the end of the Screening Period <u>and who have registered for further settlement benefits by [May 3, 2003]</u> ....

Settlement Agreement § IV.B.1.a (emphasis added).

The deadlines imposed by the Settlement Agreement may be extended if a movant can show that his or her failure to meet the deadlines was due to "excusable neglect." In <u>In re Orthopedic Bone Screw Prods. Liab. Litig.</u>, 246 F.3d 315, 323 (3d Cir. 2001), our Court of Appeals reiterated the Supreme Court's analysis of excusable neglect as set forth in <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380 (1993). Four factors should be evaluated when deciding whether excusable neglect exists: (1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential effect on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and

-3-

(4) whether the movant acted in good faith.  Pioneer, 507 U.S.
at 395; Bone Screw, 246 F.3d at 322-23.  We shall discuss each
of these factors in turn.

          Under the first prong, we must consider the danger of
prejudice to Wyeth should an extension be granted.[5]  Mr. Janzen
argues that acceptance of his claim after the deadline does not
prejudice nonmoving parties to this action because: (1) Wyeth
has already set aside "several billion dollars to fund claims";
and (2) Wyeth "expected" that individuals would come forward at
a later time since the Settlement Agreement governs the parties'
relationship until December 15, 2015.  Wyeth argues generally
that Mr. Janzen has not made a showing of excusable neglect.

          As we have stated previously, the finality provided to
Wyeth, the Trust and other Class Members by the Settlement
Agreement has been of paramount importance throughout the
administration of the Settlement Agreement.  See, e.g., PTO No.
7530 at 6 (Nov. 26, 2007).  If Mr. Janzen's motion were the only
one of its kind, the late registration may pose little danger of
prejudicing the non-movants.  Mr. Janzen, however, certainly is
not alone.  "Although the admission of any particular claimant
may not in itself cause a substantial drain on the Trust,
allowing this claimant to escape the firm deadlines set forth in
the Settlement Agreement ... will surely encourage others to
seek the same relief."  PTO No. 3923 at 3 (Sept. 10, 2004).

_____

5.  The Trust did not oppose Mr. Janzen's motion.

Second, we must consider the length of the delay in meeting the registration deadline.  Mr. Janzen does not address the length of his delay in registering for benefits.  Mr. Janzen, however, argues that his delay does not adversely affect this proceeding because:  (1) the Settlement Agreement has been pending for many years; (2) the Settlement Agreement has undergone a number of amendments; (3) the Trust has many claims in process that are pending payment and/or resolution; and (4) the Trust, by virtue of the language in the Settlement Agreement, should have anticipated the payment of benefits until December 15, 2015.

The May 3, 2003 deadline to register for benefits is not an arbitrary date but was set to give Class Members ample time to complete the necessary forms and submit them to the Trust.  Ms. Janzen sought to opt-out of this process on May 1, 2003, two days before the deadline to register for benefits with the Trust.  Ms. Janzen subsequently died on October 13, 2003 and Mr. Janzen waited until March, 2007 to seek leave from this court to register for benefits.  This is not an insignificant amount of time.  To allow claimant this lengthy extension would undermine the finality of the Settlement Agreement and open the door to similarly situated Class Members who presently are time-barred.

Third, we must evaluate the reasons for the delay. Mr. Janzen merely asserts that the "alleged late claim submission" was not in his control.  Mr. Janzen also explains

-5-

that, subsequent to Ms. Janzen's death, he "determined that adhering to the terms of the Settlement Agreement was a preferable method of pursuing [Ms. Janzen's] diet drug claim." This is not an adequate explanation for the delay.

Finally, we have no reason to doubt that Mr. Janzen acted in good faith.  The danger of prejudice to nonmovants, the length of the delay and its potential effect on judicial proceedings, and the reason proffered for the delay, however, weigh heavily in favor of finding that Mr. Janzen's actions do not constitute excusable neglect.  Accordingly, Mr. Janzen is not entitled to an extension of the applicable deadline and is out of time to register for benefits with the Trust.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: DIET DRUGS (PHENTERMINE/      :
FENFLURAMINE/DEXFENFLURAMINE)        :   MDL NO. 1203
PRODUCTS LIABILITY LITIGATION        :
_____  :
                                     :
THIS DOCUMENT RELATES TO:            :
                                     :
SHEILA BROWN, et al.                 :
                                     :
          v.                         :
                                     :
AMERICAN HOME PRODUCTS               :
CORPORATION                          :   CIVIL ACTION NO. 99-20593

**PRETRIAL ORDER NO.**

AND NOW, on this 30th day of September, 2008, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion of Jerry Janzen, as personal representative of Jennifer Janzen, for leave to register for benefits with the AHP Settlement Trust is DENIED.

BY THE COURT:

/s/ Harvey Bartle III
                                                    C.J.