IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/ FENFLURAMINE/DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | : : : | MDL NO. 1203 |
| THIS DOCUMENT RELATES TO: | : : | |
| SHEILA BROWN, et al. | : : | |
| v. | : : | |
| AMERICAN HOME PRODUCTS CORP. AND ALL OTHER ACTIONS | : : | NO. 99-20593 |

## MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO. 8646

Bartle, C.J.                                           June 2, 2011

Before the court is the joint petition of the Current Joint Fee Applicants,[1] including the Current Plaintiffs' Liaison Counsel Fee Applicant,[2] for an award of attorneys' fees and expense reimbursements relating to common benefit work performed from January 1, 2010 through December 31, 2010 (the "Common Benefit Period"). This court has previously awarded fees in Pretrial Order ("PTO") Nos. 2622, 7763A, and 8516.

---

1. The Current Joint Fee Applicants are: (1) Anapol, Schwartz, Weiss, Cohan, Feldman and Smalley, P.C., Class Counsel; (2) Cummings, Cummings & Dudenhefer, Co-Chair of the Plaintiffs' Management Committee ("PMC") and Class Counsel; (3) Levin, Fishbein, Sedran & Berman, Plaintiffs' Liaison Counsel, Co-Chair of the PMC and Class Counsel; and (4) Roda Nast, P.C., a member of the PMC.

2. The Current Plaintiffs' Liaison Counsel Fee Applicant is Levin, Fishbein, Sedran & Berman.

All of the current Joint Fee Applicants seek an aggregate award of attorneys' fees in the amount of $3.5 million from the Fund A Escrow Account for Class-related services performed during 2010, with such aggregate fee to be allocated and paid in accordance with a unanimous agreement among them.

The Current Plaintiffs' Liaison Counsel Fee Applicant requests an award of attorneys' fees in the amount of $2.5 million to be paid from the MDL 1203 Fee and Cost Account for MDL-related services performed during 2010.

Finally, Current Joint Fee Applicants Levin, Fishbein, Sedran & Berman and Roda Nast petition for reimbursement of $9,394.97 in out-of-pocket expenses to be allocated for payment equally as between the Settlement Fund and the MDL 1203 Fee and Cost Account.

## I. BACKGROUND

We have recently discussed in detail the background of the MDL 1203 litigation, the 2002 Interim Fee Award, and the April 2008 Final Fee Award. See In re Diet Drugs Prods. Liab. Litig., No. 99-20593, 2010 WL 3292787, at *1-5 (E.D. Pa. Aug. 19, 2010). Consequently, we need not repeat that discussion here.

On August 19, 2010, we approved a further award of counsel fees and expense reimbursements to ten law firms. These law firms represented the PMC, Class Counsel for claimants under the Settlement Agreement, and/or were appointed to serve on the Seventh Amendment Liaison Committee. Diet Drugs, 2010 WL

-2-

3292787, at *1.  This award reimbursed time expended and costs incurred from April 1, 2007 through December 31, 2009.

According to the report of the court-appointed auditor, Alan B. Winikur, C.P.A., the Joint Fee Applicants incurred $1,585,489.29 in litigation expenses for the common benefit of class members and plaintiffs in MDL 1203 during that time period. Id. at *15.  We ordered that these amounts be paid, reimbursed, or allocated.  Id.

With respect to attorneys' fees, we awarded the following amounts:  (1) $15 million from the Fund A Escrow Account and (2) $6.58 million from the MDL 1203 Fee and Cost Account.  Id. at *13-*14.  We applied the percentage-of-recovery method to determine the appropriate amount of counsel fees.

The percentage-of-recovery method awards as counsel fees a percentage of the settlement value.  Id.  We valued the Settlement Agreement at $6,437,211,516.  Id. at *8.  To determine the reasonable percentage of that amount to award, we considered the Gunter/Prudential Factors and concluded that 6.98% of the settlement value was a fair and appropriate award.  Id.

We also cross-checked our final figures using the lodestar analysis to ensure that counsel would not receive a "windfall."  Id. at *13.  The lodestar cross-check on the $15 million fee award revealed that the lodestar multiplier was 1.08, which is less than the average in other super-mega-fund cases. Id. at *13.  We concluded that the attorneys' fees award was

-3-

appropriate and that the Joint Fee Applicants were not receiving a windfall for their services.  Id.

