IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/ FENFLURAMINE/DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | : : : | MDL NO. 1203 |
| THIS DOCUMENT RELATES TO: | : : | |
| SHEILA BROWN, et al. | : : | |
| v. | : : | |
| AMERICAN HOME PRODUCTS CORP. | : : | NO. 99-20593 |

## MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO. 9102

Bartle, J.                                              June 28, 2013

Before the court is the joint petition of the 2012 Joint Fee Applicants,[1] the 2012 Joint Class Fee Applicants,[2] and the 2012 Joint MDL Fee Applicants[3] for an award of attorneys' fees and expense reimbursements relating to common benefit work performed from January 1, 2012 through December 31, 2012 (the "Common Benefit Period"). This court has previously awarded fees in Pretrial Order ("PTO") Nos. 2622, 7763A, 8516, 8646, and 8869.

---

1. The 2012 Joint Fee Applicants are: (1) Cummings, Cummings & Dudenhefer; (2) Levin, Fishbein, Sedran & Berman; (3) Nast Law, LLC; and (4) MacDonald Rothweiler Eisenberg, LLP.

2. The 2012 Joint Class Fee Applicants are: (1) Levin, Fishbein, Sedran & Berman; (2) Nast Law, LLC; and (3) Cummings, Cummings & Dudenhefer.

3. The 2012 Joint MDL Fee Applicants are Levin, Fishbein, Sedran & Berman and MacDonald Rothweiler Eisenberg, LLP. These counsel performed work on behalf of the Plaintiffs' Liaison Counsel ("PLC").

The 2012 Joint Class Fee Applicants seek an aggregate award of attorneys' fees in the amount of $2,556,530.25 from the Fund A Escrow Account for Class-related services performed during 2012, with such fee to be allocated and paid in accordance with an agreement among them.

The 2012 Joint MDL Fee Applicants request an award of attorneys' fees in the amount of $2,514,031.25 to be paid from the MDL 1203 Fee and Cost Account for MDL-related services performed during 2012.

Finally, the 2012 Joint Fee Applicants incurred $218,639.65 in litigation expenses during 2012. This court has already authorized payment of $103,435.10 of these expenses from the MDL 1203 Fee and Cost Account. Pursuant to PTO No. 7763, the PLC seeks an order directing the Settlement Fund to reimburse $103,435.10 to the MDL 1203 Fee and Cost Account. Levin, Fishbein, Sedran & Berman, Nast Law LLC, and MacDonald Rothweiler Eisenberg, LLP, as the 2012 Joint Fee Applicants, petition for reimbursement of the remaining $11,769.45 in out-of-pocket expenses to be allocated for payment equally as between the Settlement Fund and the MDL 1203 Fee and Cost Account.

I.

In March, 2013 the court-appointed auditor, Alan B. Winikur, C.P.A., filed his Eighth Audit Report setting forth the results of his audit of the professional time and expenses reported by counsel as eligible for payment or reimbursement for the period from January 1, 2012 through December 31, 2012. In

-2-

this Report, Mr. Winikur stated that four law firms had performed compensable "common benefit" work during 2012: (1) Cummings, Cummings & Dudenhefer; (2) Levin, Fishbein, Sedran & Berman; (3) Nast Law, LLC; and (4) MacDonald Rothweiler Eisenberg, LLP.

Mr. Winikur reports that during the 2012 calendar year those four firms performed 5922.4 hours of professional services. The lodestar value of this common benefit work was $2,709,755.25. Mr. Winikur included the common benefit time of Cummings, Cummings & Dudenhefer for December, 2011 because that time was not included in his audit report for the year ending December 31, 2011 and is otherwise compensable time. The total amount of reimbursable expenses incurred by these attorneys during 2012 was $218,639.65. According to Mr. Winikur, the court has authorized previously payment of bona fide common benefit expenses from the MDL Fee and Cost Account in the total amount of $206,870.21 for the same period ending on December 31, 2012.

