IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/ FENFLURAMINE/DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | MDL NO. 1203 |
| THIS DOCUMENT RELATES TO: | |
| SHEILA BROWN et al. | CIVIL ACTION NO. 99-20593 |
| v. | |
| AMERICAN HOME PRODUCTS CORPORATION | |
| CLAIMANT: ESTATE OF JESSIE M. JONES | |

**MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO. 9105**

Bartle, J.                                                                     July 2, 2013

     Before the court is the motion of Jessie Powers, representative of the Estate of Jessie M. Jones (the "Estate"), for relief from certain requirements of the Diet Drug Nationwide Class Action Settlement Agreement ("Settlement Agreement") with Wyeth.[1] In particular, the Estate seeks permission to submit a claim for Matrix Compensation Benefits ("Matrix Benefits") even though it cannot establish that Ms. Jones ever had a complete echocardiogram from which a determination of eligibility for Matrix Benefits can be made.[2]

---

1. Prior to March 11, 2002, Wyeth was known as American Home Products Corporation. In 2009, Pfizer, Inc. acquired Wyeth.

2. Ms. Powers has submitted a number of letters to the court, each of which relates to her request for relief from the Settlement Agreement. The instant motion is one of those letters, which was docketed as a motion for disposition of her request.

According to the Estate, Ms. Jones reported to a hospital emergency room for heart pain and distress in November, 1999. As part of her evaluation, medical staff attempted to perform an echocardiogram. Before it could be completed, however, Ms. Jones died. The Estate submitted a statement of the attending cardiologist, Gregory D. Price, Sr., M.D., F.A.C.C., who stated, "A limited emergent echocardiogram was performed at the bedside. There was no ventricular activity whatsoever. We were unable to assess the valves in any way, shape or form and I cannot comment on these at all."[3]

A Diet Drug Recipient is eligible for Matrix Benefits under the Settlement Agreement only if he or she is "diagnosed by a Qualified Physician as FDA Positive[4] or as having Mild Mitral Regurgitation by an Echocardiogram" performed within a certain period or "diagnosed by a Qualified Physician as having Endocardial Fibrosis." Settlement Agreement § IV.B.1. (Emphasis added). There is no suggestion that Ms. Jones suffered from endocardial fibrosis. FDA Positive is defined as having mild or

---

3. The Estate also suggests Ms. Jones might have had an echocardiogram administered prior to the episode that resulted in her death, but the Estate has not provided any evidence of an earlier echocardiogram.

4. FDA Positive is defined as having mild or greater aortic regurgitation and/or moderate or greater mitral valve regurgitation.

-2-

greater aortic regurgitation and/or moderate or greater mitral valve regurgitation. Settlement Agreement § I.22.a. Consequently, to be eligible for Matrix Benefits, Ms. Jones had to have been diagnosed by an echocardiogram with, at a minimum, mild aortic regurgitation or mild mitral regurgitation in accordance with the Settlement Agreement. There is no evidence in the record of such a diagnosis. Although the hospital medical staff attempted to perform an echocardiogram on Ms. Jones, it was not completed and could not be used for an assessment of Ms. Jones's aortic or mitral valves. Thus, the Estate has not presented the necessary evidence that Ms. Jones was eligible for Matrix Benefits.

Moreover, § VI.C.4. of the Settlement Agreement, which permits the Trust to consider other supporting documentation in cases where the claimant is unable to obtain the documentation required in support of a claim for Matrix Benefits, does not aid the Estate. A claim for Matrix Benefits is a two-step process: a claimant must establish both that he or she is eligible for Matrix Benefits and that he or she qualifies for Matrix Benefits. As we previously have held, § VI.C.4. of the Settlement Agreement pertains only to the evidence that the Trust may consider when determining a claimant's qualification, not eligibility. See Mem. in Supp. of Pretrial Order No. 7091 at 4-5 (Apr. 5, 2007).

As noted above, the Settlement Agreement clearly

-3-

requires that a claimant must be diagnosed by an echocardiogram. The Estate of Ms. Jones has not met this requirement. Accordingly, we will deny the Estate's motion to submit a claim for Matrix benefits without providing an echocardiogram.