IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: DIET DRUGS (PHENTERMINE/ )
FENFLURAMINE/DEXFENFLURAMINE) ) MDL NO. 1203
PRODUCTS LIABILITY LITIGATION )
———————————————————————— )
                                )
THIS DOCUMENT RELATES TO:       )
                                )
SHEILA BROWN, et al.            )
                                ) CIVIL ACTION NO. 99-20593
        v.                      )
                                )
AMERICAN HOME PRODUCTS          )
CORPORATION                     )

**MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO. 9162**

Bartle, J.                                    November 13, 2013

            Janice E. Madkins ("Ms. Madkins" or "claimant"), a

class member under the Diet Drug Nationwide Class Action

Settlement Agreement ("Settlement Agreement") with Wyeth, Inc.,[1]

sought benefits from the AHP Settlement Trust ("Trust").  Under

the Settlement Agreement, Matrix Compensation Benefits ("Matrix

Benefits") are awarded to compensate claimants for medical

conditions caused by Pondimin® or Redux™ ("Diet Drugs").[2]

---

1.    Prior to March 11, 2002, Wyeth was American Home Products
Corporation.  In 2009, Pfizer, Inc. acquired Wyeth.

2.    Matrix Benefits are paid according to two benefit matrices
(Matrix "A" and Matrix "B"), which generally classify claimants
for compensation purposes based upon the severity of their
medical conditions, their ages when diagnosed, and the presence
of other medical conditions that also may have caused or
contributed to a claimant's valvular heart disease.  See
Settlement Agreement, §§ IV.B.2.b. and IV.B.2.d.(1)-(2).  Matrix
A-1 describes the compensation available to Diet Drug Recipients
with serious valvular heart disease who took the drugs for 61
                                              (continued...)

On December 13, 2007, the Trust issued a Final Post-Audit Determination denying her claim for Matrix Benefits based on the findings of its auditing cardiologist and its determination that she could not document Diet Drug use. Ms. Madkins, acting pro se, sought arbitration of the Trust's determination with respect to her proof of Diet Drug use to arbitration pursuant to Sections IV.C.4.h and i of the Settlement Agreement.[3] The Arbitrator issued a Report and Award on December 28, 2012, affirming the Trust's determination that Ms. Madkins had not established that she had ingested Diet Drugs. Ms. Madkins then appealed the decision of the Arbitrator to this court, and on September 26, 2013, we affirmed that decision. See Pretrial Order ("PTO") No. 9150 (Sept. 26, 2013).

On October 16, 2013, Ms. Madkins, again acting pro se, filed a motion for reconsideration of PTO No. 9150.[4] In support,

---

2. (...continued)

days or longer and who did not have any of the alternative causes of the disease that made the B matrices applicable. In contrast, Matrix B-1 outlines the compensation available to Diet Drug Recipients with serious valvular heart disease who were registered as having only mild mitral regurgitation by the close of the Screening Period or who took the drugs for 60 days or less or who had factors that would make it difficult for them to prove that their heart disease was caused solely by the use of these Diet Drugs.

3. Ms. Madkins also disputed the Trust's determination with respect to the medical conditions at issue in her claim. Thus, on February 6, 2008, we granted the Trust's application for an order to show cause why her claim should be paid. See PTO No. 7666 (Feb. 6, 2008).

4. Although Ms. Madkins requested reconsideration of PTO (continued...)

Ms. Madkins submitted a letter enclosing "additional enclosed 'progress notes'" which she contends demonstrate that she ingested Diet Drugs.

The Rules Governing Arbitration Process ("Arbitration Rules") provide, "Absent prior approval by the Chair, no new evidence may be considered by the Arbitrator at any time during the Arbitration process. The evidentiary record shall be limited to records submitted to the Trust prior to its final determination." Arbitration Rule 9.a. The Arbitration Rules further state, in pertinent part, that:

> The Chair, upon petition, will consider requests to submit new evidence to the Arbitrator. Any such petition must include a concise statement setting forth the reasons that it is necessary to submit new evidence. The statement also must set forth the alleged impact the new evidence will have on the calculation of Matrix Compensation Benefits and an explanation as to why the information was not previously submitted to the Trust. The Chair will grant such petitions only to prevent a miscarriage of justice. Evidence that was available, or could have been obtained and submitted to the Trust prior to its final determination, generally will not meet this standard and will not be considered.

Id. Rule 9.b. We will construe the October 16, 2013 motion of Ms. Madkins for consideration of "additional enclosed 'progress notes'" as a petition to submit new evidence pursuant to Arbitration Rule 9.b. The court is referring the petition to the

---

4. (...continued)
No. 7666, we construe her motion as a request for reconsideration of PTO No. 9150.

Chair of the Arbitration Panel for reconsideration and disposition pursuant to Rule 9.b. of the Arbitration Rules. We take no position on what the Arbitrator's decision should be.