IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/ | : | MDL NO. 1203 |
| FENFLURAMINE/DEXFENFLURAMINE) | : | |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| | : | |
| SHEILA BROWN, et al. | : | |
| | : | |
| v. | : | |
| | : | |
| AMERICAN HOME PRODUCTS | : | |
| CORPORATION | : | |
| | : | NO. 99-20593 |

## MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO. 9398

Bartle, J.                                          March 3, 2015

        Before the court is the petition of Levin, Fishbein,
Sedran & Berman ("Levin-Fishbein"), in its respective capacity
as Plaintiffs' Liaison Counsel ("PLC"), Co-Lead Counsel for the
Plaintiffs, and Class Counsel, for an award of attorneys' fees
and expense reimbursements relating to work performed from
January 1, 2014 through December 31, 2014.  This court has
previously awarded fees in Pretrial Order ("PTO") Nos. 7763A,
8516, 8646, 8869, 9102, and 9294.

        Levin-Fishbein seeks an aggregate award of attorneys'
fees in the amount of $1,152,662.50 from the AHP Settlement
Trust (the "Trust") pursuant to the stipulation between Wyeth

and Class Counsel with regard to the funding of future awards of class-related fees that was approved in PTO No. 9297.

In addition, Levin-Fishbein requests an award of attorneys' fees in the amount of $1,152,662.50 to be paid from the MDL 1203 Fee and Cost account for MDL-related services performed during 2014.

Finally, Levin-Fishbein incurred $38,296.66 in litigation expenses during 2014. This court has already authorized payment of $29,326.66 of these expenses from the MDL 1203 Fee and Cost Account. Pursuant to PTO No. 7763, Levin-Fishbein seeks an order directing the Settlement Fund to reimburse $14,663.33 to the MDL 1203 Fee and Cost Account. Levin-Fishbein petitions for reimbursement of the remaining $8,970.00 in out-of-pocket expenses to be allocated for payment equally as between the Settlement Fund and the MDL 1203 Fee and Cost Account.

I.

In January 2015, the court-appointed auditor, Alan B. Winikur, C.P.A., filed his Tenth Audit Report setting forth the results of his audit of the professional time and expenses reported by counsel as eligible for payment or reimbursement for the period from January 1, 2014 through December 31, 2014. In this Report, Mr. Winikur stated that one law firm, Levin-Fishbein, had performed compensable "common benefit" work for

-2-

the class during 2014.  Mr. Winikur reports that during the 2014

calendar year, Levin-Fishbein performed 1,731.5 hours of

professional services.  The lodestar value of this common

benefit work was $1,152,662.50.  The total amount of

reimbursable expenses incurred by these attorneys during 2014

was $38,296.66.  According to Mr. Winikur, the court has

previously authorized payment of bona fide common benefit

expenses from the MDL 1203 Fee and Cost Account in the total

amount of $29,326.66 for the same period ending on December 31,

2014.

        We previously have noted that two funds exist for the

purpose of paying attorneys' fees:  the consolidated Fund A

Escrow Account to pay attorneys in connection with Fund A and

Fund B benefits; and the MDL 1203 Fee and Cost Account to pay

for attorneys' fees and costs associated with the work of the

Plaintiffs' Management Committee ("PMC"), PLC, and attorneys

authorized by those two groups to work on behalf of the

plaintiffs in the MDL 1203 or coordinated state proceedings.

See In re Diet Drugs Prods. Liab. Litig., No. 99-20593, 2010 WL

3292787, at *2 (E.D. Pa. Aug. 19, 2010).  The consolidated Fund

A Escrow Account was created with an initial payment by Wyeth.

