IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/ | : | MDL NO. 1203 |
| FENFLURAMINE/DEXFENFLURAMINE) | : | |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| | : | |
| SHEILA BROWN, et al. | : | |
| | : | |
| v. | : | |
| | : | |
| AMERICAN HOME PRODUCTS | : | |
| CORPORATION | : | |
| | : | NO. 99-20593 |

MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO. 9465

Bartle, J.                                          May 6, 2016

        Before the court is the petition of Levin, Fishbein,

Sedran & Berman ("Levin-Fishbein"), in its respective capacity

as Plaintiffs' Liaison Counsel ("PLC"), Co-Lead Counsel for the

Plaintiffs, and Class Counsel, for an award of attorneys' fees

and expense reimbursements relating to work performed from

January 1, 2015 through December 31, 2015.  This court has

previously awarded fees in Pretrial Order ("PTO") Nos. 7763A,

8516, 8646, 8869, 9102, 9294, and 9398.

        Levin-Fishbein seeks an aggregate award of attorneys'

fees in the amount of $751,037.50 from the AHP Settlement Trust

(the "Trust") pursuant to the stipulation between Wyeth and

Class Counsel with regard to the funding of future awards of class-related fees that was approved in PTO No. 9297.

In addition, Levin-Fishbein requests an award of attorneys' fees in the amount of $751,037.50 to be paid from the MDL 1203 Fee and Cost account for MDL-related services performed during 2015.

Finally, Levin-Fishbein incurred $12,874.18 in litigation expenses during 2015. This court has already authorized payment of $4,948.56 of these expenses from the MDL 1203 Fee and Cost Account. Pursuant to PTO No. 7763, Levin-Fishbein seeks an order directing the Settlement Fund to reimburse $2,474.28 to the MDL 1203 Fee and Cost Account. Levin-Fishbein petitions for reimbursement of the remaining $7,925.62 in out-of-pocket expenses to be allocated for payment equally as between the Settlement Fund and the MDL 1203 Fee and Cost Account.

I.

In January 2016, the court-appointed auditor, Alan B. Winikur, C.P.A., filed his Eleventh Audit Report setting forth the results of his audit of the professional time and expenses reported by counsel as eligible for payment or reimbursement for the period from January 1, 2015 through December 31, 2015. In this Report, Mr. Winikur states that one law firm, Levin-Fishbein, had performed compensable "common benefit" work

-2-

for the class during 2015.  Mr. Winikur reports that during the
2015 calendar year, Levin-Fishbein performed 1,305 hours of
professional services.  The lodestar value of this common
benefit work was $751,037.50.  The total amount of reimbursable
expenses incurred by these attorneys during 2015 was $12,874.18.
According to Mr. Winikur, the court has previously authorized
payment of bona fide common benefit expenses from the MDL 1203
Fee and Cost Account in the total amount of $4,948.56 for the
same period ending on December 31, 2015.

We previously have noted that two funds exist for the
purpose of paying attorneys' fees:  the consolidated Fund A
Escrow Account to pay attorneys in connection with Fund A and
Fund B benefits; and the MDL 1203 Fee and Cost Account to pay
for attorneys' fees and costs associated with the work of the
Plaintiffs' Management Committee ("PMC"), PLC, and attorneys
authorized by those two groups to work on behalf of the
plaintiffs in the MDL 1203 or coordinated state proceedings.
See In re Diet Drugs Prods. Liab. Litig., No. 99-20593, 2010 WL
3292787, at *2 (E.D. Pa. Aug. 19, 2010).  The consolidated Fund
A Escrow Account was created with an initial payment by Wyeth.
The MDL 1203 Fee and Cost Account contains assessments of a
percentage of any recoveries by plaintiffs whose actions are
transferred to the MDL 1203 action and of recoveries by
plaintiffs in the coordinated state court proceedings.  In 2014,

-3-

this court authorized the termination of the consolidated Fund A
Escrow Account and directed the Escrow Agent for that account to
pay the funds therein to the Trust.  See In re Diet Drugs Prods.
Liab. Litig., No. 99-20593, 2014 WL 2767182, at *8 (E.D. Pa.
June 17, 2014).  As of December 31, 2015, the MDL 1203 Fee and
Cost Account had a balance of $3,298,199.69.  This balance
represents the addition of $934,612.69 in new assessments
deposited into the account as a result of $17,869,695.29 in
claim payments made during 2015.

