IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/ FENFLURAMINE/DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | : : : : | MDL NO. 1203 |
| THIS DOCUMENT RELATES TO: | : : | |
| SHEILA BROWN, et al. | : : | |
| v. | : : | |
| AMERICAN HOME PRODUCTS CORPORATION | : : : | NO. 99-20593 |

## MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO. 9490

Bartle, J.                                                                                         June 30, 2017

Before the court is the petition of Levin Sedran & Berman ("Levin"), in its respective capacities as Plaintiffs' Liaison Counsel ("PLC"), Co-Lead Counsel for the Plaintiffs, and Class Counsel, for an award of attorneys' fees and expense reimbursements relating to work performed from January 1, 2016 through December 31, 2016. This court has previously awarded fees in Pretrial Order ("PTO") Nos. 7763A, 8516, 8646, 8869, 9102, 9294, 9398, and 9465.

Levin seeks an aggregate award of attorneys' fees in the amount of $601,400 from the AHP Settlement Trust (the "Trust") in accordance with the stipulation approved in PTO No. 9297 between Wyeth and Class Counsel that described, among

other things, the terms of funding of future awards and class-related fees.

Additionally Levin requests an award of attorneys' fees in the amount of $601,400 from the MDL 1203 Fee and Cost Account for MDL-related services performed during 2016.

Finally Levin incurred a total of $18,519.58 in litigation expenses during 2016. This court has already authorized payment of $14,548.61 of expenses from the MDL 1203 Fee and Cost Account. Pursuant to PTO No. 7763, Levin seeks an order directing the Trust to reimburse $7,274.31 to the MDL 1203 Fee and Cost Account. Levin petitions for reimbursement of the remaining $3,970.97 in out-of-pocket expenses advanced by Levin to be allocated for payment to Levin as $1,985.48 from the Trust related to class action work and $1,985.49 from the MDL 1203 Fee and Cost Account.

I.

In February 2017 the court-appointed auditor, Alan B. Winikur, C.P.A., filed his Twelfth Audit Report setting forth the results of his audit of the professional time and expenses reported by counsel as eligible for payment or reimbursement for the period from January 1, 2016 through December 31, 2016. In this Report Mr. Winikur states that one law firm, Levin, has performed compensable "common benefit" work for the class during 2016. He reports that during 2016, Levin performed 955.5 hours

-2-

of professional work. According to Mr. Winikur, the lodestar value of this work was $601,400. The total amount of reimbursable expenses incurred by Levin during 2016 was $18,519.58. Mr. Winikur advises that the court has previously authorized payment of bona fide common benefit expenses from the MDL Cost and Fee Account during 2016 in the total amount of $14,548.61. The amount of outstanding reimbursable expenses is $3,970.97.

On June 8, 2017 Mr. Winikur filed a supplement to the Twelfth Audit Report. In the supplement Mr. Winikur clarified the breakdown of the 955.5 hours of professional work performed by Levin into two categories: (1) the number of hours that were spent by Levin doing work related to the class action, and (2) the number of hours that were spent by Levin doing work related the MDL 1203. His report states that Levin performed 870.5 of the 955.5 hours on class action work and the remaining 85 hours on MDL-related work.

We have previously noted that two funds exist for the purpose of paying attorneys' fees: (1) the consolidated Fund A Escrow Account to pay attorneys in connection with Fund A and Fund B benefits related to the class action, and (2) the MDL 1203 Fee and Cost Account to pay for attorneys' fees and costs associated with the work of the Plaintiffs' Management Committee ("PMC"), PLC, and attorneys authorized by those two groups to

work on behalf of the plaintiffs in the MDL 1203 or coordinated state proceedings. See In re Diet Drugs Prods. Liab. Litig., 2010 WL 3292787, at *2 (E.D. Pa. Aug. 19, 2010). The consolidated Fund A Escrow Account was created with an initial payment by Wyeth. As of January 31, 2014 the consolidated Fund A Escrow Account had a total balance of $1,790.92. On June 17, 2014 this court authorized the termination of the consolidated Fund A Escrow Account and directed the Escrow Agent for that account to pay the funds therein to the Trust. See In re Diet Drugs Prods. Liab. Litig., 2014 WL 2767182, at *8 (E.D. Pa. June 17, 2014).

