IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/ FENFLURAMINE/DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | : : : : | MDL NO. 1203 |
| THIS DOCUMENT RELATES TO: | : : | |
| SHEILA BROWN, et al. | : : | |
| v. | : : | |
| AMERICAN HOME PRODUCTS CORPORATION | : : : | |
| | : | NO. 99-20593 |

FILED
MAY 29 2019
KATE BARKMAN, Clerk
By_____Dep. Clerk

<u>MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO. 9514</u>

Bartle, J.                                                                 May 29, 2019

Before the court is the petition of Levin Sedran & Berman ("Levin"), in its respective capacities as Plaintiffs' Liaison Counsel ("PLC"), Co-Lead Counsel for the Plaintiffs, and Class Counsel, for an award of attorneys' fees and expense reimbursements relating to work performed from January 1, 2018 through December 31, 2018. This court has previously awarded fees in Pretrial Order ("PTO") Nos. 2262, 2859, 7763A, 8516, 8646, 8869, 9102, 9294, 9398, 9465, 9490, and 9502.

Levin seeks an aggregate award of attorneys' fees in the amount of $233,057.12 from the AHP Settlement Trust (the "Trust") in accordance with the stipulation approved in PTO No. 9297 between Wyeth and Class Counsel that described,

among other things, the terms of funding of future awards and class-related fees.[1]

Additionally Levin requests an award of attorneys' fees in the amount of $28,562.50 from the MDL 1203 Fee and Cost Account for MDL-related services performed during 2018.

Finally, Levin incurred a total of $6,754.10 in litigation expenses during 2018. This court has already authorized payment of $6,266.78 of expenses from the MDL 1203 Fee and Cost Account. Pursuant to PTO No. 7763, Levin seeks an order directing the Trust to reimburse $3,133.39 to the MDL 1203 Fee and Cost Account. Levin petitions for reimbursement of the remaining $487.32 in out-of-pocket expenses advanced by Levin to be allocated for payment to Levin as follows: $243.66 from the Trust related to class action work and $243.66 from the MDL 1203 Fee and Cost Account.

I.

In March 2019 the court-appointed auditor, Alan B. Winikur, C.P.A., filed his Fourteenth Audit Report setting forth the results of his audit of the professional time and expenses reported by counsel as eligible for payment or reimbursement for the period from January 1, 2018 through December 31, 2018. In

---

1. Levin notes in its petition that the lodestar value of work performed is $263,306.25, but that only $233,057.12 remains available in the Settlement Fund to compensate the "Class" work after reimbursement of other expenses.

this Report Mr. Winikur states that one law firm, Levin, has performed compensable "common benefit" work for the class during 2018. He reports that during 2018, Levin performed 487.25 hours of professional work. According to Mr. Winikur, the lodestar value of this work was $291,868.75. The Audit Report explained that the 487.25 hours of professional work performed by Levin was broken down into two categories: (1) the number of hours that were spent by Levin doing work related to the class action, and (2) the number of hours that were spent by Levin doing work related the MDL 1203. His report states that Levin performed 448.75 of the 487.25 hours on class action work and the remaining 38.50 hours on MDL-related work. The Audit Report states that the lodestar amount for the class action work equals $263,306.25 of the total lodestar value of $291,868.75, and the lodestar amount for the MDL work equals the remaining $28,526.50 of the total lodestar.

The total amount of reimbursable expenses incurred by Levin during 2018 was $6,754.10. The court has previously authorized payment of bona fide common benefit expenses from the MDL Cost and Fee Account during 2018 in the total amount of $6,266.78. The amount of outstanding reimbursable expenses is $487.32.

We have previously noted that two funds exist for the purpose of paying attorneys' fees: (1) the consolidated Fund A

Escrow Account to pay attorneys in connection with Fund A and Fund B benefits related to the class action, and (2) the MDL 1203 Fee and Cost Account to pay for attorneys' fees and costs associated with the work of the Plaintiffs' Management Committee ("PMC"), PLC, and attorneys authorized by those two groups to work on behalf of the plaintiffs in the MDL 1203 or coordinated state proceedings. See In re Diet Drugs Prods. Liab. Litig., 2010 WL 3292787, at *2 (E.D. Pa. Aug. 19, 2010). The consolidated Fund A Escrow Account was created with an initial payment by Wyeth. On June 17, 2014 this court authorized the termination of the consolidated Fund A Escrow Account and directed the Escrow Agent for that account to pay the funds therein to the Trust. See In re Diet Drugs Prods. Liab. Litig., 2014 WL 2767182, at *8 (E.D. Pa. June 17, 2014).

