```
              THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: DIET DRUGS (PHENTERMINE/      )
FENFLURAMINE/DEXFENFLURAMINE)        )   MDL NO. 1203
PRODUCTS LIABILITY LITIGATION        )
                                     )
─────────────────────────────────    )
                                     )
SHEILA BROWN, et al. v. AMERICAN     )   CIVIL ACTION NO. 99-20593
HOME PRODUCTS CORPORATION            )
                                     )
This document relates to:            )
                                     )
DANIELLE NICHOL SZARELL              )
                                     )
```

**MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO. 9529**

Bartle, J.                                          December 2, 2020

In or around September 2020, Danielle Nichol Szarell filed a combined "Motion for Summary Judgement" [sic] and "Plaintiff Motion for Filing Costs Waived."[1]  Dkt. No. 209475. According to Ms. Szarell, she was prescribed phentermine, which "could have changed [her] life for the worst [sic] by taking the medicine due to its side effects."  Mot. for Summ. J. at 1. Ms. Szarell argues she is entitled to "damages designed to punish the manufacturer for its role in contributing to harmful side effects of her and to the community."  Id. at 3.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be "rendered if the pleadings, the discovery and disclosure materials on file, and

---

1. Because there is not a filing fee associated with a motion for summary judgment, this portion of Ms. Szarell's motion will be denied as moot.

any affidavits show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is material when it "might affect the outcome of the suit under the governing law." Id.  After reviewing the evidence, the court makes all reasonable inferences from the evidence in the light most favorable to the non-movant.  In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

     According to Wyeth,[2] Ms. Szarell's motion is procedurally improper and substantively meritless.  As an initial matter, Wyeth notes that Ms. Szarell has not filed a complaint against Wyeth and, therefore, has not commenced a civil action against Wyeth.  Wyeth's Resp. at 1.  Wyeth contends that even if Ms. Szarell's motion for summary judgment is construed as a complaint she has failed to state a claim because she does not allege any facts to support a claim against Wyeth, including when she allegedly ingested a medicine manufactured by Wyeth, how long she allegedly took the medicine, and what harm

---

2. Prior to March 11, 2002, Wyeth was known as American Home Productions Corporation ("AHP").  In 2009, Pfizer, Inc., acquired Wyeth.

she allegedly suffered.  Id. at 2.  In addition, Wyeth argues that even if the allegations in Ms. Szarell's motion for summary judgment are accepted as true Ms. Szarell has not established that she took a medicine manufactured by Wyeth because she alleges she "was placed on Phentermine after she gained a total of around 100 pounds" and Wyeth did not manufacture Phentermine. Id.  Wyeth further contends that (1) the Court does not have subject matter jurisdiction over Ms. Szarell's claims because she does not allege any injuries and only purports to seek $50,000 in damages; (2) Ms. Szarell does not have standing to bring an action against it because she alleges that phentermine "could have" changed her life, not that it actually caused her harm; and (3) Ms. Szarell never registered for benefits under the Diet Drug Nationwide Class Action Settlement Agreement, has not filed an opt-out, and has not submitted the required certification and/or medical evidence required by PTO Nos. 2383 and 9153.  Id. at 2-3.

The Settlement Agreement approved by this court in Pretrial Order ("PTO") No. 1415 provides strict deadlines for Class Members to seek benefits from the Trust.  Specifically, the Settlement Agreement provides, in part:

> The following Class Members, and only such Class Members, shall be entitled to the compensation benefits from Fund B ("Matrix Compensation Benefits"):

> a.  Diet Drug Recipients who have been diagnosed by a Qualified Physician as FDA Positive or as having Mild Mitral Regurgitation by an Echocardiogram performed between the commencement of Diet Drug use and the end of the Screening Period <u>and who have registered for further settlement benefits by [May 3, 2003]</u> . . . .

Settlement Agreement § IV.B.1.a. (emphasis added).