## II.  CURRENT JOINT PETITION FOR AWARD OF ATTORNEYS' FEES AND EXPENSE REIMBURSEMENTS

On February 25, 2011, Mr. Winikur[3] filed his Sixth Audit Report setting forth the results of his audit of the professional time and expenses reported by counsel as eligible for payment or reimbursement for the period from January 1, 2010 through December 31, 2010.  In this Report, Mr. Winikur stated that four law firms had performed compensable "common benefit" work during 2010:  (1) Anapol, Schwartz, Weiss, Cohan, Feldman and Smalley, P.C.; (2) Cummings, Cummings & Dudenhefer; (3) Levin, Fishbein, Sedran & Berman; and (4) Roda Nast, P.C.

Mr. Winikur reports that Class Counsel and the PLC performed 7,661.55 hours of professional services during 2010.  The lodestar value for this common benefit work was $3,069,827.25.  The total amount of reimbursable expenses incurred by these attorneys during 2010 was $160,290.88.  According to Winikur, the court has authorized previously payment of common benefit expenses from the MDL Fee and Cost Account in

_____

3.  Mr. Winikur must file a report on or before March 15 of each year regarding the time and expenses submitted for examination by the Fee Petitioners pursuant to PTO No. 7763A.  Diet Drugs, 2010 WL 3292787, at *4.  Within thirty days of the filing of his report, Class Counsel, the PLC, and any eligible fee applicant who expended professional time or incurred expenses which are included in the Audit Report may file a petition for an award of attorneys' fees.  Id.

the total amount of $150,895.91 for the same period ending on December 31, 2010. These were bona fide expenses paid from that account.

Pursuant to the Settlement Agreement, an aggregate global settlement fund of $3.75 billion was created. Originally, two funds, known as Fund A and Fund B, were established to pay for different types of benefits to class members. Fund A was created to provide purchase price refunds, free echocardiograms, cash to pay for certain medical services, and medical research related to cardiovascular disease. Diet Drugs, 2010 WL 3292787, at *2. The sum of $200 million was placed into a "Fund A Escrow Account" for the purpose of paying attorneys' fees to Class Counsel and other attorneys in connection with Fund A benefits provided to class members. Id. Any amounts not awarded as attorneys' fees from this account will be refunded to Wyeth. Id. As of December 31, 2010, the Fund A Escrow Account had a total balance of $5,962,258.87.

Fund B was established to provide "Matrix Compensation Benefits" to class members who were diagnosed with serious VHD. Id. In connection with this Fund, a "Fund B Attorneys' Fees Account" was created to pay attorneys' fees to Class Counsel and Common Benefit Attorneys involved in creating the Matrix benefits available to class members. Id. Wyeth agreed that "attorneys' fees should be awarded and paid as a percentage of or otherwise based on the net present value, as of the Final Judicial Approval Date, of the maximum amounts which AHP may be legally obligated

-5-

to pay to Fund B for the benefit of the Settlement Class, regardless of the amount of claims actually paid at any given point in time." Id. The sum of $229 million was originally transferred from Fund B into the Fund B Attorneys' Fees Account. Id. As of December 31, 2010, the Fund B Attorneys' Fees Account had $2,483,360.82 in funds on reserve.

Under the Fifth Amendment, Funds A and B were merged into one fund, called the "Settlement Fund." See id. at *2 n.5 (citing In re Diet Drugs Prods. Liab. Litig., No. 02-4581, 2004 WL 326971 (3d Cir. Feb. 23, 2004)). However, the Fund A Escrow Account and the Fund B Attorneys' Fees Account remain separate.

Additionally, the MDL 1203 Fee and Cost Account was created to pay for attorneys' fees and costs associated with the work of the PMC, PLC, and attorneys authorized by those two groups to work on behalf of the plaintiffs in the MDL 1203 or coordinated state proceedings. Diet Drugs, 2010 WL 3292787, at *2. This account contains 6% assessments from any recoveries by plaintiffs whose actions are transferred to the MDL 1203 action and 4% assessments of any recoveries by plaintiffs in the coordinated state court proceedings. Id. at *3. As of December 31, 2010, this account had a balance of $9,309,398.00. This balance represented $2,213,823 in 6% and 4% assessments paid in initial opt-out and PPH cases. It also included $68,448.68 in assessments deposited into the account from claim payments made during 2010 and approximately $7,027,127.00 in net interest that has accrued over the past eleven years.