Pursuant to the Settlement Agreement, an aggregate global settlement fund of $3.75 billion was created. Originally, two funds, known as Fund A and Fund B, were established to pay for different types of benefits to class members. The sum of $200 million was placed into a "Fund A Escrow Account" for the purpose of paying attorneys' fees to Class Counsel and other attorneys in connection with Fund A benefits provided to class members. In re Diet Drugs Prods. Liab. Litig., No. 99-20593, 2010 WL 3292787, at *2 (E.D. Pa. Aug. 19, 2010). A "Fund B Attorneys' Fees Account" of $229 million was also created to pay

attorneys' fees to Class Counsel and Common Benefit Attorneys involved in creating the Matrix benefits available to class members. Any amounts not awarded as attorneys' fees from this account are to be refunded to Wyeth. Id.

Under the Fifth Amendment, Funds A and B were merged into one fund, called the "Settlement Fund." See id. at *2 n.5 (citing In re Diet Drugs Prods. Liab. Litig., No. 02-4581, 2004 WL 326971 (3d Cir. Feb. 23, 2004)). And in PTO No. 8646, we consolidated the Fund B Attorneys' Fees Account with the Fund A Escrow Account. See In re Diet Drugs Prods. Liab. Litig., No. 99-20593, 2011 WL 2174611, at *11 (E.D. Pa. June 2, 2011). As of February 28, 2013, the consolidated Fund A Escrow Account had a total balance of $2,558,840.64.

Additionally, the MDL 1203 Fee and Cost Account was created to pay for attorneys' fees and costs associated with the work of the Plaintiffs' Management Committee ("PMC"), PLC, and attorneys authorized by those two groups to work on behalf of the plaintiffs in the MDL 1203 or coordinated state proceedings. Diet Drugs, 2010 WL 3292787, at *2. This account contains assessments of a percentage of any recoveries by plaintiffs whose actions are transferred to the MDL 1203 action and of recoveries by plaintiffs in the coordinated state court proceedings. Id. at *3. As of January 31, 2013, this account had a balance of $6,751,401. This balance represents $3,880.08 in new assessments deposited into the account from $161,670 in claim payments made during 2012.

-4-

The Fee Applicants, as noted previously, move for an order awarding attorneys' fees, expense reimbursements, and other relief as follows:

- The 2012 Joint Fee Applicants seek an aggregate award of attorneys' fees in the amount of $2,556,530.25 from the Fund A Escrow Account for class-related services performed during 2012, with such aggregate fee to be allocated according to an agreement between them;

- The 2010 Joint MDL 1203 Fee Applicants seek an award of attorneys' fees in the amount of $2,514,031.25 to be paid from the MDL 1203 Fee and Cost Account for MDL-related services performed during 2012, with such aggregate fee to be allocated and paid in accordance with the unanimous allocation agreement among them;

- The PLC moves for an order directing the Settlement Fund to reimburse the amount of $103,435.10 to the MDL 1203 Fee and Cost Account to repay the costs advanced by that account on behalf of the interests of the Class; and

- The 2012 Joint Fee Applicants seek reimbursement of $11,769.45 in out-of-pocket expenses to be allocated equally for payment by the Settlement Fund and the MDL 1203 Account.

## II.

There have been no objections to this petition. Nonetheless, we must conduct a "thorough judicial review" of the requested fee award as "required in all class action settlements." In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 819 (3d Cir. 1995). According to our Court of Appeals, a district court reviewing a fee petition "must exercise its inherent authority to assure that the

-5-

amount and mode of payment of attorneys' fees are fair and proper." In re Cendant Corp. PRIDES Litig., 243 F.3d 722, 730 (3d Cir. 2001) (quoting Aucker v. Occidental Petroleum Corp., 192 F.3d 1323, 1328-29 (9th Cir. 1999)).

Our Court of Appeals has previously approved the percentage-of-recovery method to determine the reasonableness of the requested fee in connection with this litigation. See In re Diet Drugs Prods. Liab. Litig., 582 F.3d 524, 540 (3d Cir. 2009). This method awards as counsel fees a percentage of the settlement value. In re Diet Drugs Prods. Liab. Litig., 553 F. Supp. 2d 442, 466 (E.D. Pa. 2008). As in the past, we will also cross-check the reasonableness of our results using an abbreviated version of the lodestar analysis.