The MDL 1203 Fee and Cost Account contains assessments of a

percentage of any recoveries by plaintiffs whose actions are

transferred to the MDL 1203 action and of recoveries by

-3-

plaintiffs in the coordinated state court proceedings. In 2014, this court authorized the termination of the consolidated Fund A Escrow Account and directed the Escrow Agent for that account to pay the funds therein to the Trust. See In re Diet Drugs Prods. Liab. Litig., No. 99-20593, 2014 WL 2767182, at *8 (E.D. Pa. June 17, 2014). As of November 30, 2014, the MDL 1203 Fee and Cost Account had a balance of $3,500,145.62. This balance represents the addition of $142,185.11 in new assessments deposited into the account as a result of $3,593,963.04 in claim payments made during 2013.

## II.

Although there have been no objections to this petition, we must conduct a "thorough judicial review" of the requested fee award as "required in all class action settlements." In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 819 (3d Cir. 1995). We previously have noted the standard of review our Court of Appeals requires a district court to employ, which includes consideration of the following ten factors:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by

-4-

plaintiffs' counsel, (7) the awards in
similar cases, (8) the value of benefits
attributable to the efforts of class counsel
relative to the efforts of other groups,
such as government agencies conducting
investigations, (9) the percentage fee that
would have been negotiated had the case been
subject to a private contingent fee
arrangement at the time counsel was
retained, and (10) any innovative terms of
settlement.

See, e.g., In re Diet Drugs Prods. Liab. Litig., No. 99-20593,

2013 WL 3326480, at *3 (E.D. Pa. June 28, 2013) (citing Gunter

v. Ridgewood Energy Corp., 223 F.3d 190, 195 (3d Cir. 2000)).

We do not apply these factors in a "formulaic way" and recognize

that one factor may outweigh others.  Id.  Our Court of Appeals

has emphasized that "what is important is that the district

court evaluate what class counsel actually did and how it

benefitted the class."  In re AT&T Corp. Sec. Litig., 455 F.3d

160, 165-66 (3d Cir. 2006).

### A.  SIZE OF FUND CREATED AND NUMBER OF PERSONS BENEFITTED

We have previously noted the size of the Class Action

Settlement Fund to be approximately $6.44 billion.  In re Diet

Drugs Prods. Liab. Litig., 553 F. Supp. 2d 442, 472 (E.D. Pa.

2008).  During 2014, sixty-one Class Members received benefits

totaling $20,305,630, pursuant to the terms of the Settlement

Agreement.  This total includes the following awards:

- sixty-one Class Members received Matrix
benefits totaling $16,143,574; and

-5-

> • the Settlement Fund paid a total of
> $4,162,056 to administer the terms of the
> Settlement Agreement to provide settlement
> benefits to Class Members.

We have previously recognized the "immense size of the Fund
created and the thousands of people" who have benefitted since
this court first approved the Settlement Agreement on August 28,
2000.  Diet Drugs, 2010 WL 3292787, at *9.  This factor weighs
in favor of granting to Levin-Fishbein its requested awards.

### B.  PRESENCE OR ABSENCE OF SUBSTANTIAL OBJECTIONS

We must next consider the "presence or absence of
substantial objections by members of the class to the settlement
terms and/or fees requested by counsel."  Gunter, 223 F.3d at
195 n.1.  Less than thirty objections were filed in connection
with the 2007 petition for fees and costs.  Diet Drugs, 553 F.
Supp. 2d at 473.  All of these objections were either overruled
by this court with no further appeal or appealed and dismissed.
Id.  No objections were filed in response to the fee petitions
covering the years 2007-2013.  See In re Diet Drugs Prods. Liab.
Litig., No. 99-20593, 2011 WL 2174611, at *4 (E.D. Pa. June 2,
2011); 2013 WL 3326480, at *4 (E.D. Pa. June 28, 2013); 2014 WL
2767182, at *3 (E.D. Pa. June 17, 2014).