## II.

Although there have been no objections to this
petition, we must conduct a "thorough judicial review" of the
requested fee award as "required in all class action
settlements."  In re Gen. Motors Corp. Pick-Up Truck Fuel Tank
Prods. Liab. Litig., 55 F.3d 768, 819 (3d Cir. 1995).  We
previously have noted the standard of review our Court of
Appeals requires a district court to employ, which includes
consideration of the following ten factors:

> (1) the size of the fund created and the
> number of beneficiaries, (2) the presence or
> absence of substantial objections by members
> of the class to the settlement terms and/or
> fees requested by counsel, (3) the skill and
> efficiency of the attorneys involved,
> (4) the complexity and duration of the
> litigation, (5) the risk of nonpayment,
> (6) the amount of time devoted to the case
> by plaintiffs' counsel, (7) the awards in
> similar cases, (8) the value of benefits

-4-

> attributable to the efforts of class counsel
> relative to the efforts of other groups,
> such as government agencies conducting
> investigations, (9) the percentage fee that
> would have been negotiated had the case been
> subject to a private contingent fee
> arrangement at the time counsel was
> retained, and (10) any innovative terms of
> settlement.

See, e.g., In re Diet Drugs Prods. Liab. Litig., No. 99-20593,
2013 WL 3326480, at *3 (E.D. Pa. June 28, 2013) (citing Gunter
v. Ridgewood Energy Corp., 223 F.3d 190, 195 (3d Cir. 2000)).
We do not apply these factors in a "formulaic way" and recognize
that one factor may outweigh others.  Id.  Our Court of Appeals
has emphasized that "what is important is that the district
court evaluate what class counsel actually did and how it
benefitted the class."  In re AT&T Corp. Sec. Litig., 455 F.3d
160, 165-66 (3d Cir. 2006).

A.    SIZE OF FUND CREATED AND NUMBER OF PERSONS BENEFITTED

We have previously noted the size of the Class Action
Settlement Fund to be approximately $6.44 billion.  In re Diet
Drugs Prods. Liab. Litig., 553 F. Supp. 2d 442, 472 (E.D. Pa.
2008).  During 2015, Class Members received benefits totaling
$13,973,263 pursuant to the terms of the Settlement Agreement.
This total includes the following awards:

> • twenty-one Class Members received Matrix
> benefits totaling $9,379,370; and
>
> • the Settlement Fund paid a total of
> $4,593,893 to administer the terms of the

-5-

> Settlement Agreement to provide settlement
> benefits to Class Members.

We have previously recognized the "immense size of the Fund
created and the thousands of people" who have benefitted since
this court first approved the Settlement Agreement on August 28,
2000.  Diet Drugs, 2010 WL 3292787, at *9.  This factor weighs
in favor of granting to Levin-Fishbein its requested awards.

## B.    PRESENCE OR ABSENCE OF SUBSTANTIAL OBJECTIONS

We must next consider the "presence or absence of
substantial objections by members of the class to the settlement
terms and/or fees requested by counsel."  Gunter, 223 F.3d at
195 n.1.  Less than thirty objections were filed in connection
with the 2007 petition for fees and costs.  Diet Drugs, 553 F.
Supp. 2d at 473.  All of these objections were either overruled
by this court with no further appeal or appealed and dismissed.
Id.  No objections were filed in response to the fee petitions
covering the years 2007-2014.  See In re Diet Drugs Prods. Liab.
Litig., No. 99-20593, 2015 WL 913136, at *2-3 (E.D. Pa. Mar. 3,
2015).

Similarly, no objections have been filed regarding the
current 2015 fee petition.  As we stated previously, the
"paucity of objections filed in response to the original and
renewed petitions for attorneys' fees and costs does not
necessarily establish that the requests in the Joint Petition

-6-

are proper." Diet Drugs, 553 F. Supp. 2d at 474.  Nonetheless,
the absence of any objection is indicative of the fairness of
the petition.  Id.  Thus, this factor weighs in favor of
granting the current fee petition but does not relieve this
court of its independent obligation to ensure the fairness of
the award.