Following the termination of the consolidated Fund A Escrow Account, the court approved on June 18, 2014 the "Stipulation between Wyeth and Class Counsel with Regard to the Funding of Future Awards of Class-Related Fees" in PTO No. 9297. This PTO ordered Wyeth to provide funding for payments of up to $4 million of class counsel fees in connection with class action work. As of June 29, 2017, $2,930,125 has been paid by Wyeth and $1,069,875 remains available to fund the payment of attorneys' fees for class action related work.

The MDL 1203 Fee and Cost Account contains assessments of a percentage of any recoveries by plaintiffs whose actions are transferred to the MDL 1203 action and of recoveries by plaintiffs in the coordinated state proceedings. As of

-4-

December 22, 2016 the MDL 1203 Fee and Cost Account had a balance of $2,629,545.92. This balance represents the addition of $96,204 in new assessments deposited into the account and the dispersal of $1,862,750 in claim payments made during 2016.[1]

II.

Although there have been no objections to this petition, we must conduct a "thorough judicial review" of the requested fee award as "required in all class action settlements." In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 819 (3d Cir. 1995). We have previously noted the standard of review that our Court of Appeals requires a district court to employ, which includes consideration of the following ten factors:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel

---

1. The balance does not include a separate sum of $101,200 that has been paid by Wyeth into an escrow account. The sum was put in escrow in connection with an unresolved dispute as to whether certain cases that were settled in 2016 should be subject to the MDL 1203 assessment that was established by California General Order No. 7, which governs the related California state court litigation. If the challenge were to be rejected, the amount in escrow would be released and paid into the MDL 1203 account.

> relative to the efforts of other groups,
> such as government agencies conducting
> investigations, (9) the percentage fee that
> would have been negotiated had the case been
> subject to a private contingent fee
> arrangement at the time counsel was
> retained, and (10) any innovative terms of
> settlement.

See, e.g., In re Diet Drugs Prods. Liab. Litig., 2013 WL 3326480, at *3 (E.D. Pa. June 28, 2013) (citing Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 (3d Cir. 2000)). We do not apply these factors in a "formulaic way" and recognize that one factor may outweigh others. Id. Our Court of Appeals has emphasized that "what is important is that the district court evaluate what class counsel actually did and how it benefitted the class." In re AT&T Corp. Sec. Litig., 455 F.3d 160, 165-66 (3d Cir. 2006).

**A.  SIZE OF FUND CREATED AND NUMBER OF PERSONS BENEFITTED**

We have previously noted the size of the Class Action Settlement Fund to be approximately $6.44 billion. In re Diet Drugs Prods. Liab. Litig., 553 F. Supp. 2d 442, 472 (E.D. Pa. 2008). During 2016, Class Members received benefits totaling $8,353,167 pursuant to the terms of the Settlement Agreement. This total includes the following awards:

- seventeen Class Members received Matrix payments totaling $5,854,869; and

-6-

- the Settlement Fund has paid a total of $2,498,298 to administer the terms of the Settlement Agreement to provide settlement benefits to Class Members.

We have previously recognized the "immense size of the Fund created and the thousands of people" who have benefitted since this court first approved the Settlement Agreement on August 28, 2000. Diet Drugs, 2010 WL 3292787, at *9. This factor weighs in favor of granting Levin a fee award for its class action work.

### B. PRESENCE OR ABSENCE OF SUBSTANTIAL OBJECTIONS

We must next consider the "presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel." Gunter, 223 F.3d at 195 n.1. Less than thirty objections were filed in response to the 2007 petition for fees and costs. Diet Drugs, 553 F. Supp. 2d at 473. All of these objections were overruled by this court. Id. Several of our orders were appealed to the Court of Appeals for the Third Circuit and affirmed, while other appeals were discontinued with prejudice. In re Diet Drugs Prods. Liab. Litig., 93 F. App'x 338 (3d Cir. 2004); In re Diet Drugs Prods. Liab. Litig., 385 F.3d 386 (3d Cir. 2004); In re Diet Drugs Prods. Liab. Litig., 226 F.R.D. 498 (E.D. Pa. 2005). No objections were filed in connection with the fee petitions

covering the years 2007-2015. See In re Diet Drugs Prods. Liab. Litig., 2016 WL 8732314, at *2-3 (E.D. Pa. May 6, 2016).