Following the termination of the consolidated Fund A Escrow Account, the court approved on June 18, 2014 the "Stipulation between Wyeth and Class Counsel with Regard to the Funding of Future Awards of Class-Related Fees" in PTO No. 9297. This PTO ordered Wyeth to provide funding for payments of up to $4 million of class counsel fees in connection with class action work.

The MDL 1203 Fee and Cost Account contains assessments of a percentage of any recoveries by plaintiffs whose actions are transferred to the MDL 1203 action and of recoveries by

plaintiffs in the coordinated state proceedings. As of December 20, 2018, the MDL 1203 Fee and Cost Account had a balance of $2,587,487.28. This balance includes the $101,200.00 deposited in 2018.

II.

There have been no objections to this petition. Nonetheless, we must conduct a "thorough judicial review" of the requested fee award as "required in all class action settlements." In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 819 (3d Cir. 1995). We have previously noted the standard of review that our Court of Appeals requires a district court to employ, which includes consideration of the following ten factors:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved,
> (4) the complexity and duration of the litigation, (5) the risk of nonpayment,
> (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

See, e.g., In re Diet Drugs Prods. Liab. Litig., 2013 WL 3326480, at *3 (E.D. Pa. June 28, 2013) (citing Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 (3d Cir. 2000)). We do not apply these factors in a "formulaic way" and recognize that one factor may outweigh others. Id. Our Court of Appeals has emphasized that "what is important is that the district court evaluate what class counsel actually did and how it benefitted the class." In re AT&T Corp. Sec. Litig., 455 F.3d 160, 165-66 (3d Cir. 2006).

A. **SIZE OF FUND CREATED AND NUMBER OF PERSONS BENEFITTED**

We have previously noted the size of the Class Action Settlement Fund to be approximately $6.44 billion. In re Diet Drugs Prods. Liab. Litig., 553 F. Supp. 2d 442, 472 (E.D. Pa. 2008). During 2018, Class Members received benefits totaling $2,528,980 pursuant to the terms of the Settlement Agreement. This total includes the following awards:

- five Class Members received Matrix payments totaling approximately $815,283; and
- the Settlement Fund has paid a total of $1,713,697 to administer the terms of the Settlement Agreement to provide settlement benefits to Class Members.

We have previously recognized the "immense size of the Fund created and the thousands of people" who have benefitted since

this court first approved the Settlement Agreement on August 28, 2000. Diet Drugs, 2010 WL 3292787, at *9. This factor weighs in favor of granting Levin a fee award for its class action work.

**B.   PRESENCE OR ABSENCE OF SUBSTANTIAL OBJECTIONS**

We must next consider the "presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel." Gunter, 223 F.3d at 195 n.1. Less than thirty objections were filed in response to the 2007 petition for fees and costs. Diet Drugs, 553 F. Supp. 2d at 473. All of these objections were overruled by this court. Id. Several of our orders were appealed to the Court of Appeals for the Third Circuit and affirmed, while other appeals were discontinued with prejudice. In re Diet Drugs Prods. Liab. Litig., 93 F. App'x 338 (3d Cir. 2004); In re Diet Drugs Prods. Liab. Litig., 385 F.3d 386 (3d Cir. 2004); In re Diet Drugs Prods. Liab. Litig., 226 F.R.D. 498 (E.D. Pa. 2005). No objections were filed in connection with the fee petitions covering the years 2007-2016. See In re Diet Drugs Prods. Liab. Litig., 2017 WL 2838257, at *3 (E.D. Pa. June 30, 2017).