Here, the record does not reveal any basis upon which to conclude that Ms. Szarell timely registered for benefits under the Settlement Agreement. Despite an opportunity to refute that she did not timely register for benefits, Ms. Szarell did not respond to Wyeth's argument that any claim by her is barred.

In addition, to the extent Ms. Szarell alleges that she suffers from primary pulmonary hypertension ("PPH") as a result of her ingestion of Diet Drugs, <u>see</u> Mot. for Summ. J. at 1-2, she is not entitled to pursue such a claim. Paragraph 7 of PTO No. 1415, in which this court approved the Settlement Agreement, provides:

> The court hereby bars and enjoins all class members who have not, or do not, timely and properly exercise an Initial, Intermediate, Back-End or Financial Insecurity Opt-Out right from asserting, and/or continuing to prosecute against [Wyeth] or any other Released Party any and all Settlement Claims which the class member had, has or may have in the future in any federal, state or territorial court.

-4-

PTO No. 1415 ¶ 7.

Under the Settlement Agreement, PPH is excluded from the definition of Settled Claims, and therefore PPH claims are not subject to the release and bar provisions of the Settlement Agreement.  Settlement Agreement § VII.B.  However, with respect to a living individual, the definition of PPH requires an individual's medical condition meet the following criteria:

>     (1) (a) Mean pulmonary artery pressure by cardiac catheterization of > 25 mm Hg at rest or > 30 mm Hg with exercise with a normal pulmonary artery wedge pressure < 15 mm Hg; or
>
>     (b) A peak systolic pulmonary artery pressure of > 60 mm Hg at rest measured by Doppler echocardiogram utilizing standard procedures; or
>
>     (c) Administration of Flolan to the patient based on a diagnosis of PPH with cardiac catheterization not done due to increased risk in the face of severe right heart dysfunction; and
>
>     (2) Medical records which demonstrate that the following conditions have been excluded by the following results:
>
>     (a) Echocardiogram demonstrating no primary cardiac disease including, but not limited to, shunts, valvular disease (other than tricuspid or pulmonary valvular insufficiency as a result of PPH or trivial, clinically insignificant left-sided valvular regurgitation), and congenital heart disease (other than patent foramen ovale); and
>
>     (b) Left ventricular dysfunction defined as LVEF < 40% defined by MUGA, Echocardiogram or cardiac catheterization; and

>> (c) Pulmonary function tests demonstrating the absence of obstructive lung disease (FEV1/FVC > 50% of predicted) and the absence of greater than mild restrictive lung disease (total lung capacity > 60% of predicted at rest); and
>
>> (d) Perfusion lung scan ruling out pulmonary embolism; and
>
>> (e) If, but only if, the lung scan is indeterminate or high probability, a pulmonary angiogram or a high resolution angio computed tomography scan demonstrating absence of thromboembolic disease; and
>
> (3) Conditions known to cause pulmonary hypertension including connective tissue disease known to be causally related to pulmonary hypertension, toxin induced lung disease known to be causally related to pulmonary hypertension, portal hypertension, significant obstructive sleep apnea, interstitial fibrosis (such as silicosis, asbestosis, and granulomatous disease) defined as greater than mild patchy interstitial lung disease, and familial causes, have been ruled out by a Board-Certified Cardiologist or Board-Certified Pulmonologist as the cause of the person's pulmonary hypertension.

Settlement Agreement § I.46.a.(2)(a).

We previously have stated that PTO No. 1415 requires "this court to decide if there is a genuine issue of material fact as to whether plaintiff suffers from PPH. If no such issue exists, this court will enjoin the plaintiff from going forward. Otherwise, it is a matter for the trial court." PTO No. 3699 at 4 (July 6, 2004).

Ms. Szarell has not attempted to satisfy the three-part PPH definition set forth in the Settlement Agreement.

-7-

She therefore has not raised a genuine issue of material fact to support any claim that she may suffer from PPH.  Accordingly, we will deny her motion for summary judgment on this basis as well.