The Fee Applicants, as noted previously, move for an order awarding attorneys' fees, expense reimbursements, and other relief as follows:

- All of the Current Joint Fee Applicants seek an aggregate award of attorneys' fees in the amount of $3.5 million from the Fund A Escrow Account for class-related services performed during 2010, with such aggregate fee to be allocated according to a unanimous agreement among them;

- The PLC seeks an award of attorneys' fees in the amount of $2.5 million to be paid from the MDL 1203 Fee and Cost Account;

- The PLC moves for an order directing the Settlement Fund to reimburse the amount of $75,447.96 to the MDL 1203 Fee and Cost Account to repay the costs advanced by that account on behalf of the interests of the Class;

- Two of the Current Joint Fee Applicants petition for the reimbursement of $9,394.97 in out-of-pocket expenses to be allocated equally for payment by the Settlement Fund and the MDL 1203 Account; and

- The Current Joint Fee Applicants seek an order directing that the entire amount on deposit in the Fund B Attorney's Fees Account shall be transferred into the Fund A Escrow Account.

The services of the Current Joint Fee Petitioners were rendered and costs incurred for the following purposes: (1) finalizing and securing judicial approval of the Tenth Amendment to the Settlement Agreement; (2) securing the payment of Matrix and Seventh Amendment claims; (3) litigating issues related to primary pulmonary hypertension ("PPH"); (4) assisting in the resolution of issues related to interpretation of the Settlement

Agreement; and (5) managing the Cardiovascular Medical Research and Education Fund ("CMREF") to promote research regarding PPH, its causes, treatment, and cure.

The Current Joint Fee Applicants billed 7,661.55 hours of professional time during the Common Benefit Period. The lodestar value of this time is $3,069,827.25. Class Settlement benefits in the amount of $57,701,995 were awarded to 141 Class Members.

III.

There have been no objections to this petition. Nonetheless, we must conduct a "thorough judicial review" of the requested fee award as "required in all class action settlements." In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 819 (3d Cir. 1995). According to our Court of Appeals, a district court reviewing a fee petition "must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper." In re Cendant Corp. PRIDES Litig., 243 F.3d 722, 730 (3d Cir. 2001) (quoting Aucker v. Occidental Petroleum Corp., 192 F.3d 1323, 1328-29 (9th Cir. 1999)).

Our Court of Appeals has previously approved the percentage-of-recovery method to determine the reasonableness of the requested fee in connection with this litigation. See Diet Drugs, 582 F.3d at 540. This method awards as counsel fees a percentage of the settlement value. In re Diet Drugs Prods. Liab. Litig., 553 F. Supp. 2d 442, 466 (E.D. Pa. 2008). As in

the past, we will also cross-check the reasonableness of our
results using an abbreviated version of the lodestar analysis.

The percentage-of-recovery method requires that we
begin with a reasonable estimate of the value of the settlement.
In re Prudential Ins. Co. Am. Sales Practice Litig., 148 F.3d
283, 334 (3d Cir. 1998); In re Gen. Motors Corp., 55 F.3d at 822.
The settlement has already been valued at $6,437,211,516. Diet
Drugs, 553 F. Supp. 2d at 472. Our Court of Appeals did not
question this valuation, and we have previously stated that
"there is no reason to revisit that number." Diet Drugs, 2010 WL
3292787, at *8.

Next, we consider the following ten Gunter/Prudential
Factors to determine what constitutes a reasonable percentage fee
award:

> (1) the size of the fund created and the
> number of beneficiaries, (2) the presence or
> absence of substantial objections by members
> of the class to the settlement terms and/or
> fees requested by counsel, (3) the skill and
> efficiency of the attorneys involved, (4) the
> complexity and duration of the litigation,
> (5) the risk of nonpayment, (6) the amount of
> time devoted to the case by plaintiffs'
> counsel, (7) the awards in similar cases, (8)
> the value of benefits attributable to the
> efforts of class counsel relative to the
> efforts of other groups, such as government
> agencies conducting investigations, (9) the
> percentage fee that would have been
> negotiated had the case been subject to a
> private contingent fee arrangement at the
> time counsel was retained, and (10) any
> innovative terms of settlement.

Gunter, 223 F.3d at 195; Prudential 148 F.3d at 228-40. We do
not apply these factors in a "formulaic way" and recognize that

-9-

one factor may outweigh others.  Id.  Our Court of Appeals has
emphasized that "what is important is that the district court
evaluate what class counsel actually did and how it benefitted
the class."  In re AT&T Corp. Sec. Litig., 455 F.3d 160, 165-66
(3d Cir. 2006).