The percentage-of-recovery method requires that we begin with a reasonable estimate of the value of the settlement. In re Prudential Ins. Co. Am. Sales Practice Litig., 148 F.3d 283, 334 (3d Cir. 1998); In re Gen. Motors Corp., 55 F.3d at 822. The settlement has already been valued at $6,437,211,516. Diet Drugs, 553 F. Supp. 2d at 472. Our Court of Appeals did not question this valuation, and we have previously stated that "there is no reason to revisit that number." Diet Drugs, 2010 WL 3292787, at *8.

Next, we consider the following ten factors to determine what constitutes a reasonable percentage fee award:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members

> of the class to the settlement terms and/or
> fees requested by counsel, (3) the skill and
> efficiency of the attorneys involved, (4) the
> complexity and duration of the litigation,
> (5) the risk of nonpayment, (6) the amount of
> time devoted to the case by plaintiffs'
> counsel, (7) the awards in similar cases, (8)
> the value of benefits attributable to the
> efforts of class counsel relative to the
> efforts of other groups, such as government
> agencies conducting investigations, (9) the
> percentage fee that would have been
> negotiated had the case been subject to a
> private contingent fee arrangement at the
> time counsel was retained, and (10) any
> innovative terms of settlement.

Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 (3d Cir.

2000); Prudential 148 F.3d at 228-40. We do not apply these

factors in a "formulaic way" and recognize that one factor may

outweigh others. Id. Our Court of Appeals has emphasized that

"what is important is that the district court evaluate what class

counsel actually did and how it benefitted the class." In re

AT&T Corp. Sec. Litig., 455 F.3d 160, 165-66 (3d Cir. 2006).

**A. SIZE OF THE FUND CREATED AND THE NUMBER OF PERSONS BENEFITTED**

As stated above, we have already noted the size of the

Settlement Fund to be approximately $6.44 billion. Diet Drugs,

553 F. Supp. 2d at 472. During 2012, 182 Class Members received

benefits totaling $37,186,438, pursuant to the terms of the

Settlement Agreement. This total includes the following awards:

> • 181 Class Members received Matrix benefits
> totaling $33,104,422;
>
> • 1 Class Member received a total of $6,000
> in Cash/Medical Services benefits; and
>
> • the Settlement Fund paid a total of
> $4,076,016 to administer the terms of the

> Settlement Agreement in order to provide
> Matrix benefits, Cash/Medical Services
> benefits.

We have previously recognized the "immense size of the Fund created and the thousands of people" who have benefitted since this court first approved the Settlement Agreement on August 28, 2000. Diet Drugs, 2010 WL 3292787, at *9. This factor weighs in favor of granting to the 2012 Joint Fee Applicants their requested awards.

### B. PRESENCE OR ABSENCE OF SUBSTANTIAL OBJECTIONS

We must next consider the "presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel." Gunter, 223 F.3d at n.1. Less than thirty objections were filed in connection with the 2007 petition for fees and costs. Diet Drugs, 553 F. Supp. 2d at 473. All of these objections were either overruled by this court with no further appeal or appealed and dismissed. Id. No objections were filed in response to the fee petitions covering the years 2007-2011. Diet Drugs, 2011 WL 2174611, at *4.

Similarly, no objections have been filed regarding the current 2012 fee petition. As we stated previously, the "paucity of objections filed in response to the original and renewed petitions for attorneys' fees and costs does not necessarily establish that the requests in the Joint Petition are proper." Diet Drugs, 553 F. Supp. 2d at 474. Nonetheless, the absence of any objection is indicative of the fairness of the petition. Id. Thus, this factor weighs in favor of granting the current fee

petition but does not relieve this court of its independent obligation to ensure the fairness of the award.

## C. THE SKILL AND EFFICIENCY OF THE ATTORNEYS INVOLVED

We previously found that the Joint Fee Applicants "handled with superior skill and efficiency the resolution of claims in this exceedingly complex class action." <u>Diet Drugs</u>, 2010 WL 3292787, at *10 (citing <u>Diet Drugs</u>, 553 F. Supp. 2d at 474). In 2012, the Current Joint Fee Applicants helped to resolve several difficult issues regarding the interpretation of the Settlement Agreement. In addition, they assisted in the administration of Matrix claims, litigated issues related to primary pulmonary hypertension ("PPH"), and helped to administer the Cardiovascular Medical Research and Education Fund ("CMREF") to promote research regarding PPH, its causes, treatment, and cure. They performed this work in a diligent and timely manner. Thus, the skill and efficiency of the attorneys involved weighs in favor of granting the requested awards.