Similarly, no objections have been filed regarding the
current 2014 fee petition.  As we stated previously, the
"paucity of objections filed in response to the original and

-6-

renewed petitions for attorneys' fees and costs does not necessarily establish that the requests in the Joint Petition are proper." Diet Drugs, 553 F. Supp. 2d at 474. Nonetheless, the absence of any objection is indicative of the fairness of the petition. Id. Thus, this factor weighs in favor of granting the current fee petition but does not relieve this court of its independent obligation to ensure the fairness of the award.

### C.  SKILL AND EFFICIENCY OF ATTORNEYS INVOLVED

We previously found that the applicants for attorneys' fees and expenses relating to common benefit work, including Levin-Fishbein, "handled with superior skill and efficiency the resolution of claims in this exceedingly complex class action." Diet Drugs, 2010 WL 3292787, at *10 (citing Diet Drugs, 553 F. Supp. 2d at 474). Levin-Fishbein has likewise handled with great skill those cases transferred to MDL 1203 for pretrial proceedings. In 2014, attorneys at Levin-Fishbein helped to resolve several difficult issues regarding the interpretation of the Settlement Agreement. In addition, they assisted in the administration of Matrix claims, litigated issues related to primary pulmonary hypertension ("PPH"), and helped to administer the Cardiovascular Medical Research and Education Fund ("CMREF") to promote research regarding PPH, its causes, treatment, and cure. They performed this work in a diligent and timely manner.

-7-

Thus, the skill and efficiency of the attorneys involved weighs in favor of granting the requested awards.

### D. COMPLEXITY AND DURATION OF LITIGATION

In PTO No. 7763, this court recognized that the "sheer breadth of the Settlement Agreement and its many moving parts created a virtual labyrinth through which the Joint Fee Applicants were forced to navigate." Diet Drugs, 553 F. Supp. 2d at 477-78. This litigation has been pending for nearly two decades. In addition to the administration of the Class Action, there is the related MDL. According to statistics maintained by the Judicial Panel on Multidistrict Litigation, more than 20,000 civil actions involving Diet Drugs have been transferred to or filed in this court for coordinated or consolidated pretrial proceedings as part of MDL 1203. To date, this court has issued almost 9,400 pretrial orders in connection with MDL 1203.

Michael Fishbein, Esquire, who serves as Class Counsel in connection with the Settlement Agreement and has served as Co-Chairman of the PMC, has submitted an affidavit in support of the petition describing the work performed by Levin-Fishbein during 2014. We will briefly summarize some of the work that Mr. Fishbein reports in his affidavit.

First, Levin-Fishbein reviewed seventy-two claims and referred a number of them to the Consensus Expert Panel ("CEP")

for evaluation and potential re-audit.[1]  As a consequence of the
re-audits by the CEP, Class Members received approximately
$2,700,000 in additional Matrix benefits during 2014.
Levin-Fishbein also provided assistance to 154 Matrix claimants
in preparing and submitting claims to the Trust through the
Class Counsel Claims Office.

        In 2014, Levin-Fishbein also dealt with several novel
interpretation issues related to the Settlement Agreement.
These issues included:

> • the point at which a Class Member's
> pulmonary hypertension becomes
> "irreversible" for purposes of Section
> IV.B.2.c(5)(b)(iv) of the Settlement
> Agreement; and

> • whether a "valvuloplasty" constitutes
> "surgery to repair or replace" a valve for
> purposes of Section IV.B.2.c(3)(a) of the
> Settlement Agreement.

        Furthermore, Levin-Fishbein actively participated in
the litigation of numerous show cause matters in our Court of
Appeals.  For example, in 2014 Levin-Fishbein took part in the
submission of briefs in eight pending show cause appeals
addressing whether this court properly applied the "reasonable

---

1.  This court approved the creation of the CEP in PTO No. 6100.
The CEP reviews claims to determine if the auditor departed from
accepted standards of practice in applying the Settlement
Agreement.  The CEP can then order the termination or retraining
of the auditor and/or recommend re-audit of the claim.

-9-

medical basis" standard to determine the payability of claims denied by the Trust on the basis that the claim was fraudulent.