### C.   SKILL AND EFFICIENCY OF ATTORNEYS INVOLVED

We previously found that the applicants for attorneys'
fees and expenses relating to common benefit work, including
Levin-Fishbein, "handled with superior skill and efficiency the
resolution of claims in this exceedingly complex class action."
Diet Drugs, 2010 WL 3292787, at *10 (citing Diet Drugs, 553 F.
Supp. 2d at 474).  Levin-Fishbein has likewise handled with
great skill those cases transferred to MDL 1203 for pretrial
proceedings.  Levin-Fishbein performed this work in a diligent
and timely manner.  Thus, the skill and efficiency of the
attorneys involved weighs in favor of granting the requested
awards.

### D.   COMPLEXITY AND DURATION OF LITIGATION

In PTO No. 7763, this court recognized that the "sheer
breadth of the Settlement Agreement and its many moving parts
created a virtual labyrinth through which the Joint Fee
Applicants were forced to navigate." Diet Drugs, 553 F. Supp.
2d at 477-78.  This litigation has been pending for nearly two

-7-

decades.  In addition to the administration of the Class Action,
there is the related MDL.  According to statistics maintained by
the Judicial Panel on Multidistrict Litigation, more than 20,000
civil actions involving Diet Drugs have been transferred to or
filed in this court for coordinated or consolidated pretrial
proceedings as part of MDL 1203.  To date, this court has issued
almost 9,500 pretrial orders in connection with MDL 1203.

        Michael Fishbein, Esquire, who serves as Class Counsel
in connection with the Settlement Agreement and has served as
Co-Chairman of the PMC, has submitted an affidavit in support of
the petition describing the work performed by Levin-Fishbein
during 2015.  We will briefly summarize some of the work that
Mr. Fishbein reports in his affidavit.

        First, Levin-Fishbein reviewed forty-one claims and
referred a number of them to the Consensus Expert Panel ("CEP")
for evaluation and potential re-audit.[1]  As a consequence of the
re-audits by the CEP, Class Members received approximately
$2,800,000 in additional Matrix benefits during 2015.
Levin-Fishbein also provided assistance to 340 Matrix claimants

---

1.  This court approved the creation of the CEP in PTO No. 6100.
The CEP reviews claims to determine if the auditor departed from
accepted standards of practice in applying the Settlement
Agreement.  The CEP can then order the termination or retraining
of the auditor and/or recommend re-audit of the claim.

in preparing and submitting claims to the Trust through the Class Counsel Claims Office.

During 2015, Levin-Fishbein continued to take part in Trust planning activities, participating in discussions on issues such as the Trust budget and operational plan for 2016. It also continued to work with the Seventh Amendment Fund Administrator of the Trust to resolve issues surrounding checks that remained uncashed by Class Members.  In addition, it actively participated in PPH litigation.  As we have noted in past PTOs, Levin-Fishbein continues to undertake many complex matters within this litigation.  We have recognized, however, that the Class Action administration and MDL 1203 are in their sunset period and that the number of individuals who benefitted from the Settlement Agreement in 2015 has declined considerably when compared with earlier years.  This decline must be considered when determining the appropriate amount of any fee award.

### E.   RISK OF NON-PAYMENT

With respect to this Gunter/Prudential factor, we have stated that the "risk of non-payment must be judged as of the inception of the action and not through the rosy lens of hindsight."  Diet Drugs, 553 F. Supp. 2d at 478.  However, we must also "reassess the risk" faced by the 2015 Joint Class Fee Applicants throughout the litigation, including during 2015.  In

-9-

re Diet Drugs Prods. Liab. Litig., 582 F.3d 524, 543 (3d Cir.
2009).  Levin-Fishbein has already received a generous fee for
work performed through 2014.  Because this court has created a
reserve fund to compensate Class Counsel for work performed
after 2008, Levin-Fishbein concedes that the risk of non-payment
for services performed during the period after December 31, 2009
is minimal.

**F.  AMOUNT OF TIME DEVOTED TO CASE BY PLAINTIFFS' COUNSEL**

As discussed above, Levin-Fishbein spent a total of
1,305 hours of professional time on compensable class common
benefit activities during 2015 according to the Eleventh Audit
Report.  This is the equivalent of approximately 163 eight-hour
work days.  We accept the Auditor's finding.