Similarly no objections have been filed in response to the current 2016 petition. However as we have previously stated, "the paucity of objections filed in response to the original and renewed petitions for attorneys' fees and costs do not necessarily establish that the requests in the Joint Petition are proper." Diet Drugs, 553 F. Supp. 2d at 474. Nonetheless, the absence of any objection is indicative of the fairness of the petition. Id. Thus this factor weighs in favor of granting the current fee petition but does not relieve the court of its independent obligation to ensure the fairness of the award.

### C. SKILL AND EFFICIENCY OF ATTORNEYS INVOLVED

We previously found that those seeking attorneys' fees and expenses related to common benefit work, including Levin, "handled with superior skill and efficiency the resolution of claims in this exceedingly complex class action." Diet Drugs, 2010 WL 3292787, at *10 (citing Diet Drugs, 553 F. Supp. 2d at 474). We have also found that Levin has handled those cases transferred to MDL 1203 for pretrial proceedings in a skillful and diligent manner. Diet Drugs, 2016 WL 8732314 at *3. Thus the proficiency and diligence of the attorneys involved weighs

in favor of awarding Levin an appropriate fee for their MDL-related work.

### D. COMPLEXITY AND DURATION OF LITIGATION

This litigation, which has been pending for nearly two decades, involves the administration of the Class Action and the related MDL. According to statistics maintained by the Judicial Panel on Multidistrict Litigation, 20,209 civil actions involving Diet Drugs have been transferred to or filed in this court for coordinated or consolidated pretrial proceedings as part of MDL 1203. The court has issued nearly 9,500 pretrial orders in connection with MDL 1203. As we have recognized, the "sheer breadth of the Settlement Agreement and its many moving parts created a virtual labyrinth through with the Joint Fee Applicants were forced to navigate." Diet Drugs, 553 F. Supp. 2d at 477-78.

Laurence Berman, Esquire, who now serves as Chair of the PMC and as Class Counsel in connection with the Settlement Agreement, has submitted an affidavit in support of the fee petition describing the work performed by Levin in 2016. We will briefly describe some of the work that Mr. Berman reports in his affidavit.

During 2016 Levin reviewed the audit of twenty nine Matrix Claims and referred a number of them to the Consensus

Expert Panel ("CEP") for evaluation and potential re-audit.² As a result of the CEP re-audits, Class Members received approximately $1.2 million in additional Matrix benefit payments during 2016. In addition Levin assisted 150 Matrix Claimants in preparing and submitting claims to the Trust through the Class Counsel Claims Office. That assistance helped to deliver $2.7 million in Matrix Benefits to those Claimants.

Levin also continued to take part in Trust planning activities. The firm participated in discussions on issues such as the Trust's 2016 budget, the plan for Trust operations during 2016, the relocation of the Trust's offices, and the commencement of the destruction of certain unneeded Trust materials that were held being held in storage.³ Levin assisted with the resolution of the Show Cause claim set forth in PTO No. 9468, the subject of which was "irreversible pulmonary hypertension" as defined by the Settlement Agreement. The resolution of this Show Cause claim led to PTO No. 9469, which

---

2. This court approved the creation of the CEP in PTO No. 6100. The CEP reviews claims to determine if the auditor departed from accepted standards of practice in applying the Settlement Agreement. The CEP can then order the termination or retraining of the auditor and/or recommend re-audit of the claim.

3. In PTO No. 9484, the court granted the joint motion of the AHP Settlement Trust, Wyeth, and Class Counsel for an order authorizing the destruction of stored trust materials. See PTO No. 9484 (Feb. 14, 2017).

vacated PTO No. 9468 on the ground that the claim was resolved. See PTO No. 9469 (July 11, 2016).