Similarly no objections have been filed in response to the 2018 petition. As we have previously stated, "the paucity of objections filed in response to the original and renewed petitions for attorneys' fees and costs do not necessarily

-7-

establish that the requests in the Joint Petition are proper." Diet Drugs, 553 F. Supp. 2d at 474. Nonetheless, the absence of any objection is indicative of the fairness of the petition. Id. Thus this factor weighs in favor of granting the current fee petition but does not relieve the court of its independent obligation to ensure the fairness of the award.

### C. SKILL AND EFFICIENCY OF ATTORNEYS INVOLVED

We previously found that those seeking attorneys' fees and expenses related to common benefit work, including Levin, "handled with superior skill and efficiency the resolution of claims in this exceedingly complex class action." Diet Drugs, 2010 WL 3292787, at *10 (citing Diet Drugs, 553 F. Supp. 2d at 474). We have also found that Levin has handled those cases transferred to MDL 1203 for pretrial proceedings, as well as the closure of MDL 1203 on October 20, 2017,[2] in a skillful and diligent manner. Diet Drugs, 2016 WL 8732314 at *3. Thus the continued proficiency and diligence of the attorneys involved weighs in favor of awarding Levin an appropriate fee for their MDL-related work.

### D. COMPLEXITY AND DURATION OF LITIGATION

This litigation, which has been pending for nearly two decades, involves the administration of the Class Action and has

---

2. On October 20, 2017, we entered PTO 9493 which dissolved MDL 1203.

also involved the related MDL, which was dissolved on October 20, 2017. According to statistics maintained by the Judicial Panel on Multidistrict Litigation, as of September 30, 2017, 20,209 civil actions involving Diet Drugs have been transferred to or filed in this court for coordinated or consolidated pretrial proceedings as part of MDL 1203. The court has issued over 9,500 pretrial orders in connection with MDL 1203. We have previously recognized the "sheer breadth of the Settlement Agreement and its many moving parts created a virtual labyrinth through with the Joint Fee Applicants were forced to navigate." Diet Drugs, 553 F. Supp. 2d at 477-78.

Laurence Berman, Esquire, who now serves as Chair of the PMC and as Class Counsel in connection with the Settlement Agreement, has submitted an affidavit in support of the fee petition describing the work performed by Levin in 2018. We will briefly describe some of the work that Mr. Berman reports in his affidavit.

During 2018, Levin reviewed the audit of eight Matrix Claims and consulted with the Consensus Expert Panel ("CEP") designee to determine whether the audit outcomes should be referred for formal CEP review and possible re-audit.[3] Several

---

3. This court approved the creation of the CEP in PTO No. 6100. The CEP reviews claims to determine if the auditor departed from accepted standards of practice in applying the Settlement Agreement. The CEP can then order the termination or

of the audits resulted in denials of the Matrix claim, while other claims resulted in audit determinations where the claim was found payable on the B Matrix. In addition Levin assisted 107 Matrix Claimants in preparing and submitting claims to the Trust through the Class Counsel Claims Office. That assistance helped deliver to those Claimants $600,000 in Matrix Benefits.

Levin also continued to take part in Trust planning activities. The firm participated in discussions on issues such as the Trust's 2018 budget, the plan for Trust operations during 2018, and an arrangement allowing counsel for the Trust and for Wyeth to access the Trust's data.

In addition, Levin continued with a project that endeavored to identify unrepresented Class Members who remained eligible to submit claims to the Trust after approval of the Seventh Amendment in order to determine whether they were eligible for disease progression benefits. Levin assisted those unrepresented Claimants in submitting supplemental Matrix Benefit claims to the Trust.

Levin engaged in activities such as assisting in Primary Pulmonary Hypertension ("PPH") litigation, providing administrative support to the Cardiovascular Medical Research

---

retraining of the auditor and/or recommend re-audit of the claim.

-10-

and Education Fund ("CMREF"),[4] consulting on the obligation of PPH litigants to comply with California General Order No. 7 in the California state litigation, and supporting the administration of the class action and MDL 1203.

We recognize, as we have in past PTOs, that the activity in the litigation is consistently declining and thus the number of individuals who have benefitted from the Settlement Agreement in 2018 has decreased significantly when compared with earlier years. We must consider this decline in activity when calculating the appropriate fee award.