**A. SIZE OF THE FUND CREATED AND THE NUMBER OF PERSONS BENEFITTED**

            In a prior opinion, we evaluated the size of the
Settlement Fund as approximately $6.44 billion and described the
number of people to have benefitted as "enormous."  Diet Drugs,
553 F. Supp. 2d at 472.  During 2010, Class Members received
benefits totaling $57,701,995 pursuant to the terms of the
Settlement Agreement.  This total includes the following awards:

> • 111 class members received Matrix benefits
> totaling $38,046,792;
>
> • 23 class members received a total of
> $99,000 in cash/medical services benefits;
>
> • 7 class members received a total of $786
> in purchase price refund benefits;
>
> • The CMREF received $12,500,000 in funding
> for medical research and education; and
>
> • The Settlement Fund paid a total of
> $7,055,417 to administer the terms of the
> Settlement Agreement in order to provide
> Matrix benefits, Cash/Medical Services
> benefits, and purchase price refunds.

We have previously recognized the "immense size of the Fund
created and the thousands of people" who have benefitted in the
decade since this court first approved the Settlement Agreement.
Diet Drugs, 2010 WL 3292787, at *9.  This factor weighs in favor

-10-

of granting to the current Joint Fee Applicants their requested awards.

### B.  PRESENCE OR ABSENCE OF SUBSTANTIAL OBJECTIONS

We must next consider the "presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel." <u>Gunter</u>, 223 F.3d at n.1.  Less than thirty objections were filed in connection with the 2007 petition for fee and cost awards.  <u>Diet Drugs</u>, 553 F. Supp. 2d at 473.  All of these objections were either overruled by this court with no further appeal or appealed and dismissed. <u>Id.</u>  No objections were filed in response to the fee petition covering the years 2007-2009.  <u>Diet Drugs</u>, 2010 WL 3292787, at *9.

Similarly, no objections have been filed regarding the current 2010 fee petition.  As we stated previously, the "paucity of objections filed in response to the original and renewed petitions for attorneys' fees and costs does not necessarily establish that the requests in the Joint Petition are proper." <u>Diet Drugs</u>, 553 F. Supp. 2d at 474.  Nonetheless, the absence of any objection is "remarkable" and indicative of the fairness of the petition.  <u>Id.</u>  Thus, this factor weighs in favor of granting the current fee petition but does not relieve this court of its independent obligation to ensure the fairness of the petition.

### C.  THE SKILL AND EFFICIENCY OF THE ATTORNEYS INVOLVED

We previously found that the Joint Fee Applicants "handled with superior skill and efficiency the resolution of

claims in this exceedingly complex class action." Diet Drugs,
2010 WL 3292787, at *10 (citing Diet Drugs, 553 F. Supp. 2d at
474). In 2010, the Current Joint Fee Applicants dealt with
several novel issues regarding the interpretation of the
Settlement Agreement. In addition, they finalized and secured
judicial approval for the Tenth Amendment to the Settlement
Agreement. They accomplished this work in a timely matter in
order to ensure that Class Members continued to receive benefits.
Thus, the skill and efficiency of the attorneys involved weighs
in favor of granting the requested awards.

### D. COMPLEXITY AND DURATION OF THE LITIGATION

In PTO No. 7763, this court recognized that the "sheer
breadth of the Settlement Agreement and its many moving parts
created a virtual labyrinth through which the Joint Fee
Applicants were forced to navigate." Diet Drugs, 553 F. Supp. 2d
at 477-78. To date, this court has issued nearly 9,000 pretrial
orders in connection with this litigation. More than 500,000
Class Members have received benefits over the ten years since the
Settlement Agreement was approved. Michael Fishbein, Esquire,
who serves as Class Counsel in connection with the Settlement
Agreement and has served as Plaintiffs' Liaison Counsel and Co-
Chairman of the Plaintiffs' Management Committee, has submitted
an affidavit in support of the Joint Petition describing the work
performed by Class Counsel and the PLC during 2010. We will
briefly summarize some of the work that Mr. Fishbein reports.

During 2010, class counsel worked to finalize and secure judicial approval of the Tenth Amendment to the Settlement Agreement. The Tenth Amendment contributed an additional $12.5 million to the CMREF to continue research regarding PPH. This Amendment also eliminated the "final payment amount" originally provided under the Settlement Agreement to fund all future Matrix payments from 2017 to 2063. Because there was no guarantee that the final payment amount would be sufficient to encompass all future claims, this provision of the Settlement Agreement created a risk of a funding short fall. Thus, the Tenth Amendment diminished the risk of non-payment to future claimants.