## D. COMPLEXITY AND DURATION OF THE LITIGATION

In PTO No. 7763, this court recognized that the "sheer breadth of the Settlement Agreement and its many moving parts created a virtual labyrinth through which the Joint Fee Applicants were forced to navigate." <u>Diet Drugs</u>, 553 F. Supp. 2d at 477-78. This litigation has been pending for well over a decade. According to statistics maintained by the Judicial Panel on Multidistrict Litigation, a total of 20,180 civil actions involving Diet Drugs have been transferred to or filed in this

court for coordinated or consolidated pretrial proceedings as part of MDL 1203. To date, this court has issued approximately 9,090 pretrial orders in connection with MDL 1203.

Michael Fishbein, Esquire, who serves as Class Counsel in connection with the Settlement Agreement and has served as PLC and Co-Chairman of the PMC, has submitted an affidavit in support of the Joint Petition describing the work performed by the 2012 Joint Fee Applicants during 2012. We will briefly summarize some of the work that Mr. Fishbein reports in his affidavit.

First, Class Counsel reviewed 117 claims and referred a number of them to the Consensus Expert Panel ("CEP") for re-audit.[4] As a consequence of the re-audits by the CEP, Class Members received approximately $3,697,000 in additional Matrix benefits during 2012. Class Counsel also provided assistance to 276 Matrix claimants in preparing and submitting claims to the AHP Settlement Trust ("Trust") through the Class Counsel Claims Office.

In 2012, Class Counsel also dealt with several novel interpretation issues related to the Settlement Agreement. These issues included:

> • Whether a diagnosis of a torn chordae
> tendeneae that is not confirmed during
> surgery operates as a condition that should
> place the claim on the B-matrix rather than

---

4. This court approved the creation of the CEP in PTO No. 6100. The CEP reviews claims to determine if the auditor departed from accepted standards of practice in applying the Settlement Agreement. The CEP can then order the termination or retraining of the auditor and/or re-audit of the claim.

the A-matrix pursuant to Section
IV.B.2.d(2)(c)(ii)(c) of the Settlement
Agreement;

• Who is an "attending board-certified
cardiologist" within the meaning of Sections
IV.B.2.c.(3)(b), IV.B.2.c.(4)(c)(ii),
IV.B.2.c.(4)(c)(iii), IV.B.2.c(5)(b)(ii)(c),
IV.B.2.c(5)(b)(iv), and IV.B.2.c(5)(c), for
purposes of establishing the matrix
conditions defined by those sections in the
manner prescribed by the Settlement
Agreement;

• Under what circumstances is a death
considered to have been caused by Valvular
Heart Disease for purposes of qualifying for
Matrix benefits on Matrix Level V under
Section IV.B.2.c(5)(c) of the Settlement
Agreement; and

• Under what circumstances is pulmonary
hypertension considered to be secondary to
Valvular Heart Disease for purposes of
qualifying for Matrix benefits on Matrix
Level V under Section IV.B.2.c(5)(b)(iv) of
the Settlement Agreement.

With each of these questions, Class Counsel performed medical
research and consulted cardiology experts.  Class Counsel
determined its position with respect to each interpretation issue
and communicated those positions to Wyeth and the Trust.

Furthermore, Class Counsel actively litigated the
Haberman action in this court and in our Court of Appeals.  In
that action, this court rejected plaintiff's interpretation of
the Settlement Agreement.  See In re Diet Drugs Prods. Liab.
Litig., No. 99-20593, Pretrial Order No. 8822 (Doc. #4449; E.D.
Pa. Feb. 22, 2012).  Class Counsel presented oral argument to
our Court of Appeals and the Court affirmed our decision.  See In
re Diet Drugs Prods. Liab. Litig., 2013 U.S. LEXIS 10168 (May 21,

-11-

2013).  In addition to the <u>Haberman</u> appeal, Class Counsel has
also litigated the appeal of claimant Carmen Cauthen.  <u>See</u> <u>In re</u>
<u>Diet Drugs Prods. Liab. Litig.</u>, 706 F.3d 217 (3d Cir. 2013).