During 2014, Levin-Fishbein continued to take part in Trust planning activities, participating in discussions on issues such as the Trust budget and operating plan, compensation to be paid to Trust personnel, and level of insurance to be maintained by the Trust. Levin-Fishbein also continued to work with the Seventh Amendment Fund Administrator of the Trust to resolve issues surrounding checks that remained uncashed by Class Members.

Levin-Fishbein also actively participated in PPH litigation. In addition to reviewing all motions to enforce the Settlement Agreement, it monitored current medical developments regarding Diet Drugs, including PPH; evaluated expert testimony proffered by Wyeth and consulted with Wyeth on whether said testimony was sufficient to form the basis for a Daubert motion; coordinated with counsel for PPH plaintiffs; assisted in the development and presentation of testimony by an expert witness on the FDA's regulatory process; and worked to gather evidence to assist in defeating a new defense advanced by Wyeth. As we have noted in past PTOs, Levin-Fishbein continues to undertake many complex matters within this litigation. We also have recognized, however, that the Class Action administration and MDL 1203 are in their sunset period and that the number of

-10-

individuals who benefitted from the Settlement Agreement in 2014
has declined considerably when compared with earlier years.
This decline must be considered when determining the appropriate
amount of any fee award.

### E.   RISK OF NON-PAYMENT

With respect to this Gunter/Prudential factor, we have
stated that the "risk of non-payment must be judged as of the
inception of the action and not through the rosy lens of
hindsight." Diet Drugs, 553 F. Supp. 2d at 478.  However, we
must also "reassess the risk" faced by the 2014 Joint Class Fee
Applicants throughout the litigation, including during 2014.  In
re Diet Drugs Prods. Liab. Litig., 582 F.3d 524, 543 (3d Cir.
2009).  Levin-Fishbein has already received a generous fee for
work performed through 2013.  Because this court has created a
reserve fund to compensate Class Counsel for work performed
after 2008, Levin-Fishbein concedes that the risk of non-payment
for services performed during the period after December 31, 2009
was minimal.

### F.   AMOUNT OF TIME DEVOTED TO CASE BY PLAINTIFFS' COUNSEL

As discussed above, Levin-Fishbein spent a total of
1,731.50 hours of professional time on compensable class common
benefit activities during 2014 according to the Tenth Audit
Report.  This is the equivalent of more than 216 eight-hour work
days.  We accept the Auditor's finding.

-11-

## G.   AWARDS IN SIMILAR CASES

The instant fee petition seeks an award of .0179% of
the value of the Settlement Fund.  When this percentage is added
to the awards previously made by this court in PTO Nos. 7763A,
8516, 8646, 8869, 9102, and 9294, counsel will have received a
total award equaling 7.13% of the Settlement Fund.  We note that
the present award requested represents approximately 5.68% of
the $20,305,630.00 in Settlement Benefits paid to class members
during 2014.

We previously determined that the awards sought in
cases similar to this one range from 4.8% to 15%.  Diet Drugs,
553 F. Supp. 2d at 480.  We noted that these figures should
serve as "guideposts" when determining the appropriate award.
Id.  The award sought by Levin-Fishbein falls within these
guideposts, and thus this factor weighs in favor of the
requested award.

## H.   VALUE OF BENEFITS ATTRIBUTABLE TO EFFORTS OF CLASS COUNSEL RELATIVE TO EFFORTS OF OTHER GROUPS

Under this factor, we must consider the benefits
created by other groups, such as government agencies, when
deciding on a reasonable fee.  We have previously stated that
"Joint Fee Applicants should ... not receive fees based upon
efforts that are not their own."  Diet Drugs, 553 F. Supp. 2d at
480.  A failure to distinguish the work of other groups "would

create an incentive for plaintiffs [sic] attorneys to 'minimize

the costs of failure ... by free riding on the monitoring

efforts of others.'"   In re Prudential Ins. Co. Am. Sales

Practice Litig., 148 F.3d 283, 337 (3d Cir. 1998) (quoting John

C. Coffee, Jr., Understanding the Plaintiff's Attorney, 86

Colum. L. Rev. 669, 681 (1986)).   We conclude now, as we did in

the past, that "[n]either the Government, nor its agencies,

provided the type of heavy-lifting that is sometimes provided in

antitrust or securities cases."   Diet Drugs, 2010 WL 3292787, at

*12.   Because no group has provided aid to Levin-Fishbein for

work performed during 2014, this factor weighs in favor of the

requested fee award.