**G.  AWARDS IN SIMILAR CASES**

The instant fee petition seeks an award of .0117% of
the value of the Settlement Fund.  When this percentage is added
to the awards previously made by this court in PTO Nos. 7763A,
8516, 8646, 8869, 9102, and 9294, and 9398, counsel will have
received a total award equaling 7.1445% of the Settlement Fund.
We note that the present award requested represents
approximately eight percent of the $9,379,370 in Settlement
Benefits paid to class members in 2015.

We previously determined that the awards sought in
cases similar to this one range from 4.8% to fifteen percent.

-10-

Diet Drugs, 553 F. Supp. 2d at 480.  We noted that these figures should serve as "guideposts" when determining the appropriate award.  Id.  The award sought by Levin-Fishbein falls within these guideposts, and thus this factor weighs in favor of the requested award.

### H.   VALUE OF BENEFITS ATTRIBUTABLE TO EFFORTS OF CLASS COUNSEL RELATIVE TO EFFORTS OF OTHER GROUPS

Under this factor, we must consider the benefits created by other groups, such as government agencies, when deciding on a reasonable fee.  We have previously stated that "Joint Fee Applicants should . . . not receive fees based upon efforts that are not their own."  Diet Drugs, 553 F. Supp. 2d at 480.  A failure to distinguish the work of other groups "would create an incentive for plaintiffs [sic] attorneys to 'minimize the costs of failure . . . by free riding on the monitoring efforts of others.'"  In re Prudential Ins. Co. Am. Sales Practice Litig., 148 F.3d 283, 337 (3d Cir. 1998) (quoting John C. Coffee, Jr., Understanding the Plaintiff's Attorney, 86 Colum. L. Rev. 669, 681 (1986)).  We conclude now, as we did in the past, that "[n]either the Government, nor its agencies, provided the type of heavy-lifting that is sometimes provided in antitrust or securities cases."  Diet Drugs, 2010 WL 3292787, at *12.  Because no group has provided aid to Levin-Fishbein for

work performed during 2015, this factor weighs in favor of the
requested fee award.

> I.  **PERCENTAGE FEE THAT WOULD HAVE BEEN NEGOTIATED
>     HAD THE CASE BEEN SUBJECT TO A PRIVATE CONTINGENT FEE
>     AGREEMENT AT THE TIME COUNSEL WAS RETAINED**

We have previously looked to the Major Filers[3]
Agreement when analyzing this fee.  Id. (citing Diet Drugs, 553
F. Supp. 2d at 482).  The Major Filers "were, in essence, the
market for the Joint Fee Applicants' services."  Id. (citing
Diet Drugs, 553 F. Supp. 2d at 482).  The Major Filers have
stipulated that the fees awarded to Class Counsel should include
the interest earned in the Fund A Escrow Account.  Id.  The
instant petition seeks an award of an additional portion of the
interest earned by this account and is thus consistent with the
Major Filers Agreement.  Because the Major Filers Agreement
continues to serve as the best predictor of what would have been

_____

3.  The Major Filers:

> (1) represent[ed] about 97% of the Class
> Members who exercised Downstream Opt-Outs
> and filed lawsuits subject to the MDL 1203
> fee assessments; (2) filed 26,000 Level I
> and Level II Matrix Benefit claims that
> became Category One Claims under the Seventh
> Amendment; (3) represented about half of the
> Class Members who have had Matrix Benefits
> claims processed by the Trust.

Diet Drugs, 553 F. Supp. 2d at 482.

negotiated through a private contingent fee agreement, this
factor weighs in favor of granting the requested award.

## J.   INNOVATIVE TERMS OF SETTLEMENT

As we stated previously in connection with the
2007-2009 fee petition, "we cannot deny that the Settlement
Agreement provisions . . . were indeed innovative at the time
they were drafted and have already served as models for other
cases."  Id. at *13 (citing Diet Drugs, 553 F. Supp. 2d at 485).
Levin-Fishbein has not had the opportunity in 2015 to craft any
additional innovative Settlement Agreement terms.  Although we
continue to recognize the past innovation of the Applicants,
this factor does not weigh strongly against or in favor of the
requested award.

## III.   THE LODESTAR CROSS-CHECK

We must next perform a lodestar cross-check of the fee
award generated using the percentage-of-recovery method to
ensure that Levin-Fishbein will not receive a windfall.  The
"lodestar cross-check is performed by multiplying the hours
reasonably expended on the matter by the reasonable hourly
billing rate which then provides the court with the 'lodestar
calculation.'"  Diet Drugs, 553 F. Supp. 2d at 485.  This number
is divided into the proposed fee award.  The resulting figure is
the lodestar multiplier.  We must then compare this number to
lodestar multipliers in similar cases.  Id.