During 2016 Levin took part in a project that endeavored to identify unrepresented Class Members who remained eligible to submit claims to the Trust after approval of the Seventh Amendment in order to determine whether they were eligible for disease progression benefits. Levin also assisted them in submitting supplemental Matrix Benefit claims to the Trust. Through this project Levin identified nine new matrix claims on which it worked in order to submit claims for Matrix Benefits to the Trust.

In 2016 Levin continued to participate in activities such as participating in Primary Pulmonary Hypertension litigation, engaging in the administration of the Cardiovascular Medical Research and Education Fund ("CMREF"), and administration of the Class Action and MDL 1203.[4] We recognize, as we have in past PTOs, that the activity in the litigation is consistently declining and thus the number of individuals who have benefitted from the Settlement Agreement in 2016 has decreased significantly when compared with earlier years. We

---

4. The CMREF was created by the Settlement Agreement. See Settlement Agreement § VI.A.3.a. Now retired former Levin partner Michael D. Fishbein, Esquire, who also previously served as Class Counsel, served on the board of directors of CMREF in 2016.

-11-

must consider this decline in activity when calculating the appropriate fee award.

**E. RISK OF NON-PAYMENT**

We have stated in past memoranda that the risk of non-payment to Class Counsel must be judged at the inception of the action, rather than in hindsight. See Diet Drugs, 553 F. Supp. at 478. We have noted that the Joint Fee Applicants "faced significant risk" at the commencement of the litigation and that this risk did not subside with the approval of the Settlement Agreement. Id. at 748-49 (internal citations omitted). However, we must "reassess the risk" faced by the 2016 Joint Class Fee Applicants throughout the litigation, including during 2016. In re Diet Drugs Prods. Liab. Litig., 582 F.3d 524, 543 (3d Cir. 2009). Levin has already received a generous fee for the work performed through 2015. The court has created a reserve fund to compensate Class Counsel for work performed after 2008. Levin concedes that the risk of non-payment for work performed in connection with the administration of the Class Settlement in the period after December 31, 2009 is minimal.

**F. AMOUNT OF TIME DEVOTED TO CASE BY PLAINTIFFS' COUNSEL**

According to the supplement to the Twelfth Audit Report, during 2016 Levin spent a total of 870.5 hours on class

action work.[5] This is the equivalent of more than 108 eight-hour work days. We accept the Auditor's finding.

### G. AWARDS IN SIMILAR CASES

The instant fee petition seeks an award of .0094% of the value of the Settlement Fund. When this percentage is added to the awards previously made by this court in PTO Nos. 7763A, 8516, 8646, 8869, 9102, 9294, 9398, and 9465, counsel will have received a total award equaling 7.154% of the Settlement Fund. The present award requested represents approximately 7.2% of the $8,353,167 in Settlement Benefits paid to class members in 2016.

We previously determined that the awards sought in similar cases range from 4.8% to 15%. Diet Drugs, 553 F. Supp. 2d at 480. We noted that these figures should serve as "guideposts" when determining the appropriate award. Id. The award sought by Levin falls within these guideposts, and thus this factor weighs in favor of the requested award.

### H. VALUE OF BENEFITS ATTRIBUTABLE TO EFFORTS OF CLASS COUNSEL RELATIVE TO OTHER GROUPS

Under this Prudential/Gunter factor, we must consider the benefits created by other groups, such as government agencies, when deciding on a reasonable fee. We have stated

---

5. The Twelfth Audit report indicates that Levin spent a total of 955.5 hours on compensable class common benefit activities. However, the supplement issued by the Auditor on June 8, 2017 clarified that 870.5 of these hours were allocated to class action work.

that "Joint Fee Applicants should . . . not receive fees based upon efforts that are not their own." Diet Drugs, 553 F. Supp. 2d at 480. A failure to distinguish the work of other groups "would create an incentive for plaintiffs [sic] attorneys to 'minimize the costs of failure . . . by free riding on the monitoring of others.'" In re Prudential Ins. Co. Am. Sales Practice Litig., 148 F.3d 283, 337 (3d Cir. 1998) (quoting John C. Coffee, Jr., Understanding the Plaintiff's Attorney, 86 Colum. L. Rev. 669, 681 (1986)). We reaffirm our past conclusion that "[n]either the Government, nor its agencies, provided the type of heavy-lifting that is sometimes provided in antitrust or securities cases." Diet Drugs, 2010 WL 3292787 at *12. No group has provided aid to Levin for work performed during 2016. Thus this factor weighs in favor of awarding Levin an appropriate award for its work related to the Trust.