### E. RISK OF NON-PAYMENT

We have stated in past memoranda that the risk of non-payment to Class Counsel must be judged at the inception of the action, rather than in hindsight. See Diet Drugs, 553 F. Supp. at 478. We have noted that the Joint Fee Applicants "faced significant risk" at the commencement of the litigation and that this risk did not subside with the approval of the Settlement Agreement. Id. at 748-49 (internal citations omitted). We must "reassess the risk" faced by the 2018 Joint Class Fee Applicants throughout the litigation, including during

---

4. The CMREF was created by the Settlement Agreement. See Settlement Agreement § VI.A.3.a. Now retired former Levin partner Michael D. Fishbein, Esquire, who also previously served as Class Counsel, served on the board of directors of CMREF in 2017.

2018. In re Diet Drugs Prods. Liab. Litig., 582 F.3d 524, 543 (3d Cir. 2009). Levin has already received a generous fee for the work performed through 2018. The court has created a reserve fund to compensate Class Counsel for work performed after 2008.

Levin claims that unlike in previous petitions for attorneys' fees, a risk of non-payment for work performed in connection with the administration of the Class Settlement materialized in or around November 2018. As we mentioned earlier, this is because the amount of money left in the Settlement Fund with which to pay Class Counsel and reimburse expenses became insufficient during 2018. The value of Levin's lodestar for Class work in 2018 is $263,306.25, with additional expenses, but only $236,434.17 remains in the fund. Levin explains that the fee award will therefore only be enough to cover the work performed up to October 2018, because that is when the lodestar value reached approximately $233,0000. Levin concedes, however, that in the period after December 31, 2009 through about October 2018, there was no risk of non-payment.

**F. AMOUNT OF TIME DEVOTED TO CASE BY PLAINTIFFS' COUNSEL**

According to the Fourteenth Audit Report, during 2018 Levin spent a total of 448.75 hours on class action work. We accept the Auditor's finding.

## G. AWARDS IN SIMILAR CASES

The instant fee petition seeks an award of approximately .0036% of the Settlement Fund valued at roughly $6.437 billion. When this percentage is added to the awards previously made by this court in PTO Nos. 2262, 2859, 7763A, 8516, 8646, 8869, 9102, 9294, 9398, 9465, 9490, and 9502, counsel will have received a total award equaling 7.161% of the Settlement Fund. The present award requested represents approximately 9.22% of the $2,528,980 in Settlement Benefits paid to Class Members in 2018.

We previously determined that the awards sought in similar cases range from 4.8% to 15%. Diet Drugs, 553 F. Supp. 2d at 480. We noted that these figures should serve as "guideposts" when determining the appropriate award. Id. The award sought by Levin falls within these guideposts, and thus this factor weighs in favor of the requested award.

## H. VALUE OF BENEFITS ATTRIBUTABLE TO EFFORTS OF CLASS COUNSEL RELATIVE TO OTHER GROUPS

Under this Prudential/Gunter factor, we must consider the benefits created by other groups, such as government agencies, when deciding on a reasonable fee. We have stated that "Joint Fee Applicants should . . . not receive fees based upon efforts that are not their own." Diet Drugs, 553 F. Supp. 2d at 480. A failure to distinguish the work of other groups

"would create an incentive for plaintiffs [sic] attorneys to 'minimize the costs of failure . . . by free riding on the monitoring of others.'" In re Prudential Ins. Co. Am. Sales Practice Litig., 148 F.3d 283, 337 (3d Cir. 1998) (quoting John C. Coffee, Jr., Understanding the Plaintiff's Attorney, 86 Colum. L. Rev. 669, 681 (1986)). We reaffirm our past conclusion that "[n]either the Government, nor its agencies, provided the type of heavy-lifting that is sometimes provided in antitrust or securities cases." Diet Drugs, 2010 WL 3292787 at *12. No group has provided aid to Levin for work performed during 2018. Accordingly, this factor weighs in favor of awarding Levin an appropriate award for its work related to the Trust.