Class Counsel also continued to assist in the administration of Matrix and Seventh Amendment claims. Since the approval of the Seventh Amendment, the Trust has shifted its focus to the payment of more Matrix III, IV, and V claims. These High Level Matrix Benefit claims are predicated on more severe medical conditions and accordingly are more complicated to administer. Class Counsel has also continued to deal with many claims subject to Medicare liens, which further complicate the process. See Diet Drugs, 2010 WL 3292787, at *11. Furthermore, Class Counsel is responsible for reviewing the outcome of claim audits and determining whether the claim should be referred to the Consensus Expert Panel ("CEP"). The CEP reviews claims to determine if the auditor departed from accepted standards of practice. Finally, Class Counsel has worked with the Class Counsel Claims Office ("CCCO"), which was created to assist

-13-

unrepresented Class Members in submitting Matrix claims. The
CCCO assisted 292 pro se Matrix claimants in 2010.

Class Counsel has also dealt with several
interpretation issues related to the Settlement Agreement in
2010. These issues included:

- Who is an "attending Board-Certified
  Cardiologist" within the meaning of the
  Settlement Agreement for purposes of
  establishing the Matrix conditions in the
  manner prescribed by the Settlement
  Agreement;

- Whether a claimant may use medical records
  as proof of a Matrix-qualifying condition
  where the underlying echocardiogram is no
  longer available;

- When does pulmonary hypertension secondary
  to VHD become irreversible for purposes of
  qualifying for Level V Matrix benefits under
  the Settlement Agreement;

- May the Trust pay the Matrix claim of a
  class member who opted out of the Seventh
  Amendment but nonetheless accepted a Category
  Two payment from the Trust, where the Matrix
  claim was found payable in the Settlement's
  show cause process;

- Does the implantation of a cardiac
  defibrillator establish "ventricular
  fibrillation or sustained ventricular
  tachycardia which results in hemodynamic
  compromise" for purposes of qualifying for
  Matrix benefits under Section IV.B.2.c(5)(D)
  of the Settlement Agreement; and

- Does valve replacement surgery that is
  accompanied without surgical dissection of
  the sternum qualify as valvular repair
  surgery within the meaning of Section
  IV.B.2.c(3)(a) of the Settlement Agreement
  for purposes of qualifying for Matrix
  benefits under that section of the Agreement?

With each of these questions, Class Counsel performed medical research and consulted cardiology experts to understand the relevant medical principles. They then engaged in negotiation with Wyeth and came to agreements to resolve the claims affected by the various interpretation issues.

Class Counsel also worked to draft new Court Approved Procedures ("CAPs") and resolve issues regarding existing CAPs. First, Class Counsel drafted CAP 16, which created a deadline within which Class Members must file a Green Form to make a claim and cash checks from the Trust. These deadlines relieved the Trust of unnecessary administrative expenses and clarified how unclaimed checks should be treated. Class Counsel also negotiated with Wyeth to fairly resolve claims where the diet drug recipient was deceased and could not provide medical records proving the absence of a Matrix reduction factor, as required under CAP 4. With regard to CAP 10, which is related to Medicare liens, Class Counsel monitored the Trust's compliance with the CAP.

Mr. Fishbein also reports that in 2010 Class Counsel worked with Wyeth to draft a joint motion to dismiss 129 pending arbitration appeals. These appeals failed to present an arbitrable issue because they were either barred by the Seventh Amendment or facially ineligible for Matrix benefits based on their Green Form submissions. Furthermore, Class Counsel has continued to help with the litigation of PPH actions and the PLC has monitored scientific research regarding PPH. Finally,

-15-

Fishbein has assisted in the administration of the CMREF, by providing office and support staff, serving as a director and Chief Financial Officer, monitoring the status of research and grants, and preparing annual reports.

These are just some of the many accomplishments of the Current Joint Fee Petitioners during 2010. As we have recognized before, Class Counsel continues to undertake many complex matters within this litigation. See Diet Drugs, 2010 WL 3292787, at *11. However, we also recognize that the litigation appears to be approaching its sunset period. In re Diet Drugs Prods. Liab. Litig., 2010 WL 2735414 at *3 (E.D. Pa. July 2, 2010). While 14,045 Class Members received benefits totaling $1,117,789,973 from April 1, 2007 to December 31, 2009, only 144 Class Members received benefits totaling $57,701,995 in 2010. Thus, while the litigation continues and we commend the diligent efforts of Class Counsel, the number of claims and individuals who benefitted from the Settlement Agreement in 2010 has declined considerably when compared with other years. This decline must be considered when determining the appropriate amount of any award for fees.