Class Counsel continued to manage the CMREF to promote
research regarding PPH, its causes, treatment, and cure.  Class
Counsel also played a significant role in the planning activities
of the Trust, including the creation of a 2013 budget, the
compensation to be paid to Trust personnel, and the level of
insurance to be maintained by the Trust.

Class Counsel also actively participated in PPH
litigation.  The year 2012 presented a marked change in that
litigation.  There was a significant increase in the number of
PPH claims filed during 2012; during that period, more than 30
new PPH cases were filed against Wyeth nationwide.  Wyeth advised
Class Counsel in June 2012 that it would no longer settle any PPH
claims and instead intended to seek dismissal of all such cases
on legal grounds.  One such ground for dismissal that Wyeth
advanced was the failure to exclude all unknown or "idiopathic"
causes of pulmonary arterial hypertension.  Wyeth also made a
<u>Daubert</u> argument, asserting that class members who first
developed symptoms of PPH on a latent basis, that is, more than
nine years after their last use of Diet Drugs, could not
demonstrate a causal relationship between that use and the
pulmonary hypertension from which they suffered.  Class Counsel
were successful in defeating Wyeth's legal arguments in this
court and in our Court of Appeals.  <u>See</u> <u>In re Diet Drugs Prods.</u>

<u>Liab. Litig.</u>, 890 F. Supp. 2d 552 (Pretrial Order No. 8933); <u>appeal dismissed</u>, No. 12-3826 (Nov. 6, 2012).

These are just some of the many accomplishments of the 2012 Joint Fee Applicants during 2012. As we have noted in past PTOs, Class Counsel continues to undertake many complex matters within this litigation. We also have recognized, however, that MDL 1203 is in its sunset period and that the number of individuals who benefitted from the Settlement Agreement in 2012 has declined considerably when compared with earlier years. This decline must be considered when determining the appropriate amount of any fee award.

### E.  RISK OF NON-PAYMENT

With respect to this <u>Gunter/Prudential</u> factor, we have stated that the "risk of non-payment must be judged as of the inception of the action and not through the rosy lens of hindsight." <u>Diet Drugs</u>, 553 F. Supp. 2d at 478. However, we must also "reassess the risk" faced by Class Counsel throughout the litigation, including during 2012. <u>Diet Drugs</u>, 582 F.3d at 543. Class Counsel has already received a generous fee for work performed through 2011. Because this court has created a reserve fund to compensate Class Counsel for work performed after 2008, the Current Joint Fee Applicants concede that the risk of non-payment during 2012 was minimal.

### F.  AMOUNT OF TIME DEVOTED TO THE CASE BY PLAINTIFFS' COUNSEL

As discussed above, the 2012 Joint Fee Applicants spent a total of 5,922.4 hours of professional time on compensable

-13-

common benefit activities during 2012 according to the Eigth Audit Report. This is the equivalent of more than 740 eight-hour work days. We accept the Auditor's finding.

### G. AWARDS IN SIMILAR CASES

The instant fee petition seeks an award of 0.0397% of the value of the Settlement Fund. When this percentage is added to the awards previously made by this court in PTO Nos. 7763A, 8516, 8646, and 8869, counsel will have received a total award equaling 7.099% of the Settlement Fund. We note that the present award requested represents 6.87% of the $186,438 in Settlement Benefits paid to class members during 2012. If approved, the award will be made from interest earned on the Fund A Escrow Account. The interest accrued on this account in the aggregate amount of approximately $44 million was not included in the value of the Settlement Fund.

We previously determined that the awards sought in cases similar to this one range from 4.8% to 15%. <u>Diet Drugs</u>, 553 F. Supp. 2d at 480. We noted that these figures should serve as "guideposts" when determining the appropriate award. <u>Id.</u> The award sought by the Current Joint Fee Applicants falls within these guideposts, and thus this factor weighs in favor of the requested award.