### I.   PERCENTAGE FEE THAT WOULD HAVE BEEN NEGOTIATED HAD THE CASE BEEN SUBJECT TO A PRIVATE CONTINGENT FEE AGREEMENT AT THE TIME COUNSEL WAS RETAINED

We have previously looked to the Major Filers[3]

Agreement when analyzing this fee.   Id. (citing Diet Drugs, 553

---

3.   The Major Filers:

> (1) represent[ed] about 97% of the Class
> Members who exercised Downstream Opt-Outs
> and filed lawsuits subject to the MDL 1203
> fee assessments; (2) filed 26,000 Level I
> and Level II Matrix Benefit claims that
> became Category One Claims under the Seventh
> Amendment; (3) represented about half of the
> Class Members who have had Matrix Benefits
> claims processed by the Trust.

Diet Drugs, 553 F. Supp. 2d at 482.

F. Supp. 2d at 482).  The Major Filers "were, in essence, the

market for the Joint Fee Applicants' services."  Id. (citing

Diet Drugs, 553 F. Supp. 2d at 482).  The Major Filers have

stipulated that the fees awarded to Class Counsel should include

the interest earned in the Fund A Escrow Account.  Id.  The

instant petition seeks an award of an additional portion of the

interest earned by this account and is thus consistent with the

Major Filers Agreement.  Because the Major Filers Agreement

continues to serve as the best predictor of what would have been

negotiated through a private contingent fee agreement, this

factor weighs in favor of granting the requested award.

### J.    INNOVATIVE TERMS OF SETTLEMENT

As we stated previously in connection with the 2007-

2009 fee petition, "we cannot deny that the Settlement Agreement

provisions [...] were indeed innovative at the time they were

drafted and have already served as models for other cases."  Id.

at *13 (citing Diet Drugs, 553 F. Supp. 2d at 485).  Levin-

Fishbein has not had the opportunity in 2014 to craft any

additional innovative Settlement Agreement terms.  Although we

continue to recognize the past innovation of the Applicants,

this factor does not weigh strongly against or in favor of the

requested award.

-14-

## III.   THE LODESTAR CROSS-CHECK

We must next perform a lodestar cross-check of the fee award generated using the percentage-of-recovery method to ensure that Levin-Fishbein will not receive a windfall.   The "lodestar cross-check is performed by multiplying the hours reasonably expended on the matter by the reasonable hourly billing rate which then provides the court with the 'lodestar calculation.'"   Diet Drugs, 553 F. Supp. 2d at 485.   This number is divided into the proposed fee award.   The resulting figure is the lodestar multiplier.   We must then compare this number to lodestar multipliers in similar cases.   Id.

According to Mr. Winikur's Tenth Audit Report, the lodestar value of this professional time expended by Levin-Fishbein, using the applicable 2014 billing rates, is $1,152,662.50.   The requested fee of $1,152,662.50 divided by this lodestar value yields a lodestar multiplier of 1.[4]   We previously declined to apply a multiplier greater than 1 to the 2010 requested fee award.   See Diet Drugs, 2011 WL 2174611, at *9.   Because the lodestar cross-check yields a multiplier of 1

---

4.   We have previously recognized that the manner in which the Joint Fee Applicants were required to maintain and report time does not allow the attorneys to distinguish between time spent pursuing class activities and that spent working on Opt-Out and PPH cases.   Diet Drugs, 553 F. Supp. 2d at 487.   As a result, the multiplier here is "artificially low" and could be as high as 1.9.