-13-

According to Mr. Winikur's Eleventh Audit Report, the lodestar value of this professional time expended by Levin-Fishbein, using the applicable 2015 billing rates, is $751,037.50.  The requested fee of $751,037.50 divided by this lodestar value yields a lodestar multiplier of 1.[4]  We previously declined to apply a multiplier greater than 1 to the 2010 requested fee award.  See Diet Drugs, 2011 WL 2174611, at *9. Because the lodestar cross-check yields a multiplier of 1 and based on application of the Gunter/Prudential factors, we find that the requested 2015 award is reasonable.

## IV.   AWARD OF FEES FROM MDL 1203 FEE AND COST ACCOUNT

Levin-Fishbein also seeks an award of $751,037.50 from the MDL 1203 Fee and Cost Account.  In 2015, multiple new PPH cases were filed in state courts, a number of which were subject to coordination with the proceedings in MDL 1203.  Also in 2015, eighteen of the cases remaining on the MDL docket and four claims in the coordinated state-court litigation were resolved for a total of $17,869,695.29.  The lodestar value of the

---

4.  We have previously recognized that the manner in which the Joint Fee Applicants were required to maintain and report time does not allow the attorneys to distinguish between time spent pursuing class activities and that spent working on Opt-Out and PPH cases.  Diet Drugs, 553 F. Supp. 2d at 487.  As a result, the multiplier here is "artificially low" and could be as high as 1.9.

services performed by Levin-Fishbein in its capacity as PLC during 2015 totaled $751,037.50.

Our Court of Appeals has declared that the standard for awarding to court-appointed management committees a portion of the claim recoveries earned is as follows:

> Under the common benefit doctrine, an award of attorney's fees is appropriate where the plaintiff's successful litigation confers a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.  Thus, in order to obtain common benefit fees, an attorney must confer a substantial benefit to members of an ascertainable class, and the court must ensure that the costs are proportionately spread among that class.

Diet Drugs, 582 F.3d at 546 (internal citations omitted).

As we recognized previously, the administrative functions performed by the PLC have conferred a substantial benefit on the individuals in MDL 1203.  See Diet Drugs, 2010 WL 3292787, at *14.  The PLC has "helped to administer the MDL by tracking individual cases, distributing court orders, and serving as a repository of information concerning the litigation and settlement" to the benefit of these individuals.  Id. (citing Diet Drugs, 582 F.3d at 548).

The requested fee award is less than the amount of new assessments paid into the MDL 1203 Fee and Cost Account and

-15-

yields a lodestar multiplier of approximately 1.  Accordingly, we will grant Levin-Fishbein an award of $751,037.50 from the MDL 1203 Fee and Cost Account.

### V.  AWARD AND ALLOCATION OF EXPENSE REIMBURSEMENTS

In 2015, a total of $12,874.18 in properly documented expenses were incurred for the common benefit of the class and the plaintiffs in MDL 1203.  We have already entered orders authorizing reimbursement of $4,948.56 of these expenses from the MDL 1203 Fee and Cost Account.  The remaining balance of $7,925.62 represents expenses that were advanced by Levin-Fishbein.

In PTO No. 7763, we approved a stipulation between Wyeth and Class Counsel that at least fifty percent of the expenses from the funds on deposit in the MDL 1203 Fee and Cost Account and/or advanced by Levin-Fishbein should be paid by the Settlement Fund as they were expended for the common benefit of the class.

Therefore, we will enter an order directing that the Settlement Fund reimburse the MDL 1203 Fee and Cost Account in the amount of $2,474.28, which represents fifty percent of the expenses paid from the MDL 1203 Fee and Cost Account during 2015.  We will also order that fifty percent of the out-of-pocket costs advanced by the Levin-Fishbein be reimbursed to it

-16-

from the MDL 1203 Fee and Cost Account and the remaining fifty percent be reimbursed from the Settlement Fund.

### VI.   CONCLUSION

In conclusion, we will award attorneys' fees and expenses for work performed in 2015 as set forth in the attached pretrial order.