**I. VALUE OF BENEFITS ATTRIBUTABLE TO EFFORTS OF CLASS COUNSEL RELATIVE TO OTHER GROUPS**

We have previously looked to the Major Filers Agreement[6] when analyzing the fee award. Id. (citing Diet

---

6. The Major Filers:

> (1) represent[ed] about 97% of the Class Members who exercised Downstream Opt-Outs and filed lawsuits subject to the MDL 1203 fee assessments; (2) filed 26,000 Level I and Level II Matrix Benefit claims that became Category One Claims under the Seventh Amendment; (3) represented about half of the

Drugs, 553 F. Supp. 2d at 482). The Major Filers "were, in essence, the market for the Joint Fee Applicants' services." Id. The Major Filers have stipulated that the fees awarded to Class Counsel should include the interest earned in the Fund A Escrow Account. Id. The instant petition seeks an award of an additional portion of the interest earned by this account and thus is consistent with the Major Filers Agreement. The Major Filers Agreement continues to serve as the best predicator of what would have been negotiated through a private contingent fee agreement. Thus this factor weighs in favor of awarding Levin an appropriate fee.

### J. INNOVATIVE TERMS OF SETTLEMENT

As we have previously stated, "we cannot deny that the Settlement Agreement provisions . . . were indeed innovative at the time they were drafted and have already served as models for other cases." Diet Drugs, 2010 WL 3292787 at *13 (citing Diet Drugs, 553 F. Supp. 2d at 485). There have been no additional innovative terms to the Settlement Agreement in 2016. Although we continue to recognize the past innovation of the Applicants, this factor does not weigh in favor of or against the requested award.

---

Class Members who have had Matrix Benefits claims processed by the Trust.

Diet Drugs, 553 F. Supp. 2d at 482.

III.  THE LODESTAR CROSS-CHECK

We must next perform a lodestar cross-check of the requested fee award using the percentage-of-recovery method to ensure that Levin will not receive a windfall. The "lodestar cross-check is performed by multiplying the hours reasonably expended on the matter by the reasonable hourly billing rate which then provides the court with the 'lodestar calculation.'" Diet Drugs, 553 F. Supp. 2d at 485. The proposed fee award is then divided by the lodestar calculation. The resulting figure is the lodestar multiplier. We must then compare this number to the lodestar multiplier in similar cases. Id.

According to the supplement to Mr. Winikur's Twelfth Audit Report, the lodestar value of the professional time expended by Levin in 2016 on class action work, using the applicable 2016 billing rates, is $539,575. Levin seeks a fee of $601,400. This requested fee, divided by the lodestar value yields a lodestar multiple of 1.115.[7] In recent years we have declined to apply a multiplier greater than 1. See Diet Drugs, 2011 WL 2174611 at *9.

---

7. We have previously recognized that the manner in which the Joint Fee Applicants were required to maintain and report time does not allow the attorneys to distinguish between time spent pursuing class activities and time spent working on Opt-Out PPH cases. Diet Drugs, 553 F. Supp. 2d at 487. Thus the multiplier here is "artificially low" and could be as high as 1.9.

-16-

We note that Levin's request fee, $601,400, is the lodestar value of the professional time expended by Levin of the total amount of work performed on both the class action and the MDL-related work <u>combined</u>. Thus we find that the requested award of $601,400 from the Trust and $601,400 from the MDL 1203 Fee and Cost Account is excessive. Levin expended a total of 870.5 hours on class action related work. Using the applicable 2016 billing rates, the supplement to the Twelfth Audit Report states that the lodestar value of this time is $539,575.