**I. PERCENTAGE FEE THAT WOULD HAVE BEEN NEGOTIATED HAD THE CASE BEEN SUBJECT TO A PRIVATE CONTINGENT FEE AGREEMENT AT THE TIME COUNSEL WAS RETAINED**

We have previously looked to the Major Filers Agreement[5] when analyzing the fee award. Id. (citing Diet

---

5. The Major Filers:

> (1) represent[ed] about 97% of the Class Members who exercised Downstream Opt-Outs and filed lawsuits subject to the MDL 1203 fee assessments; (2) filed 26,000 Level I and Level II Matrix Benefit claims that became Category One Claims under the Seventh Amendment; (3) represented about half of the Class Members who have had Matrix Benefits claims processed by the Trust.

Drugs, 553 F. Supp. 2d at 482). The Major Filers "were, in essence, the market for the Joint Fee Applicants' services." Id. The Major Filers have stipulated that the fees awarded to Class Counsel should include the interest earned in the Fund A Escrow Account and the Fund B Attorneys' Fees Account. Id. The instant petition seeks an award of an additional portion of the interest earned by this account and thus is consistent with the Major Filers Agreement. The Major Filers Agreement continues to serve as the best predicator of what would have been negotiated through a private contingent fee agreement. Thus this factor weighs in favor of awarding Levin an appropriate fee.

J. **INNOVATIVE TERMS OF SETTLEMENT**

As we have previously stated, "we cannot deny that the Settlement Agreement provisions . . . were indeed innovative at the time they were drafted and have already served as models for other cases." Diet Drugs, 2010 WL 3292787 at *13 (citing Diet Drugs, 553 F. Supp. 2d at 485). There have been no additional innovative terms to the Settlement Agreement in 2018. Although we continue to recognize the past innovation of the Applicants, this factor does not weigh in favor of or against the requested award.

III. **THE LODESTAR CROSS-CHECK**

---

Diet Drugs, 553 F. Supp. 2d at 482.

We must next perform a lodestar cross-check of the requested fee award using the percentage-of-recovery method to ensure that Levin will not receive a windfall. The "lodestar cross-check is performed by multiplying the hours reasonably expended on the matter by the reasonable hourly billing rate which then provides the court with the 'lodestar calculation.'" Diet Drugs, 553 F. Supp. 2d at 485. The proposed fee award is then divided by the lodestar calculation. The resulting figure is the lodestar multiplier. We must then compare this number to the lodestar multiplier in similar cases. Id.

According to Mr. Winikur's Fourteenth Audit Report, the lodestar value of the professional time expended by Levin in 2018 on class action work, using the applicable 2018 billing rates, is $263,306.25.[6] Levin seeks a fee of $233,057.12. This requested fee, divided by the lodestar value yields a lodestar

---

6. In a supplemental declaration, Mr. Berman reported the billing rates and hours worked of Levin's attorneys and staff. Arnold Levin, a partner, performed 1.5 hours of work at a rate of $800.00 per hour. Laurence S. Berman, another partner, performed 221 hours of work at a rate of $750.00 per hour. Luke Pepper, an associate, performed 132 hours of work at a rate of $550.00 per hour. Patricia D'Andrea, a paralegal, performed 6.25 hours of work at a rate of $275.00 per hour. Finally, Thomas Shrack, an IT specialist, performed 126.5 hours of work at a rate of $400.00 per hour. Mr. Berman noted that these hourly rates represent a "reduced" rate compared to the firm's usual hourly rates it uses for these attorneys and staff in other matters.

-16-

multiple of 0.885.[7] In recent years we have declined to apply a multiplier greater than 1. See Diet Drugs, 2011 WL 2174611 at *9; Diet Drugs, 2017 WL 2838257 at *6.

Here, the lodestar cross-check yields a multiplier of 0.885. Based on this, as well the Gunter/Prudential factors and that the lodestar cross-check, we find the requested 2018 fee award is reasonable.