## E. RISK OF NON-PAYMENT

With respect to this Gunter/Prudential Factor, we have said that the "risk of non-payment must be judged as of the inception of the action and not through the rosy lens of hindsight." Diet Drugs, 553 F. Supp. 2d at 478. However, we must also "reassess the risk" faced by Class Counsel throughout the litigation, including during 2010. Diet Drugs, 582 F.3d at

543. Class Counsel has already received a generous fee for work performed through 2009. Because this court has created a reserve fund to compensate Class Counsel for work performed after 2008, the Current Joint Fee Petitioners concede that the risk of non-payment during 2010 was minimal.

**F. AMOUNT OF TIME DEVOTED TO THE CASE BY PLAINTIFFS' COUNSEL**

According to the Sixth Audit Report, the Current Joint Fee Applicants spent a total of 7,661.55 hours of professional time on compensable common benefit activities during 2010. This is the equivalent of 958 eight-hour work days. We accept the Auditor's finding.

**G. AWARDS IN SIMILAR CASES**

The instant fee petition seeks an award of 0.0543% of the value of the Settlement Fund. When this percentage is added to the 6.75% award made by this court in PTO No. 7763 and the 0.233% award made in PTO No. 8516, counsel will have received a total award equaling 7.037% of the Settlement Fund. We note that the present award requested represents six percent of the $57,701,995 in Settlement Benefits paid to class members during 2010. If approved, the award will be made from interest earned on the Fund A Escrow Account and the Fund B Attorneys' Fees Account. The interest accrued on these two accounts in the aggregate amount of approximately $44 million was not included in the value of the Settlement Fund.

We previously determined that the awards sought in cases similar to this one range from 4.8% to 15%. Diet Drugs,

-17-

553 F. Supp. 2d at 480. We noted that these figures should serve as "guideposts" when determining the appropriate award. Id. The award sought by the Current Joint Fee Petitioners falls within these guideposts.

## H. THE VALUE OF BENEFITS ATTRIBUTABLE TO THE EFFORTS OF CLASS COUNSEL RELATIVE TO THE EFFORTS OF OTHER GROUPS

Under this factor, we must consider the benefits created by other groups, such as government agencies, when deciding on a reasonable fee. We have previously stated that "Joint Fee Applicants should ... not receive fees based upon efforts that are not their own." Diet Drugs, 553 F. Supp. 2d at 480. A failure to distinguish the work of other groups "would create an incentive for plaintiffs attorneys to 'minimize the costs of failure ... by free riding on the monitoring efforts of others.'" Prudential, 148 F.3d at 337 (quoting John C. Coffee, Jr., Understanding the Plaintiff's Attorney, 86 Colum. L. Rev. 669, 681 (1986)). We conclude now, as we did before, that "[n]either the Government, nor its agencies, provided the type of heavy-lifting that is sometimes provided in antitrust or securities cases." Diet Drugs, 2010 WL 3292787, at *12. Because no group has provided aid to the Current Joint Fee Applicants for work performed during 2010, this factor weighs in favor of the requested fee award.

## I. THE PERCENTAGE FEE THAT WOULD HAVE BEEN NEGOTIATED HAD THE CASE BEEN SUBJECT TO A PRIVATE CONTINGENT FEE AGREEMENT AT THE TIME COUNSEL WAS RETAINED

We have previously looked to the Major Filers[4] Agreement when analyzing this fee. Id. (citing Diet Drugs, 553 F. Supp. 2d at 482). The Major Filers "were, in essence, the market for the Joint Fee Applicants' services." Id. (citing Diet Drugs, 553 F. Supp. 2d at 482). The Major Filers have stipulated that the fees awarded to Class Counsel should include the interest earned in the Fund A Escrow Account and the Fund B Attorneys' Fees Account. Id. The instant petition seeks an award of an additional portion of the interest earned by these accounts and is thus consistent with the Major Filers Agreement. Because the Major Filers Agreement continues to serve as the best predictor of what would have been negotiated through a private contingent fee agreement, this factor weighs in favor of granting the requested award.