### H. THE VALUE OF BENEFITS ATTRIBUTABLE TO THE EFFORTS OF CLASS COUNSEL RELATIVE TO THE EFFORTS OF OTHER GROUPS

Under this factor, we must consider the benefits created by other groups, such as government agencies, when

deciding on a reasonable fee. We have previously stated that "Joint Fee Applicants should ... not receive fees based upon efforts that are not their own." <u>Diet Drugs</u>, 553 F. Supp. 2d at 480. A failure to distinguish the work of other groups "would create an incentive for plaintiffs [sic] attorneys to 'minimize the costs of failure ... by free riding on the monitoring efforts of others.'" <u>Prudential</u>, 148 F.3d at 337 (quoting John C. Coffee, Jr., <u>Understanding the Plaintiff's Attorney</u>, 86 Colum. L. Rev. 669, 681 (1986)). We conclude now, as we did in the past, that "[n]either the Government, nor its agencies, provided the type of heavy-lifting that is sometimes provided in antitrust or securities cases." <u>Diet Drugs</u>, 2010 WL 3292787, at *12. Because no group has provided aid to the Current Joint Fee Applicants for work performed during 2012, this factor weighs in favor of the requested fee award.

## I. THE PERCENTAGE FEE THAT WOULD HAVE BEEN NEGOTIATED HAD THE CASE BEEN SUBJECT TO A PRIVATE CONTINGENT FEE AGREEMENT AT THE TIME COUNSEL WAS RETAINED

We have previously looked to the Major Filers[5] Agreement when analyzing this fee. Id. (citing Diet Drugs, 553 F. Supp. 2d at 482). The Major Filers "were, in essence, the market for the Joint Fee Applicants' services." Id. (citing Diet Drugs, 553 F. Supp. 2d at 482). The Major Filers have stipulated that the fees awarded to Class Counsel should include the interest earned in the Fund A Escrow Account. Id. The instant petition seeks an award of an additional portion of the interest earned by this account and is thus consistent with the Major Filers Agreement. Because the Major Filers Agreement continues to serve as the best predictor of what would have been negotiated through a private contingent fee agreement, this factor weighs in favor of granting the requested award.

## J. INNOVATIVE TERMS OF THE SETTLEMENT

As we stated previously in connection with the 2007-2009 fee petition, "we cannot deny that the Settlement Agreement provisions [...] were indeed innovative at the time they were

---

5. The Major Filers:
> (1) represent[ed] about 97% of the Class Members who exercised Downstream Opt-Outs and filed lawsuits subject to the MDL 1203 fee assessments; (2) filed 26,000 Level I and Level II Matrix Benefit claims that became Category One Claims under the Seventh Amendment; (3) represented about half of the Class Members who have had Matrix Benefits claims processed by the Trust.

Diet Drugs, 553 F. Supp. 2d at 482.

drafted and have already served as models for other cases." <u>Id.</u>
at *13 (citing <u>Diet Drugs</u>, 553 F. Supp. 2d at 485).  The Current
Joint Fee Applicants have not had the opportunity in 2012 to
craft any additional innovative Settlement Agreement terms.
Although we continue to recognize the past innovation of the
Applicants, this factor does not weigh strongly against or in
favor of the requested award.

### III.   THE LODESTAR CROSS-CHECK

We must next perform a lodestar cross-check of the fee
award generated using the percentage-of-recovery method to ensure
that the 2012 Joint Fee Applicants will not receive a windfall.
The "lodestar cross-check is performed by multiplying the hours
reasonably expended on the matter by the reasonable hourly
billing rate which then provides the court with the 'lodestar
calculation.'"  <u>Diet Drugs</u>, 553 F. Supp. 2d at 485.  This number
is divided into the proposed fee award.  The resulting figure is
the lodestar multiplier.  We must then compare this number to
lodestar multipliers in similar cases.   <u>Id.</u>

According to Mr. Winikur's Eighth Audit Report, the
lodestar value of this professional time expended by the 2012
Joint Class Fee Applicants, using the applicable 2012 billing
rates, is $2,556,530.25.  The requested fee of $2,556,530.25
divided by this lodestar value yields a lodestar multiplier of
1.[6]  We previously declined to apply a multiplier greater than 1

_____

6.  We have previously recognized that the manner in which the
Joint Fee Applicants were required to maintain and report time

to the 2010 requested fee award.  See Diet Drugs, 2011 WL
2174611, at *9.  Because the lodestar cross-check yields a
multiplier of 1 and based on application of the Gunter/Prudential
factors, we find that the requested 2012 award is reasonable.