-15-

and based on application of the Gunter/Prudential factors, we
find that the requested 2014 award is reasonable.

### IV. AWARD OF FEES FROM MDL 1203 FEE AND COST ACCOUNT

Levin-Fishbein also seeks an award of $1,152,662.50
from the MDL 1203 Fee and Cost Account. In 2014, a number of
civil actions remained pending in MDL 1203 which had not been
terminated or remanded back to their transferor courts, and in
the two-year period from 2013 to 2014, seventeen new PPH claims
were filed in or removed to federal court and transferred to
this district. During 2014, plaintiffs obtained recoveries in
MDL 1203 and coordinated state-court cases that were subject to
assessment in the amount of $3,593,963.04. This produced
additional deposits into the MDL 1203 Fee and Cost Account
totaling only $142,185.11. The lodestar value of the services
performed by Levin-Fishbein in its capacity as Plaintiffs'
Liaison Counsel during 2014 totaled $1,152,662.50.

Our Court of Appeals has declared that the standard
for awarding to court-appointed management committees a portion
of the claim recoveries earned is as follows:

> Under the common benefit doctrine, an award
> of attorney's fees is appropriate where the
> plaintiff's successful litigation confers a
> substantial benefit on the members of an
> ascertainable class, and where the court's
> jurisdiction over the subject matter of the
> suit makes possible an award that will
> operate to spread the costs proportionately
> among them. Thus, in order to obtain common

> benefit fees, an attorney must confer a
> substantial benefit to members of an
> ascertainable class, and the court must
> ensure that the costs are proportionately
> spread among that class.

Diet Drugs, 582 F.3d at 546 (internal citations omitted).

As we recognized previously, the administrative functions performed by the PLC have conferred a substantial benefit on the individuals in MDL 1203. See Diet Drugs, 2010 WL 3292787, at *14. The PLC has "helped to administer the MDL by tracking individual cases, distributing court orders, and serving as a repository of information concerning the litigation and settlement" to the benefit of these individuals. Id. (citing Diet Drugs, 582 F.3d at 548).

Although the requested fee award is greater than the amount of new assessments paid into the MDL 1203 Fee and Cost Account, this amount is roughly equal to the amount per year previously awarded by the court for work performed since 2008. In addition, we note that the fee amount requested yields a lodestar multiplier of 1. Accordingly, we will grant Levin-Fishbein an award of $1,152,662.50 from the MDL 1203 Fee and Cost Account.

## V. AWARD AND ALLOCATION OF EXPENSE REIMBURSEMENTS

In 2014, a total of $38,296.66 in properly documented expenses were incurred for the common benefit of the class and the plaintiffs in MDL 1203. We have already entered orders

-17-

authorizing reimbursement of $29,326.66 of these expenses from the MDL 1203 Fee and Cost Account.  The remaining balance of $8,970 represents expenses that were advanced by Levin-Fishbein.

In PTO No. 7763, we approved a stipulation between Wyeth and Class Counsel that at least 50% of the expenses from the funds on deposit in the MDL 1203 Fee and Cost Account and/or advanced by Levin-Fishbein should be paid by the Settlement Fund as they were expended for the common benefit of the class.

Therefore, we will enter an order directing that the Settlement Fund reimburse the MDL 1203 Fee and Cost Account in the amount of $14,663.33, which represents 50% of the expenses paid from the MDL 1203 Fee and Cost Account during 2014.  We will also order that 50% of the out-of-pocket costs advanced by the Levin-Fishbein be reimbursed to it from the MDL 1203 Fee and Cost Account and the remaining 50% be reimbursed from the Settlement Fund.

## VI.   CONCLUSION

In conclusion, we will award attorneys' fees and expenses for work performed in 2014 as set forth in the attached pretrial order.

-18-