Based on a consideration of the <u>Gunter/Prudential</u> factors and that the lodestar cross-check, we find that a fee of $539,575 is the appropriate award.

**IV. AWARD OF FEES FROM MDL 1203 FEE AND COST ACCOUNT**

Levin also seeks an award of $601,400 from the MDL 1203 Fee and Cost Account. According to the supplement to the Twelfth Audit Report, Levin spent a total of 85 hours dedicated to MDL-related work in 2016. As part of this work, the PMC continued to assist in managing the pretrial proceedings in MDL 1203. As previously noted, according to the Judicial Panel for Multi-District Litigation, a total of 20,209 civil actions involving Diet Drugs have been transferred to or filed in this court for coordinated or consolidated pretrial proceedings as part of MDL 1203. In 2016 five existing PPH claims against Wyeth were resolved, resulting in settlement payments of

$1,862,750 and a deposit into the MDL 1203 Fee and Cost Account of $96,204.

Our Court of Appeals has declared that the standard for awarding to court-appointed management committees a portion of the claim recoveries earned is as follows:

> Under the common benefit doctrine, an award of attorney's fees is appropriate where the plaintiff's successful litigation confers a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them. Thus, in order to obtain common benefit fees, an attorney must confer a substantial benefit to members of an ascertainable class, and the court must ensure that the costs are proportionately spread among that class.

Diet Drugs, 582 F.3d at 546 (internal citations omitted).

We have recognized that the administrative functions performed by the PLC have conferred a substantial benefit on the plaintiffs in MDL 1203. See Diet Drugs, 2010 WL 3292787, at *14. The PLC has "helped to administer the MDL by tracking individual cases, distributing court orders, and serving as a repository of information concerning the litigation and settlement" to the benefit of these individuals. Id. (citing Diet Drugs, 582 F.3d at 548).

The requested fee award is more than the amount of new assessments paid into the MDL 1203 Fee and Cost Account in 2016.[8] As we have stated the lodestar multiplier is calculated by first multiplying the number of hours reasonably expended on the matter by the reasonable hourly billing rate to obtain the 'lodestar calculation.' Diet Drugs, 553 F. Supp. 2d at 485. This number is then divided into the proposed fee award to determine the resulting lodestar multiplier. Id.

The lodestar calculation is $61,825, which reflects the 85 hours spent by Levin on the MDL 1203. The lodestar multiplier is 9.727. We find it is unreasonable to grant a fee request with such a lodestar multiplier. Instead, it is appropriate to award Levin $61,825 from the MDL 1203 Fee and Cost Account. This award yields a multiplier of 1 and reflects the number of hours performed by Levin in 2016 on MDL-related work.

### V. AWARD AND ALLOCATION OF EXPENSE REIMBURSEMENTS

In 2016 a total of $18,519.58 in properly documented expenses were incurred for the common benefit of the class and the plaintiffs in MDL 1203. We have already entered orders

---

8. As we have noted the deposited amount does not reflect the sum of $101,200 that Wyeth paid into a separate escrow account pending the resolution of a challenge to California General Order No. 7. If the challenge were to be rejected, the $101,200 held in escrow would be released into the MDL 1203 account.

authorizing reimbursement of $14,548.61 of these expenses from the MDL 1203 Fee and Cost Account. The remaining balance of $3,970.97 represents expenses that were advanced by Levin.

In PTO No. 7763 we approved a stipulation between Wyeth and Class Counsel that at least 50% of the expenses from the funds on deposit in the MDL 1203 Fee and Cost Account and/or advanced by Levin should be paid by the Settlement Fund as they were expended for the common benefit of the class.

We will enter an order directing that the Settlement Fund reimburse the MDL 1203 Fee and Cost Account in the amount of $7,274.31, which represents 50% of the expenses paid from the MDL 1203 Fee and Cost Account during 2016. We will also order that 50% of the out-of-pocket costs advanced by the Levin be reimbursed to it from the MDL 1203 Fee and Cost Account and the remaining 50% be reimbursed from the Settlement Fund.

## VI. CONCLUSION

In conclusion, we will award attorneys' fees and expenses for work performed in 2016 as set forth in the attached pretrial order.