### IV. AWARD OF FEES FROM MDL 1203 FEE AND COST ACCOUNT

Levin also seeks an award of $28,562.50 from the MDL 1203 Fee and Cost Account. As previously noted, according to the Judicial Panel for Multi-District Litigation, a total of 20,209 civil actions involving Diet Drugs have been transferred to or filed in this court for coordinated or consolidated pretrial proceedings as part of MDL 1203. On October 20, 2017, MDL 1203 was dissolved by the entry of PTO No. 9493. In 2018, the PLC remained available to assist in the administration of PPH cases. It has maintained the MDL "Trial Package" consisting of general fact discovery and generic expert development done by the PMC Discovery Committee that has been available to attorneys to assist them in preparing Diet Drug cases for trial. The PLC

---

7. We have previously recognized that the manner in which the Joint Fee Applicants were required to maintain and report time does not allow the attorneys to distinguish between time spent pursuing class activities and time spent working on Opt-Out PPH cases. Diet Drugs, 553 F. Supp. 2d at 487. Thus the multiplier here is "artificially low" and could be as high as 1.9.

has also monitored the status of medical developments related to Diet Drug induced PPH, including consultation with an expert. These efforts have enabled counsel representing alleged PPH claimants to evaluate the merits of their cases to determine whether to litigate or, if appropriate, settle the cases.

In 2018, Levin also was involved in administrative matters on behalf of the PLC, including assisting co-lead counsel John Cummings with inquiries related to the operation of the former PMC office, assisting Mr. Winikur with due diligence inquires made by Wells Fargo Bank relating to a litigation account, and monitoring the status of the $101,200.00 deposit into the MDL 1203 Account related to the California cases discussed above.

Our Court of Appeals has declared that the standard for awarding to court-appointed management committees a portion of the claim recoveries earned is as follows:

> Under the common benefit doctrine, an award of attorney's fees is appropriate where the plaintiff's successful litigation confers a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them. Thus, in order to obtain common benefit fees, an attorney must confer a substantial benefit to members of an ascertainable class, and the court must ensure that the costs are proportionately spread among that class.

Diet Drugs, 582 F.3d at 546 (internal citations omitted).

We have recognized that the administrative functions performed by the PLC have conferred a substantial benefit on the plaintiffs in MDL 1203. See Diet Drugs, 2010 WL 3292787, at *14. The PLC has "helped to administer the MDL by tracking individual cases, distributing court orders, and serving as a repository of information concerning the litigation and settlement" to the benefit of these individuals. Id. (citing Diet Drugs, 582 F.3d at 548).

The requested fee award is more than the amount of new assessments paid into the MDL 1203 Fee and Cost Account in 2018.[8] According to the Fourteenth Audit Report, Levin performed 38.50 hours of work related to the MDL. The lodestar value of $28,526.50. Levin requests a fee of $28,526.50. This is a lodestar multiplier of 1. We find the fee request to be reasonable.

**V. AWARD AND ALLOCATION OF EXPENSE REIMBURSEMENTS**

In 2018, a total of $6,754.10 in properly documented expenses were incurred for the common benefit of the class and the plaintiffs in MDL 1203. We have already entered orders

---

8. As we have noted the deposited amount does not reflect the sum of $101,200 that Wyeth paid into a separate escrow account pending the resolution of a challenge to California General Order No. 7. If the challenge were to be rejected, the $101,200 held in escrow would be released into the MDL 1203 account.

authorizing reimbursement of $6,266.78 of these expenses from the MDL 1203 Fee and Cost Account. The remaining balance of $487.32 represents expenses that were advanced by Levin.

In PTO No. 7763 we approved a stipulation between Wyeth and Class Counsel that at least 50% of the expenses from the funds on deposit in the MDL 1203 Fee and Cost Account and/or advanced by Levin should be paid by the Settlement Fund as they were expended for the common benefit of the class.

Therefore, we will enter an order directing that the Settlement Fund reimburse the MDL 1203 Fee and Cost Account in the amount of $3,133.39, which represents 50% of the expenses paid from the MDL 1203 Fee and Cost Account during 2018. In addition, we will order that 50% of the out-of-pocket costs advanced by the Levin be reimbursed to it from the MDL 1203 Fee and Cost Account and the remaining 50% be reimbursed from the Settlement Fund.

### VI. CONCLUSION

In conclusion, we will award attorneys' fees and expenses for work performed in 2018 as set forth in the attached pretrial order.