## J. INNOVATIVE TERMS OF THE SETTLEMENT

As we stated previously in connection with the 2007-2009 fee petition, "we cannot deny that the Settlement Agreement

---

4.  The Major Filers:
> (1) represent[ed] about 97% of the Class Members who exercised Downstream Opt-Outs and filed lawsuits subject to the MDL 1203 fee assessments; (2) filed 26,000 Level I and Level II Matrix Benefit claims that became Category One Claims under the Seventh Amendment; (3) represented about half of the Class Members who have had Matrix Benefits claims processed by the Trust.

Diet Drugs, 553 F. Supp. 2d at 482.

provisions [...] were indeed innovative at the time they were drafted and have already served as models for other cases." Id. at *13 (citing Diet Drugs, 553 F. Supp. 2d at 485). Aside from finalizing and securing judicial approval of the Tenth Amendment, the Current Joint Fee Petitioners have not had the opportunity in 2010 to craft any additional innovative Settlement Agreement terms. Although we continue to recognize the past innovation of the Petitioners, this factor does not weigh strongly against or in favor of the requested award.

## IV. THE LODESTAR CROSS-CHECK

We must next perform a lodestar cross-check of the fee award generated using the percentage-of-recovery method to ensure that the 2010 Joint Fee Applicants will not receive a windfall. The "lodestar cross-check is performed by multiplying the hours reasonably expended on the matter by the reasonable hourly billing rate which then provides the court with the 'lodestar calculation.'" Diet Drugs, 553 F. Supp. 2d at 485. This number is divided into the proposed fee award of $3.5 million. The resulting figure is the lodestar multiplier. We must then compare this number to lodestar multipliers in similar cases. Id.

According to Mr. Winikur's Sixth Audit Report, the Current Joint Fee applicants expended 7,661.55 hours on this litigation in 2010. The total lodestar value of this professional time, using the applicable 2010 billing rates for the Fee Applicants, is $3,069,827.25. The requested fee of $3.5

-20-

million divided by this lodestar value yields a lodestar
multiplier of 1.14.[5]  This multiplier is within the range of
multipliers applied in similar super-mega-fund cases.  See Diet
Drugs, 2010 WL 3292787, at *13.

However, as we stated previously, this litigation has
reached its sunset period.  In re Diet Drugs, 2010 WL 2735414 at
*3.  The number of Class Members who received benefits has
declined substantially in 2010, with only 144 Class Members
receiving benefits totaling $57,701,995 in 2010.  We also note
that the 2010 Joint Fee Petitioner's risk of non-payment is de
minimis.  The generous awards to Class Counsel prior to the
conclusion of this litigation as well as the decline in payments
to Class Members and the decline in risk of non-payment all weigh
heavily against the application of any multiplier to the
requested award.  Thus, we decline to award a lodestar
multiplier.  In coming to this conclusion we in no way lessen our
deep appreciation for the diligent efforts of Class Counsel in
the administration of this matter.

### V.  THE AWARD OF FEES FROM THE MDL 1203 ACCOUNT

The Current Plaintiffs' Liaison Counsel ("PLC") Fee
Applicant also seeks an award of $2.5 million from the MDL 1203

_____

5.  We have previously recognized that the manner in which the
Joint Fee Applicants were required to maintain and report time
does not allow the attorneys to distinguish between time spent
pursuing class activities and that spent working on Opt-Out and
PPH cases.  Diet Drugs, 582 F. Supp. 2d at 487.  As a result, the
multiplier here is "artificially low" and could be as high as
1.95.

Fee and Cost Account.  In 2010, there were 128 active civil
actions pending in the MDL 1203 which had not been terminated or
remanded back to their respective transferor courts.  During this
past year, plaintiffs obtained recoveries in MDL 1203 and
coordinated state-court cases that are subject to assessment in
the amount of $2,919,323.68.  This produced additional deposits
into the MDL 1203 Account totaling only $68,477.68.  The lodestar
value of the services performed by the PLC during 2010 totaled
$2,321,706.25.  We must consider whether the Current PLC Fee
Applicant may recover a fee award that exceeds significantly the
value of new deposits made into the MDL 1203 Account in 2010.

During 2010, the PLC:  (1) maintained a database to
track MDL 1203 actions; (2) updated the MDL Trial Package; (3)
sent copies of the Trial Package to attorneys to assist them in
preparing Diet Drug cases; (4) explained multi-district
litigation practice and procedure to attorneys; and (5) helped to
litigate PPH claims against Wyeth.