### IV.  THE AWARD OF FEES FROM THE MDL 1203 ACCOUNT

The Joint MDL Fee Applicants and the PLC also seek an
award of $2,514,031.25 from the MDL 1203 Fee and Cost Account.
In 2012, there were 100 active civil actions pending in MDL 1203
which had not been terminated or remanded back to their
respective transferor courts.  There was also an increase in the
number of PPH cases filed in 2012.  During 2012, plaintiffs
obtained recoveries in MDL 1203 and coordinated state-court cases
that were subject to assessment in the amount of $161,670.  This
produced additional deposits into the MDL 1203 Account totaling
only $3,880.08.  The lodestar value of the services performed by
the 2012 Joint MDL Fee Applicants during 2012 totaled
$2,514,031.25.

The 2012 Joint MDL Fee Applicants and the PLC also
continued to:  (1) maintain a database to track MDL 1203 actions;
(2) update the MDL Trial Package; (3) send copies of the Trial
Package to attorneys to assist them in preparing Diet Drug cases;

---

does not allow the attorneys to distinguish between time spent
pursuing class activities and that spent working on Opt-Out and
PPH cases.  Diet Drugs, 582 F. Supp. 2d at 487.  As a result, the
multiplier here is "artificially low" and could be as high as
1.9.

(4) explain multi-district litigation practice and procedure to attorneys; and (5) help to litigate PPH claims against Wyeth.

Our Court of Appeals has declared that the standard for awarding to court-appointed management committees a portion of the claim recoveries earned is as follows:

> Under the common benefit doctrine, an award of attorney's fees is appropriate where the plaintiff's successful litigation confers a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them. Thus, in order to obtain common benefit fees, an attorney must confer a substantial benefit to members of an ascertainable class, and the court must ensure that the costs are proportionately spread among that class.

Diet Drugs, 582 F.3d at 546 (internal citations omitted).

As we recognized previously, the administrative functions performed by the PLC have conferred a substantial benefit on the individuals in MDL 1203. See Diet Drugs, 2010 WL 3292787, at *14. The PLC has "helped to administer the MDL by tracking individual cases, distributing court orders, and serving as a repository of information concerning the litigation and settlement" to the benefit of these individuals. Id. (citing Diet Drugs, 582 F.3d at 548).

Although the requested fee award is greater than the amount of new assessments paid into the MDL 1203 Account, this amount is roughly equal to the amount per year previously awarded by the court for work performed since 2008. In addition, we note

-19-

that the fee amount requested yields a lodestar multiplier of 1. Accordingly, we will grant the 2012 Joint MDL Fee Applicants an award of $2,514,031.25 from the MDL 1203 Fee and Cost Account.

## V. THE AWARD AND ALLOCATION OF EXPENSE REIMBURSEMENTS

The 2012 Joint Fee Applicants incurred a total of $218,639.65 in properly documented expenses for the common benefit of the class and the plaintiffs in MDL 1203 in 2012. We have already entered orders authorizing reimbursement of $206,870.21 of these expenses from the MDL 1203 Account. The remaining balance represents expenses that were advanced by the following 2012 Joint Fee Applicants in the following amounts: (1) $6,714.88 from Levin, Fishbein, Sedran & Berman; (2) $25.54 from Nast Law, LLC; and (3) $5,029.03 from MacDonald, Rothweiler & Eisenberg, LLP.

In PTO No. 7763, we approved a stipulation between Wyeth and Class Counsel that at least 50% of the expenses from the funds on deposit in the MDL 1203 Fee and Cost Account and/or advanced by the 2012 Joint Fee Applicants should be paid by the Settlement Fund as they were expended for the common benefit of the class.

Therefore, we will enter an order directing that the Settlement Fund reimburse the MDL 1203 Fee and Cost Account in the amount of $103,435.10, which represents 50% of the expenses paid from the MDL 1203 Fee and Cost Account during 2012. We will also order that 50% of the out-of-pocket costs advanced by the 2011 Joint Fee Applicants be reimbursed to them from the MDL 1203

Fee and Cost Account and the remaining 50% be reimbursed from the
Settlement Fund.

## VI.  CONCLUSION

In conclusion, we will award attorneys' fees and
expenses for work performed in 2012 as set forth in the attached
pretrial order.