Our Court of Appeals has declared that the standard for
awarding to court-appointed management committees a portion of
the claim recoveries earned is as follows:

> Under the common benefit doctrine, an award
> of attorney's fees is appropriate where the
> plaintiff's successful litigation confers a
> substantial benefit on the members of an
> ascertainable class, and where the court's
> jurisdiction over the subject matter of the
> suit makes possible an award that will
> operate to spread the costs proportionately
> among them.  Thus, in order to obtain common
> benefit fees, an attorney must confer a
> substantial benefit to members of an

> ascertainable class, and the court must
> ensure that the costs are proportionately
> spread among that class.

Diet Drugs, 582 F.3d at 546 (internal citations omitted).

We believe that the administrative functions performed by the PLC have conferred a substantial benefit on the individuals in MDL 1203. See Diet Drugs, 2010 WL 3292787, at *14. As the PMC did before it, the PLC has "helped to administer the MDL by tracking individual cases, distributing court orders, and serving as a repository of information concerning the litigation and settlement" to the benefit of these individuals. Id. (citing Diet Drugs, 582 F.3d at 548). Our Court of Appeals previously found that the costs were spread proportionately among the class. Id. (citing Diet Drugs, 582 F.3d at 550).

Although the requested fee award is greater than the amount of new assessments paid into the MDL 1203 Account, this court previously directed that $3.47 million would remain in the MDL 1203 Account as part of the Reserve Fund to compensate attorneys for common benefit work performed after the 2008 fee award. The requested amount represents 25% of the funds currently on deposit in the MDL 1203 Account. While this is a large portion of the Account, we note that only 128 civil actions remain pending in the MDL 1203 action. The requested award is also roughly equal to the amount per year previously awarded by the court for work performed since 2008. See id. at *13-*14.

We also note that the fee award requested by the PLC of $2.5 million exceeds the lodestar value of the services provided

by the PLC. For the reasons stated with respect to the Class Counsel fee applicants, we decline to apply any multiplier to the award of fees to the PLC. We will grant an award of $2,321,706.25.

## VI. THE AWARD AND ALLOCATION OF EXPENSE REIMBURSEMENTS

The Current Joint Fee Applicants incurred a total of $160,290.88 in properly documented expenses for the common benefit of the class and the plaintiffs in MDL 1203 in 2010. We have already entered orders authorizing reimbursement of $150,895.91 of these expenses from the MDL 1203 Account. The remaining balance represents expenses that were advanced by the following Current Joint Fee Applicants in the following amounts: (1) $4,799.52 from Levin, Fishbein, Sedran & Berman and (2) $4,595.45 from Roda Nast, P.C.

In PTO No. 7763, we approved a stipulation between Wyeth and Class Counsel that at least 50% of the expenses from the funds on deposit in the MDL 1203 Fee and Cost Account and/or advanced by the Current Joint Fee Applicants should be paid by the Settlement Fund as they were expended for the common benefit of the class.

Therefore, we will enter an order directing that the Settlement Fund reimburse the MDL 1203 Fee and Cost Account the amount of $75,447.96, which represents 50% of the expenses paid from the MDL 1203 Fee and Cost Account during 2010. We will also order that 50% of the out-of-pocket costs advanced by the 2010 Joint Fee Applicants be reimbursed to them from the MDL 1203 Cost

and Fee Account and the remaining 50% be reimbursed from the
Settlement Fund.

## VII. THE CONSOLIDATION OF THE FUND A ESCROW ACCOUNT AND THE FUND B ATTORNEYS' FEES ACCOUNT

The Current Joint Fee Petitioners urge this court to
consolidate these accounts into a single account by directing the
transfer of the entire amount on deposit in the Fund B Attorneys'
Fees Account into the Fund A Escrow Account. In support, they
assert that: (1) the majority of attorneys' fees associated with
each account has already been awarded; (2) Class Members and
attorneys have already received percentage reimbursements from
the Fund B Attorneys' Fees Account; and (3) the maintenance of
the separate accounts causes unnecessary expense and
administrative burden.

We find that, in light of the Fifth Amendment
consolidation of Funds A and B into one Settlement Fund, the
continued maintenance of the separate Fund A Escrow Account and
Fund B Attorneys' Fees Account is unnecessary. Combined, these
funds had a total of $8,445,619.69 on reserve as of December 31,
2011. We will enter an order directing the Escrow Agent to
consolidate these two funds.

## VIII. CONCLUSION

In conclusion, we will award attorneys' fees and
expenses as set forth in the attached pretrial order.